**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **KONNECH, INC.,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:22-CV-03096** |
| | § | |
| **TRUE THE VOTE, INC., GREGG** | § | |
| **PHILLIPS, and CATHERINE** | § | |
| **ENGELBRECHT,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

**PLAINTIFF KONNECH, INC.'S MOTION TO SHOW CAUSE AND**
**FOR CONTEMPT AGAINST DEFENDANTS**

Plaintiff Konnech, Inc. ("Konnech") requests that this Court order Defendants True the Vote, Inc., Gregg Phillips, and Catherine Engelbrecht ("Defendants") and their counsel of record to appear and show cause why they should not be held in contempt for violating the Temporary Restraining Order ("TRO") entered by this Court on September 12, 2022, based on the following grounds:

**PRELIMINARY STATEMENT**

Since this Court granted the TRO nine days ago, Konnech has endeavored, on an almost daily basis, to obtain Defendants' voluntary compliance with the TRO. Instead of complying, however, Defendants have treated compliance with the TRO like a game of cat and mouse. Initially, Defendants took a blanket position that any Konnech data was obtained by an "independent contractor" and that they never took Konnech data from a "protected computer" and, therefore, the data they had was not covered by the TRO. However, when Konnech corrected Defendants' fundamental misunderstanding of the term "protected computer"—which, as defined by the federal Computer Fraud and Abuse Act, simply means a computer connected to the

internet—Defendants changed their position to claim that any Konnech data that they obtained was from a "third party" who "was not contracted to us or paid by us," that the data was "turned over to the FBI," and that they no longer possess any Konnech data.  Defendants' position stands in stark contrast to their repeated public statements that their "guys" and "analysts" helped them to obtain Konnech's data, and their repeated threats to publicly disclose it even after they said they turned it over to the FBI.

In any event, Defendants now openly admit that they will not comply with subsections v, vi, or vii of the TRO because they turned over to the FBI what they now say they *believe*, but do not know, was Konnech's data, and because it is otherwise a "matter for the FBI."  In so doing, Defendants are refusing to identify to Konnech those people involved in allegedly taking Konnech's data, how, when and where they took it and who else has the data.  Instead, Defendants have filed a letter addressed to this Court under seal which purports to identify a single individual (whose identity was hidden from Konnech and the public) that was involved in taking Konnech's data, even though Defendants' prior statements clearly indicated that multiple people were involved.

The only appropriate description of Defendants' conduct is contemptuous.  Defendants are blatantly defying the TRO and should be held in contempt of Court for their misconduct.

## FACTUAL BACKGROUND

On September 12, 2022, Konnech filed suit against Defendants claiming, among other things, violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et. seq*., and the Texas Harmful Access by Computer Statute, TEX. CIV. PRAC. & REM. CODE § 143.001.  That same day, the Court issued an *ex parte* TRO which ordered that Defendants, directly or indirectly, and whether alone or in concert with others be (i) enjoined from accessing or attempting to access

Konnech's protected computers; (ii) ordered to return to Konnech all property and data obtained from Konnech's protected computers, whether original, duplicated, computerized, handwritten, or any other form whatsoever; (iii) enjoined from using, disclosing, or exploiting the property and data downloaded from Konnech's protected computers; (iv) ordered to preserve, and not to delete, destroy, conceal or otherwise alter, any files or other data obtained from Konnech's protected computers; (v) ordered to identify each individual and/or organization involved in accessing Konnech's protected computers; (vi) ordered to confidentially disclose to Konnech how, when, and by whom Konnech's protected computers were accessed; and (vii) ordered to identify all persons and/or entities, in Defendants' knowledge, who have had possession, custody or control of any information or data from Konnech's protected computers.  (Doc. 9.)

## ARGUMENT

Although the TRO was signed nine days ago (Doc. 9) and Defendants accepted service of it seven days ago (Doc. 14), Defendants have still not complied with subsections v, vi, and vii of the TRO.[1]   Konnech has repeatedly sought Defendants' voluntary compliance with these subsections of the TRO by letters and e-mails to Defendants' lawyer dated September 15, 2022, September 16, 2022, September 17, 2022, and a conference call on September 20, 2022; but Defendants will not comply.  (*See* Exhibits A, B & C attached hereto.)

---

[1] In addition to subsections v, vi, and vii of the TRO, Konnech has worked extensively to obtain confirmation of Defendants' compliance with the other provisions of the TRO.  Specifically, because of Defendants' contradictory pre-suit statements and threats to release data they now claim to have never possessed, Konnech is seeking sworn statements from Defendants to confirm their unsworn representations that conflict with their attorneys' unsworn statements claiming their compliance with the TRO.  Defendants, however, have still not provided Konnech with the requested sworn statements or any comments to the affidavits which Konnech drafted for their review based on Defendants' attorney's unsworn representations.

3

The stated basis of Defendants' refusal to comply with subsections v, vi, and vii of the TRO is that "this is a matter that has been turned over to the FBI," and that "they do not want to compromise an ongoing [FBI] investigation[.]," which they have admitted is *targeting the Defendants*. (*See* Exhibit D attached hereto; *see also* Doc. 15.) But before the TRO was issued, Konnech specifically addressed in its Original Complaint and Motion for TRO the Defendants' pre-suit statements that they provided the FBI with Konnech's data, while at the same time repeatedly threatening to publicly release the data they now claim to not possess. Moreover, Defendants' other stated basis for refusing to comply with the TRO—i.e., that Defendants only viewed a "screen share" of "certain elements of the data" and that the data was merely "characterized" to Defendants as showing Konnech data, and that Defendants never viewed any Konnech data that was provided to them on a hard drive by an undisclosed third party—is contrary to Defendants' pre-suit statements as outlined in Konnech's Original Complaint and Motion for TRO. (*See* Exhibit E attached hereto; *see also* Docs. 1 & 5.)

On September 15, 2022, and in lieu of complying with the TRO, Defendants' counsel filed under seal an *ex parte* letter addressed to the Court which states that it identifies an individual whom they claim is actually responsible for the alleged unauthorized access of Konnech's computers and the theft of its data. (Doc. 15.) However, the individual's name was redacted from Konnech's copy of the letter, and Defendants did not otherwise purport to comply with subsections v, vi, or vii of the TRO. Specifically, subsection v of the TRO required Defendants to identify "each individual and/or organization involved in accessing Konnech's protected computers." Defendant Phillips previously referred to the persons who allegedly gained unauthorized access to Konnech's computers as his "analysts," and his "guys," thus signifying more than one person.[2]

---

2 *See* Motion for Temporary Restraining Order and Preliminary Injunction, at p. 6 (Doc. 5); *see*

However, in their September 15, 2022 *ex parte* letter, Defendants do not confirm that the individual whose name was provided to the Court is the *only* person or organization involved in accessing Konnech's computers.

Further, although Defendants previously refused to comply with subsections vi and vii of the TRO because of the FBI's alleged involvement, they still have not provided Konnech or the Court with any of the information required by those subsections of the TRO.  By their refusal to comply with the TRO, and specifically subsections v, vi, and vii, Defendants are flagrantly violating the TRO and transparently seeking to protect those that they acted in concert with from the consequences of their actions.

Konnech therefore seeks Defendants' immediate compliance with subsections v, vi, and vii of the TRO, including making public a fully unredacted copy of Defendants' September 15, 2022 *ex parte* letter to the Court.  In the event that Defendants do not immediately comply, Konnech requests that the Court set a hearing requiring Defendants to show cause why they should not be held in contempt of the TRO.  *See* FED. R. CIV. P. 70(e); 18 U.S.C. § 401 (providing the Court with power to punish by fine or imprisonment, or both, for a party's disobedience or resistance to its order); *American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) ("The district court 'has broad discretion in the assessment of damages in a civil contempt proceeding.'") (quoting *Long Island Rail Co. v. Brotherhood of Rail. Trainmen*, 298 F. Supp. 1347, 1347 (E.D.N.Y. 1969)).  Konnech also requests that the Court order that Defendants and their counsel pay the attorneys' fees and costs that Konnech has incurred in seeking their compliance with the TRO as well as sanctions for Defendants' blatant contempt of the TRO and, should

---

*also* Exhibits A-1 and A-2 in support of Konnech's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 6).

Defendants continue to refuse to comply with the TRO or any other orders issued by the Court, that Defendants be jailed or otherwise punished in a manner that this Court sees fit.

## PRAYER

In sum, Konnech, Inc. respectfully requests that the Court, without a hearing, enter an order directing that (i) Defendants and their counsel appear before the Court and show why they should not be held in contempt of the TRO; and (ii) make public a fully unredacted copy of Defendants' September 15, 2022 *ex parte* letter to the Court.  Konnech, Inc. further respectfully requests that, after hearing, the Court enter an order: (i) holding Defendants and their counsel in contempt; (ii) awarding Konnech attorneys' fees and costs; (iii) sanctioning Defendants for their contempt; and (iv) for such other and further relief to which Konnech may be justly entitled.

Dated: September 21, 2022

KASOWITZ BENSON TORRES LLP


By:      */s/ Constantine Z. Pamphilis*
         Constantine Z. Pamphilis
         Attorney in Charge
         Texas State Bar No. 00794419
         SDTX Bar No. 19378
         DPamphilis@kasowitz.com
         Nathan W. Richardson
         Texas State Bar No. 24094914
         SDTX Bar No. 24094914
         NRichardson@kasowitz.com
         1415 Louisiana Street, Suite 2100
         Houston, Texas 77002
         (713) 220-8800
         (713) 222-0843 (fax)

         *Attorneys for Plaintiff Konnech, Inc.*

## CERTIFICATE OF CONFERENCE

I hereby certify that, as stated herein, I have made numerous attempts to obtain Defendants' voluntary compliance with the TRO, but Defendants have either ignored my requests or outright refused because they claim the matter has been turned over to the FBI.

*/s/ Constantine Z. Pamphilis*
Constantine Z. Pamphilis

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2022, true and correct copies of the above and foregoing were forwarded via email and through the ECF system, to all parties and counsel of record.

*/s/ Constantine Z. Pamphilis*
Constantine Z. Pamphilis

# EXHIBIT A

## KASOWITZ BENSON TORRES LLP

1415 LOUISIANA STREET, SUITE 2100
HOUSTON, TEXAS 77002
(713) 220-8800
FAX: (713) 222-0843/0940

CONSTANTINE Z. DEAN PAMPHILIS
DIRECT DIAL: (713) 220-8852
DIRECT FAX: (713) 222-0843
DPamphilis@kasowitz.com

ATLANTA
LOS ANGELES
MIAMI
NEW YORK
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

September 15, 2022

**VIA EMAIL**

Brock Akers
The Akers Firm
3401 Allen Parkway
Suite 101
Houston, Texas 77019
bca@akersfirm.com

RE:     Cause No. 4:22-cv-03096; *Konnech, Inc. v. True the Vote, et al.*, In the United
States District Court, Southern District of Texas, Houston Division.

Dear Mr. Akers:

I write in response to your September 14, 2022 letter ("Letter") to seek Defendants'
voluntary compliance with the TRO.

First, the Defendants' refusal to comply with significant portions of the TRO (Item nos. 5,
6 and 7 in your Letter, which are subparagraphs v, vi and vii in the TRO) because they have
provided the FBI with the same information does not excuse their non-compliance with the TRO.
Your Letter admits the Defendants know who stole Konnech's data, how it was stolen, and who
else has it, but that Defendants will not disclose such information even though the TRO requires
it.  Three days ago, Judge Hoyt ordered the Defendants to immediately:

v.       [I]dentify each individual and/or organization involved in accessing Konnech's
protected computers;

vi.      [C]onfidentially disclose to Konnech how, when, and by whom Konnech's
protected computers were accessed; and

K ASOWITZ   B ENSON   T ORRES   LLP

Brock Akers
September 15, 2022
Page 2

     vii.     [I]dentify all persons and/or entities, in Defendants' knowledge, who have had possession, custody or control of any information or data from Konnech's protected computers.

And, even though the Court was not required to consider it, the Defendants' allegations of the FBI's involvement was brought to the Court's attention before the TRO was issued. Defendants' refusal to provide Konnech with this information directly violates the TRO and is frankly stunning. This information is essential to enable Konnech to protect its data and needs to be turned over immediately.

     Second, Defendants' refusal to immediately "return to Konnech all property and data obtained from Konnech's protected computers, whether original, duplicated, computerized, handwritten, or any other form whatsoever" is also shocking, particularly because it is apparent that Defendants are acting in concert with others that still have Konnech's property and data. The basis for your clients' refusal to comply -- that they turned all of Konnech's data over to the FBI - - is also demonstrably false. In the event that you are planning to make such representation to the Court, you should first review the Complaint and Motion for TRO carefully as both demonstrate that your clients have recently, repeatedly and publicly stated that they plan to release, or already have released, stolen Konnech data to their subscribers and/or others, including The Pit attendees—even after claiming they had turned over all such data to the FBI.

     Third, your Letter demonstrates a fundamental misunderstanding of whether the Konnech property and data (which your Letter admits your clients accessed) came from a Konnech "protected computer." While you claim in your Letter that you are not "playing semantics," that is precisely what your clients' position on "protected computers" demonstrates. Specifically, you state that your responses to the seven items in your Letter are all "properly modified" by "Konnech's protected computers." Konnech's Motion for TRO and Complaint expressly define the term "protected computer" under the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"). Further, the TRO expressly states that "Defendants have admitted to gaining unauthorized access to Konnech's *protected computers* and obtaining information therefrom." So that there's no misunderstanding, the term "protected computer" is defined under the CFAA as a computer "which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States." 18 U.S.C. § 1030(e)(2). Your Letter states unequivocally that the Konnech data your clients obtained came from an "open source." Again, in the event that you are planning to make that representation to the Court, please review the Complaint and Motion for TRO carefully as both demonstrate that your clients have publicly claimed that they used a "default password" to access Konnech data which, as a matter of law, constitutes hacking, and is not "open source" as you claim in your Letter. In any event, the term "protected computer" has nothing to do with the security features of a "computer" (as that term is also defined under the CFAA). Rather, a "protected computer" is merely a computer that is connected to the internet—which indisputably applies to Konnech's computers even with

K A S O W I T Z   B E N S O N   T O R R E S   LLP

Brock Akers
September 15, 2022
Page 3

Defendants' admission that they obtained Konnech's data on an "open source" from the internet. *See Merritt Hawkins & Assoc., LLC v. Gresham*, 948 F. Supp. 2d 671, 673-74 (N.D. Tex. 2013) (explaining that any computer connected to the internet is a "protected computer" under the CFAA).[1]

With the above in mind, we ask that you ensure **Defendants immediately comply with the TRO by 3:00 PM CT today**.  Defendants' failure to do so will leave us no option but to seek immediate court intervention.

Separately, in response to your request, we can agree to extend the expiration date of the TRO.  However, since that agreement will require the entry of an agreed TRO, I would suggest that the parties agree to convert the TRO into a preliminary injunction and avoid the preliminary injunction hearing altogether.

Sincerely,

Dean Z. Pamphilis

---

[1] To the extent Defendants intend to try to hide behind the still yet unidentified alleged "independent contractors" that provided them with Konnech's data, the CFAA does not limit liability to direct access; it penalizes indirect access and conspiracy to violate the CFAA as well.

# EXHIBIT B

# KASOWITZ BENSON TORRES LLP

1415 LOUISIANA STREET, SUITE 2100
HOUSTON, TEXAS 77002
(713) 220-8800
FAX: (713) 222-0843/0940

CONSTANTINE Z. DEAN PAMPHILIS
DIRECT DIAL: (713) 220-8852
DIRECT FAX: (713) 222-0843
DPamphilis@kasowitz.com

ATLANTA
LOS ANGELES
MIAMI
NEW YORK
NEWARK
SAN FRANCISCO
SILICON VALLEY
WASHINGTON DC

September 16, 2022

**VIA EMAIL**

Brock Akers
The Akers Firm
3401 Allen Parkway
Suite 101
Houston, Texas 77019
bca@akersfirm.com

> RE:   Cause No. 4:22-cv-03096; *Konnech, Inc. v. True the Vote, et al.*, In the United
> States District Court, Southern District of Texas, Houston Division.

Dear Mr. Akers:

I write in further response to your September 14 and September 15, 2022 letters, and to again seek Defendants' voluntary compliance with the TRO in a final attempt to avoid contempt proceedings.

*First*, Defendants' position concerning Konnech's property and data has repeatedly changed since the emergence of their attacks against Konnech. Defendants initially claimed at The Pit—and then repeatedly on podcast appearances and social media postings following the event—that, as a factual matter, *they* were the ones who found data and personal identifying information on 1.8 million U.S. poll workers located on a Konnech Server that was allegedly only restricted by a default password; that it was Defendant Phillips' "analysts," or otherwise his "guys" (signifying more than one person), who gained unauthorized access to Konnech's servers and took data therefrom; that *Defendants* "took [Konnech's data] directly," and that they already did, or otherwise planned to release the data to their subscribers in an effort to somehow substantiate their false and malicious claims that Konnech is involved in election fraud or is otherwise affiliated with the Chinese Communist Party; and further, that this was all done at the direction of Defendants Engelbrecht and True the Vote.

# KASOWITZ BENSON TORRES LLP

Brock Akers
September 16, 2022
Page 2

After the TRO was issued, your correspondence has contradicted Defendants' prior statements. In your September 14 Letter, although you admit that Konnech data was acquired by Defendants, you claim the data and information was obtained by an "independent contractor" who contacted Defendant Phillips after having first obtained the information themselves. And now, your September 15 Letter claims for the first time that this alleged third party was not "contracted" by Defendants as your prior letter claimed (though, glaringly, neither letter denies that the third party was working in concert with Defendants). Further, and contrary to prior public statements by Defendants, Defendants suddenly claim in your September 15 Letter that they only saw "certain elements of the data" which was merely "characterized" by the undisclosed third party as containing sensitive poll worker data. Unsurprisingly, the repeated change in Defendants' position and, indeed, the contradictory nature of it all, makes it impossible for Konnech to take Defendants at their word.

*Second*, Defendants have still not complied with substantial obligations in the TRO and you have still not addressed those items, including in your September 15, 2022, *ex parte* communication with the Court.[1] Specifically, Defendants have not confirmed (1) who, other than a single undisclosed third-party and the FBI, in Defendants' knowledge, has had possession, custody, or control of any of the information or data taken from Konnech; and (2) how and when Konnech's servers were accessed. The answers to these questions is paramount to Konnech's ability to maintain a secure system and, therefore, the integrity of the upcoming midterm elections. Moreover, and most significantly, Defendants were <u>ordered</u> by Judge Hoyt to provide this information to Konnech immediately 4 days ago.

To be clear, Defendants' continued failure to comply with <u>all</u> provisions of the TRO will subject Defendants to contempt proceedings. Accordingly, please <u>immediately</u> provide the answers to these open questions as ordered by the TRO.

*Third*, to avoid any misunderstanding, please confirm that your September 15 Letter's reference to "True the Vote" encompasses the other two Defendants as well.[2] In other words, confirm that (1) neither Defendants Phillips, Engelbrecht, nor True the Vote viewed the contents of the alleged hard drive or connected it to their network or any device; (2) that Defendants Phillips' and Engelbrecht's knowledge about the data is likewise limited to what they were told by the undisclosed third party and as shown through a shared screen; and (3) that Defendants Phillips and Engelbrecht have likewise never obtained nor held any Konnech data, aside from their alleged transfer of said data to the FBI.

---

[1] Your September 15, 2022 *ex parte* letter only addressed the identity of the supposed hacker, and did not address the question of how and when Konnech's server was accessed, which Defendants have been ordered to do.

[2] For example, your September 15 Letter states that "*True the Vote* did not view the contents of this hard drive or connect it to their network or any device," that "*True the Vote's* knowledge about this data is limited to what they were told and shown by a 'screen share,'" and that "*True the Vote* has never obtained or held" Konnech data. But the letter is silent as to Defendants *Phillips and Engelbrecht*.

# K ASOWITZ  B ENSON  T ORRES  LLP

Brock Akers
September 16, 2022
Page 3

And *fourth*, to avoid any further shifts in Defendants' positions and to confirm that we have Defendants' final position on the TRO, we ask that Defendants each sign an affidavit that swears to the key factual statements identified in your September 15 Letter, and other key facts concerning Defendants' alleged involvement (or lack thereof) in accessing and obtaining data from Konnech's servers.  I do think this would go a long way toward resolving the obvious issues with Defendants' TRO compliance.  If Defendants are amenable, we will draft the proposed affidavits for your review and if agreed upon affidavits are executed, we are willing to negotiate an agreed preliminary injunction on the basis of such affidavit and avoid the preliminary injunction hearing altogether.

Please provide me with the information requested in this letter by **12:00 PM CT today**.

Sincerely,

*/s/ Dean Z. Pamphilis*
Dean Z. Pamphilis

# EXHIBIT C

**Archived:** Wednesday, September 21, 2022 1:38:27 PM
**From:** Dean Pamphilis
**Mail received time:** Sat, 17 Sep 2022 12:57:19
**Sent:** Sat, 17 Sep 2022 12:57:18
**To:** Brock Akers
**Cc:** Nathan W. Richardson
**Subject:** RE: Konnech Inc. v. True the Vote, Inc., et al.
**Importance:** Normal
**Sensitivity:** None

---

Brock – Though we shouldn't have to—because the Court has ordered your clients to do so—we have asked repeatedly for your clients to confirm if they know (1) who, other than a single undisclosed third-party and the FBI, in Defendants' knowledge, has had possession, custody, or control of any of the information or data taken from Konnech; and (2) how and when Konnech's servers were accessed.  Stated simply, we need to know if your clients know how the servers were accessed (if at all), and who else, if anyone, has had the data.   Please provide us with this information immediately.


Thanks, Dean

**From:** Brock Akers <bca@akersfirm.com>
**Sent:** Friday, September 16, 2022 12:01 PM
**To:** Dean Pamphilis <DPamphilis@kasowitz.com>
**Cc:** Nathan W. Richardson <NRichardson@kasowitz.com>
**Subject:** Re: Konnech Inc. v. True the Vote, Inc., et al.

See attached



The information in this e-mail is legally privileged and confidential information intended to be reviewed by only the individual or organization named above.  If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination, or copying of this e-mail and its attachments, if any, or the information contained herein is prohibited.  If you have received this e-mail in error, please notify the sender and delete this e-mail from your system.

**From:** Nathan W. Richardson <NRichardson@kasowitz.com>
**Date:** Friday, September 16, 2022 at 8:40 AM
**To:** Brock Akers <bca@akersfirm.com>
**Cc:** Dean Pamphilis <DPamphilis@kasowitz.com>
**Subject:** RE: Konnech Inc. v. True the Vote, Inc., et al.


Brock – Please see the attached on behalf of Mr. Dean Pamphilis, which requires your immediate attention.  Thank you.

**From:** Brock Akers <bca@akersfirm.com>
**Sent:** Thursday, September 15, 2022 3:11 PM
**To:** Dean Pamphilis <DPamphilis@kasowitz.com>
**Cc:** Nathan W. Richardson <NRichardson@kasowitz.com>
**Subject:** Re: Konnech Inc. v. True the Vote, Inc., et al.

See attached response.

The information in this e-mail is legally privileged and confidential information intended to be reviewed by only the individual or organization named above.  If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination, or copying of this e-mail and its attachments, if any, or the information contained herein is prohibited.  If you have received this e-mail in error, please notify the sender and delete this e-mail from your system.

# EXHIBIT D



BROCK C. AKERS

BOARD CERTIFIED PERSONAL INJURY
AND CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
CIVIL TRIAL ADVOCACY
NATIONAL BOARD OF TRIAL ADVOCACY

DIRECT DIAL
713/552-0232
e-mail: bca@akersfirm.com

September 14, 2022

Dean Pamphilis
Kasowitz Benson Torres LLP
1415 Louisiana Street, Suite 2100
Houston, Texas 77002

      Re: Konnech, Inc. v. True the Vote, et al; No. 4:22-cv-03096; In the United States
      District Court, Southern District of Texas, Houston Division

Dear Mr. Pamphlis:

This letter is in response to your email relating to the TRO against my clients.  It was not
until Nathan Richardson sent the waivers to us that we were aware that you had
acquired a TRO.  Previously, my clients knew of the lawsuit itself from reading about it
in the press, but not the TRO.

As to that which is covered by the TRO, it is easy for them to comply with its
terms.  Despite the allegations to the contrary, my clients did not obtain any property or
data that was used, generated or stored by Konnech on a "protected computer."  As you
will learn through the course of this matter, anything acquired from Konnech was
retrieved from an open source.  There was no "hacking" involved in getting this data.
The information relevant to the voter integrity issues that was acquired was actually
stumbled upon in the course of doing other research on matters involving security of
elections and election data bases.  Neither Catherine Engelbrecht, Gregg Phillips nor
anyone employed or associated with True the Vote was responsible for this data
retrieval.  Instead, it was an independent contractor who located the information and in
turn contacted Gregg Phillips.

Mr. Phillips' immediate reaction, knowing and sensing the national security
implications of the information, was to contact the FBI.  He did so and handed all of the
information he had been given to the FBI.

With regard to the seven items in the TRO, we can respond directly to them.  Please note that all of the items are properly modified by "Konnech's protected computers."  Inasmuch as no data was obtained from a "protected computer" by anyone to our knowledge, there is nothing for us to produce or to refrain from doing.  Nevertheless, and so that we are not accused of playing semantics on these matters, we can respond more specifically:

1. *We are enjoined from accessing or attempting to access Konnech's protected computers.*   We readily agree to comply with this injunction.  We never accessed or attempted to access  Konnech's protected computers in the past, and we will not do so in the future.

2. *We are to return all property and data obtained from Konnech's protected computers.*   We have not acquired anything from a protected computer.  All of the information that we have given to the FBI was from an open source.  Importantly, you should know that all of the data and information was turned over to the FBI and my clients do not possess anything from Konnech's files or activities.  Therefore, there is nothing to turn over.

3. *We are enjoined from using, disclosing or exploiting the property and data.*   We have not done that, and will not do so, per the court's order.

4. *We shall not delete, destroy, conceal or alter files or data obtained.*   We will not delete, destroy or alter anything.

5. *We shall identify each individual or organization involved.*   This is a matter that we have turned over to the FBI.  Though we do not know the status of the FBI investigation, we are not willing to compromise it as a result of an *ex parte* order that you acquired on the strength of assertions and allegations that are inaccurate.  The FBI office in charge of this investigation was the Detroit field office.  We recommend that you contact them for this information.

6. *We shall confidentially disclose how, when and by whom.*    This is a matter that has been turned over to the FBI and it ought to be up to them to provide this information.

7. *We shall identify all persons who have possession, custody or control of information or data.*    This is a matter for the FBI, not us.  We know they have the data and information; we do not.  Since the information was gained from an open source, we of course have no idea how many other people may have had access to the information.

Based on the order as written, there is no action necessary for us in order to be in compliance.  I offer you the additional information to explain our position.

Because of the possibility of counterclaims, we ask that you inform your clients to preserve all records, data of any sort, including logs, server configurations, emails, texts, written communications, records of phone calls and other documents that may pertain to this matter.

Sincerely,

Brock C. Akers

BCA:pdg

# EXHIBIT E



BROCK C. AKERS

————————————

BOARD CERTIFIED PERSONAL INJURY
AND CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
CIVIL TRIAL ADVOCACY
NATIONAL BOARD OF TRIAL ADVOCACY

DIRECT DIAL
713/552-0232
e-mail: bca@akersfirm.com

September 15, 2022

Dean Pamphilis
Kasowitz Benson Torres LLP
1415 Louisiana Street, Suite 2100
Houston, Texas 77002

   Re: Konnech, Inc. v. True the Vote, et al; No. 4:22-cv-03096; In the United States
   District Court, Southern District of Texas, Houston Division

Dear Mr. Pamphlis:

Thank you for your letter of this morning. It reflects multiple inaccuracies and
misrepresentations regarding True the Vote's actions.

Apparently, I did not do a good enough job explaining how my clients became aware of
and in contact with the source information you describe.  These facts hopefully provide
additional information so you will better understand our involvement.

1. As evidence will show, True the Vote was approached by a third party who
   claimed to have data originating from your client. He had already obtained that
   data prior to contacting us. He was not contracted to us or paid by us. We were
   led to understand that he acquired the information from an open, not protected
   source.
2. This individual "screen shared" certain elements of the data and characterized it
   as showing large amounts of personal and confidential information about poll
   workers and other sensitive material having been exfiltrated and stored on
   servers located in China.
3. He turned over to True the Vote a hard drive device containing the evidence of
   this, including the data. True the Vote did not view the contents of this hard
   drive or connect it to their network or any device. They turned it over to the FBI
   immediately with the representations made about it.  No portion of that which
   was turned over was retained.
4. True the Vote's knowledge about this data is limited to what they were told and
   shown by "screen share." They never possessed the actual data or any part of it

except as above. True the Vote has been advised that this person is in communication with the FBI.

5. Thus, True the Vote has never obtained or held any data as described in your petition.  This is just one of many inaccuracies contained therein.

6. We reject your contention that we have publicly communicated contrary to this.

Given this, we once again assure you that we are complying with all aspects of the TRO. We have been led to understand in the course of this process that this is an active and confidential matter with the FBI.  We are uncertain as to our authority to make public this identity, and feel as though we are being forced to violate federal disclosure laws on the basis of your ex parte order.  We will, therefore, provide the name and identity of this individual to the court under seal, and will simultaneously offer the FBI the opportunity to weigh in on its disclosure.  We predict the Court would most prefer the input of the FBI in this manner.  Upon further direction from the Court or the FBI we will release the name of the individual and what contact information we possess.

Sincerely,

Brock C. Akers

BCA:pdg