**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| KONNECH, INC.*,* | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:22-cv-03096 |
| v. | § | |
| | § | |
| TRUE THE VOTE, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**

COME NOW DEFENDANTS, True the Vote, Inc., Gregg Phillips, and Catherine Engelbrecht, by counsel, to file this Opposition to Plaintiff's Motion for Preliminary Injunction, and to contest the basis for the Plaintiff's Motion for Temporary Restraining Order.

## INTRODUCTION

The matter comes before the Court on Plaintiff's Motion for a Preliminary Injunction, and this opposition, prior to this Court's hearing on Thursday, October 6, 2022. Defendants contend that the Motion for a Preliminary Injunction, based on an alleged violation of the federal and Texas computer security statutes, and claims of conspiracy under each, should not be granted, because immediately prior to filing their Complaint, Plaintiff admitted that it knew that no hacking of Plaintiff's computer occurred and moreover, that Plaintiff has made false representations about statements allegedly made by Defendants. For example, Plaintiff incorrectly argue that Defendants threatened released private information about individuals. Ironically, Plaintiff's founder and CEO was indicted in Los Angeles County, in coordination with Michigan authorities, and arrested for maintaining sensitive "personal identifying information" on servers in Communist

China.  Defendant asserts that Plaintiff has failed to prove any of the four elements for injunctive

relief:  likelihood of prevailing on the merits, irreparable harm, balance of the equities, and the

public interest.

## TABLE OF CONTENTS

I.        Procedural Background

II.      The Parties

III.     Negotiations Relating to a Preliminary Injunction

IV.     Allegations of Law Enforcement Investigations and Indictments

V.      Failure to Demonstrate Computer Hacking

VI.     Konnech Fails to Allege a *Prima Facia* Case of Hacking

VII.    Konnech Is Seeking to Have this Court Enjoin Investigation into Election Fraud

VIII.   Konnech's Allegations of Irreparable Injury Are Contradicted by Konnech's Own
         Public Statements

## TABLE OF AUTHORITIES

**STATUTES**
18 U.S.C. § 1030
28 U.S.C. § 1331
28 U.S.C. § 1332

**CASES**
*Goodarzi v. Hartzog*, No. H-12-2870, 2013 U.S. Dist. LEXIS 85727 (S.D. Tex. May 14, 2013)
*hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022)
*Van Buren v. United States*, 141 S. Ct. 1648 (2021)

**MISCELLANEOUS**
Dr. John R. Lott, "Simple tests for the extent of vote fraud with absentee and provisional ballots
in the 2020 US presidential election," *Public Choice*, forthcoming (May 12, 2022)
"October 4, 2022:  Head of Election Worker Management Company Arrested in Connection with
Theft of Personal Data," L.A. County District Attorney's Office (October 4, 2022)

**ARGUMENT**

**I.  Procedural Background.**

On September 12, 2022, Plaintiff Konnech, Inc. ("Konnech") filed a complaint against Defendants True the Vote, Inc., Gregg Phillips, and Catherine Engelbrecht asserting eight claims, along with a request for injunctive relief (claim 9).  The request for injunctive relief was based on claim 3 (Computer Fraud and Abuse Act); claim 4 (Conspiracy re claim 3); claim 5 (Texas Harmful Access By Computer); and claim 6 (Conspiracy re claim 5).

On that same day, Konnech also filed a Motion for Temporary Restraining Order and Preliminary Injunction and Brief in Support, supported by a single affidavit of Konnech President and CEO Eugene Yu.[1]  The Motion asked the Court to consider the matter *ex parte*, based on its representations that if Defendants learn about the suit, they may follow through on threats to publicly release data or destroy evidence.  *See* Motion at 3 (pages unnumbered).  Based on the many representations made by Plaintiff and Yu, the Court issued a Temporary Restraining Order on September 12, 2022.  Subsequently, Defendants waived service.  Now their answer or other responsive pleading is due by November 14, 2022.  This Opposition is being filed in advance of the scheduled October 6, 2022 hearing on the Motion for a Preliminary Injunction.

**II.  The Parties.**

Konnech identifies itself as a Michigan company founded by its President and CEO, Eugene Yu, which contracts with governmental entities in the United States to provide election related software — a product called "*PollChief*" is one of several.  Konnech advised the Court that "Konnech's software products are not involved in any way in the registration of voters, the

---

[1]  As discussed below, Eugene Yu was placed under arrest in Michigan on October 4, 2022.

production, distribution, scanning, or processing of ballots, or the collection, counting or reporting of votes." Complaint para. 2. However, prior to filing the Complaint, a great deal more about the election-related products offered by Konnech was described on its own public-facing website, but a significant amount of that and other information has been removed from its website, including material that is inconsistent with the representations made to this Court.

True the Vote is a nonprofit organization exempt from federal income taxation under Internal Revenue Code section 501(c)(3). It has worked in support of election integrity since 2009. Its mission is to promote the security and integrity of the voting process. It has become a nationwide resource for information and training of citizens to ensure the accuracy of voter rolls and voting. True the Vote extensively researched the 2020 election, and its research has been cited in documentaries covering alleged election fraud in the 2020 election.

True the Vote has deep concern about the intervention by the People's Republic of China in United States elections. Konnech seeks to compensate for weak allegations by libeling Defendant True the Vote. Konnech falsely accuses Defendant True the Vote of racism and xenophobia against Chinese. Defendants categorically denies Konnech's false allegations, and there is no evidence to support them. Konnech also accuses True the Vote of having "peddled" claims of election fraud to "enrich" and "profit" itself. *See* complaint at paras. 1-2. This also is false.

As Konnech claims, True the Vote has availed itself of Freedom of Information Act laws to make requests to obtain public documents from various governmental entities. However, Konnech pejoratively describes these FOIA requests as "an apparent effort to intimidate ... customers...." Complaint para. 24. Konnech objects to public disclosure of its contracts with government agencies. Konnech contends that its principal Yu has received death threats from his

involvement in this controversial matter (Complaint paras. 8 and 28), yet Konnech feels no reluctance to unnecessarily identify the home addresses of the individually named Defendants in its Complaint.  Complaint paras. 14-15.

## III.  Negotiations Relating to a Preliminary Injunction.

Efforts were made by counsel for both Plaintiff and Defendants to negotiate an agreed preliminary injunction, that could be in effect until the case could be fully briefed to and resolved by the Court.  Defendants were willing to seriously consider this option because most of the claims that Defendants were about to engage in actions harmful to various parties were fanciful, enjoining actions the Defendants had not and would not take.  However, as the scope of the demands were made clear, seemingly designed to prevent all investigation into Konnech under any circumstances, and given the arrest of Konnech's CEO, it became clear there could be no agreement.  The matter requires judicial intervention to vacate the stipulated extension of the temporary restraining order.

Defendants oppose a temporary injunction for meritorious reasons.  Defendants identified a key document that supports its statements, but Konnech scrubbed it from their website.  This face-saving remedial measure alone demonstrates that Konnech knew that its computers were never hacked by True the Vote, as discussed below.

## IV.  Allegations of Law Enforcement Investigations and Indictments.

There are a variety of allegations in the Complaint and Motion about possible investigation and indictment of Eugene Yu.  Those allegations are a bit dated as on October 4, 2022, the Los Angeles County District Attorney George Gascon announced that Konnech President and CEO Eugene Yu "has been arrested as part of an investigation into the possible theft of personal identifying information of those workers."  *See* "October 4, 2022:  Head of Election Worker

Management Company Arrested in Connection with Theft of Personal Data," *L.A. County District*

*Attorney's Office* (October 4, 2022) (Attachment I). The press release continued:

> Earlier today, Konnech Corporation Chief Executive Officer Eugene Yu was taken into custody on suspicion of theft of personal identifying information by investigators from the District Attorney's Office Bureau of Investigation with assistance from the Meridian Township Police Department in Michigan. In addition, hard drives and other digital evidence were seized by LADA investigators.
> The District Attorney's Office is seeking Yu's extradition to Los Angeles.
> Konnech distributes and sells its proprietary PollChief software, which is an election worker management system that was utilized by the county in the last California election. The software assists with poll worker assignments, communications and payroll. PollChief requires that workers submit personal identifying information, which is retained by the Konnech.
> Under its $2.9 million, five-year contract with the county, Konnech was supposed to securely maintain the data and that only United States citizens and permanent residents have access to it.
> District Attorney investigators found that in contradiction to the contract, information was stored on servers in the People's Republic of China. [*Id.*]

## V.  Failure to Demonstrate Computer Hacking.

While the Complaint is peppered with hotly disputed allegations of defamation against Konnech and claims about "debunked" election fraud conspiracy theories, if necessary, those issues will be addressed more fully at a later time, but are wholly irrelevant to this Court's consideration of the claimed basis for Plaintiff's Motion for a Preliminary Injunction.  That Motion is based only on the federal and Texas computer fraud statutes.

Addressing the two conspiracy claims first, it appears that no claim for conspiracy has been properly asserted by Plaintiff.  The Complaint admits that Catherine Engelbrecht and Gregg Phillips have been both acting on behalf of the corporate entity True the Vote, such as:

- "Defendants True the Vote, Inc., its founder and President Catherine Engelbrecht, and board member Gregg Phillips ('Defendants') ..."  Complaint para. 1.

- "Defendant Phillips, while acting in concert with Defendants Engelbrecht and True the Vote, has admitted that he obtained confidential information and data from Konnech's protected computers...."  Complaint para. 18.

Indeed, except for a few statements attributed to either Engelbrecht or Phillips, the allegations are against both individuals, who are agents of True the Vote.  This Court recognizes the intracorporate conspiracy doctrine under which there cannot be a civil conspiracy between a corporation and its employees or agents:

> Furthermore, in what is known as the **intracorporate conspiracy doctrine**,[2] because an agreement between two or more persons is required for a conspiracy, a 'corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.' [This district adopted the "intracorporate conspiracy doctrine" based on the fact that] an agreement between two or more persons is required for a conspiracy, a 'corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.' *Nelson Radio & Supply Co. v. Motorola, Inc*., 200 F.2d 911, 914 (5th Cir. 1953), *cert. denied*, 345 U.S. 925, 73 S. Ct. 783, 97 L. Ed. 1356 (1953); *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). Therefore a corporation cannot conspire 'with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.' *Id*.  To assert a claim of civil conspiracy against an employee or agent of a principal, the employee or agent must have been acting outside the scope of his employment or agency. *Ameen v. Merck & Co., Inc*., 226 Fed. Appx. 363, 2007 WL 1026412, *5 & n. 33(5th Cir. 2007), *citing Vosko v. Chase Manhattan Bank, N.A.*, 909 S.W. 2d 95, 100 n.7 (Tex. App.—Houston [14th Dist. 1995, pet. denied) ('Nor can a parent and subsidiary corporation, or their employees or agents acting within the scope of their employment conspire.'). [*Goodarzi v. Hartzog*, No. H-12-2870, 2013 U.S. Dist. LEXIS 85727, at *33-34 (S.D. Tex. May 14, 2013) (emphasis added).]

---

[2] "The doctrine arose in the antitrust area, but has been extended, *inter alia*, to civil rights conspiracies under § 1983 and § 1985. *Collins v. Bauer*, 2012 U.S. Dist. LEXIS 17769, 2012 WL 443010, *7 (N.D. Tex. Jan. 23, 2012). Three recognized exceptions to the doctrine are (1) where the alleged conspirators have "'an independent stake in achieving the object of the conspiracy'"; (2) where the alleged conspirators are acting for their own purposes, thus becoming independent actors; and (3) where they act outside of the scope of their employment beyond the bounds of their authority or when they engage in unauthorized acts. *Id., quoting H&B Equip. Co. v. Int'l Harvester Co.*, 577 F.2d 239, 244 (5th Cir. 1978), *Dussouy v. Gulf Coast Inv. Corp*., 660 F.2d 594, 603 (5th Cir. 1981), and *Buschi v. Kirven*, 775 F.2d 1240, 1252-53 (4th Cir. 1985)."

---

Therefore, a conspiracy claim cannot be supported in this case.

As to the federal and Texas anti-hacking statutes, Konnech made numerous false representations to the Court, including that Defendants:

1. "hacked into Konnech's servers and unlawfully downloaded its data."  Complaint para. 7.

2. "repeatedly declared their intent to release the information they stole from Konnech's servers."  Complaint para. 7.

3. "falsely claimed that they discovered that Konnech had an **unsecured server** located in Wuhan, China, which Defendants hacked into and stole data from."  Complaint para. 24 (emphasis added).

Earlier this year, in *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022), the Ninth Circuit narrowed the application of the Computer Fraud and Abuse Act to clarify that there was no violation when accessing public websites which could be readily accessed.  In this case, the server in China that was accessed had a pre-loaded password (*i.e.,* "password") that did not even require typing in a password to enter the server, but more importantly, the Plaintiffs have represented that Defendants did not access Konnech's computers, as it had no servers in China. Accordingly, there could be no violation of the federal statute, and by extension, the state statute.

Additionally, as the Supreme Court recently made clear, even if Konnech's computers had been accessed in some way, that does not constitute a violation of the Computer Fraud and Abuse Act which forms the basis for claims 3 and 4.  The Complaint alleges that Defendants have stated that the data base was "unsecured" and was left "with default password on database...."  Complaint para. 24.  This allegation is fatal to Plaintiff's computer hacking allegations.

Reinforcing the policy undergirding *hiQ Labs, Inc. v. LinkedIn Corp*, the Supreme Court, in *Van Buren v. United States*, 141 S. Ct. 1648 (2021), narrowed what would be considered hacking in a different respect. While Defendants vehemently deny hacking any computers, including Konnech's servers, *Van Buren* demonstrates that courts should read the federal statute narrowly.

**VI. Konnech Fails to Allege a *Prima Facia* Case of Hacking.**

Particularly since being sued by Konnech, True the Vote has examined and monitored Konnech's website. This monitoring led to the identification of a document which demonstrates that Plaintiff does not believe the truth of the central allegation that it made against True the Vote in its Complaint and Motion.

In response to criticism of Konnech by True the Vote occurring on August 13, 2022, Konnech posted a document entitled "THE TRUTH ABOUT KONNECH" (appended as Attachment II).

The document THE TRUTH ABOUT KONNECH admits that Plaintiff does not actually believe the claim that it made to this court:

Accusation:    True the Vote claims to have downloaded personal data on 1.8 million U.S. poll workers early in 2021 from an unsecured Konnech server in Wuhan, China.

Truth:    Konnech **thoroughly investigated** True the Vote's claims and found **no evidence whatsoever of any breach** of our systems or Konnech data anywhere in the world.[3]    [THE TRUTH ABOUT KONNECH, p. 1 (emphasis added).]

---

[3] Konnech's Complaint states: "All of Konnech's U.S. customer data is secured and stored exclusively on protected computers located within the United States." Complaint para. 2. If that were true, Konnech would have had no reason to deny that its data was breached "anywhere in the

Since Konnech believed and publicly represented that "Konnech thoroughly investigated" and "found" that there was "no evidence whatsoever of any breach" then there was no basis whatsoever for its suit and much less, the seeking of a TRO to prevent imminent release of Konnech's data.

The file date on that posting was September 10, 2022 — just two days before it filed its Complaint and Motion for Injunctive Relief.  That document has since been scrubbed – removed – from the Konnech website.[4]

Importantly, it appears the Complaint has been worded carefully to avoid making an express misrepresentation to the Court that Defendants **actually hacked** Konnech's servers — only alleging that Defendants **claimed** that they hacked the Konnech server.  To be sure, there are multiple allegations that seem designed to give the Court the distinct impression that such hacking actually occurred (*e.g.*, "Defendants know what they are doing is wrong..." Complaint para. 10), while steering clear of a clearly fabricated allegation.  And Konnech denies having a server in China, which is what Plaintiff alleges that Defendants claim to have hacked.  Complaint para. 40.  Lastly, Konnech asserts "all of Konnech's U.S. customer data is secured and stored exclusively on protected computers located within the United States."  Complaint para. 25.[5]

---

world."  In any event, it is not true that Konnech's data is secured and stored exclusively in the United States, as clearly alleged by the Los Angeles County District Attorney.

[4]   A similar inconsistency was revealed in the Complaint, whereby Konnech accused Defendants of falsely claiming "they have obtained financial and other sensitive personal data of 1.8 million U.S. poll workers — including social security numbers, phone numbers, email addresses, and banking information — from Konnech's protected computers."  Complaint para. 6.  Then Konnech claims that "it never managed customer data for that many poll workers or even a small percentage of that many poll workers" which would undermine its allegation that it was hacked.  *Id.*  Putting aside the fact that Konnech never obtained such data or claimed that it did, if the Plaintiff knew this claim to be false as impossible, how could that justify a TRO?

[5]   It is not at all clear that Konnech's vague and conclusory allegation that it expended $5,000 in investigating the matter satisfies the jurisdictional requirement in 18 U.S.C. § 1030.

---

Thus, Plaintiff alleges (falsely) that the Defendants claimed that they hacked Plaintiff's computers, but do not allege actual hacking and publicly have stated that it has not been hacked. Plaintiff cannot have it both ways. Section 1030 requires a person to actually access a protected computer without authorization, and Plaintiff never alleges facts describing this *sine qua non* of a violation of that statute. Thus, Plaintiff has failed to allege a *prima facie* case of a violation of § 1030.

Consequently, without a properly pled federal claim, this Court lacks jurisdiction over this matter under 28 U.S.C. § 1331, nor does it have supplemental jurisdiction over any of the remaining state law claims. Plaintiff's alternative assertion of diversity jurisdiction under 28 U.S.C. § 1332 also fails because there is no allegation of any amount in controversy anywhere in the Complaint, much less an amount that exceeds $75,000.

## VII.  Konnech Is Seeking to Have this Court Enjoin Investigation into Election Fraud.

The document THE TRUTH ABOUT KONNECH describes claims of election fraud as "disproven conspiracy theories." Attachment II. This *ipse dixit* assertion lacks specific substantiation. The fact that it can be stated as though it were a self-evident truth testifies to the powerful forces which shape "the narrative" through those persons who "won" the 2020 election and now exert influence over social media and the mainstream press, to oppose any investigation into the legitimacy of United States elections — powerful forces with which Konnech has now allied itself.

Despite repeated assertions of "debunked" election fraud claims, the truth is that almost no claims have been ruled upon in court. Most courts have not ruled on the merits of election fraud cases that have been brought but have ruled based on standing. By one analysis, 92 cases were

filed, but only 30 decided on the merits, and those bringing claims of vote fraud prevailed in some manner in 22 of those 30 cases.[6]

The Complaint states "[t]he theories peddled in *2000 Mules*, however, have been repeatedly disproven."  Complaint para. 4.  There Konnech cites articles by three mainstream media outlets (Reuters, Associated Press, and The Washington Post) and a government-owned media outlet (NPR).  Most of the criticisms about True the Vote's research into dropbox abuse using geospatial data, the findings of which were featured in the *2000 Mules* movie, involved speculation about the limitations of cell phone data.  Such criticisms constituted only nibbling around the edges of the film.  In no way have these criticisms disproven True the Vote's findings of significant illegal ballot harvesting in key states.

True the Vote has been investigating the election fraud that occurred in the November 2020 election, and that much evidence of that fraud has been assembled despite the best efforts of powerful forces to shut down any investigation.  Konnech describes election fraud as being advanced only by "conspiracy theorists and con artists" with "recklessness and disdain for the truth."  Complaint para. 9.  If Konnech has no involvement in voter registration, ballot counting, or reporting in the 2020 elections, and if it did nothing other than assist with management of poll workers, why would it feel necessary to so strongly defend the integrity of those elections in its filings?[7]  If those who believe claims of election fraud are bogus and easily disproved, why would they not welcome, rather than try to shut down, every such investigation?

---

[6]  *See* 2020 US Presidential Election Related Lawsuits (as of 7-29-22).  *See also* Dr. John R. Lott, "Simple tests for the extent of vote fraud with absentee and provisional ballots in the 2020 US presidential election," *Public Choice*, forthcoming (May 12, 2022) ("The estimates for Arizona, Georgia, Michigan, Nevada, Pennsylvania, and Wisconsin combined indicate between 146,000 and 334,000 excess votes for Biden.")

[7]  The notion that claims of election fraud leading to the election of President Biden in 2020 are new, novel, conspiratorial, and irrational is readily disproved by a brief video compiling the

**VIII.  Konnech's Allegations of Irreparable Injury Are Contradicted by Konnech's Own Public Statements.**

Konnech alleges at page 10 of its Motion that, "Konnech has suffered loss in an amount exceeding $5,000 in a one-year period, because it has been required to investigate and assess Defendants' claims, it has been required to conduct additional costly security audits, and it has expended other resources in responding to and assessing the need to remediate the offense. (Motion for TRO, Ex. A, Yu Aff. at ¶ 6.)"  But Defendants did not cause an audit at Konnech.  Konnech's THE TRUTH ABOUT KONNECH admits that there simply was no "offense" to "remediate" and that in any event, it is **regularly audited**:

> It's important to point out that in addition to Konnech's own rigorous security measures, our systems and software are subject to **security audits, penetration testing, source code** reviews and similar efforts required periodically by individual customers in the U.S. and other markets and carried out by their own third-party experts.  Konnech has never failed such a review over the course of our two decades in business.

(Emphasis added).

Despite this demonstrably false allegation, Konnech seeks to order "Defendants to confidentially disclose to Konnech how, when, and by whom its servers were accessed without authority so that additional necessary security measures can be implemented by Konnech to maintain the integrity of the data therein in light of the upcoming midterm elections."  Motion, pg. 15.  This request is without merit given Konnech's public admission that "Konnech thoroughly investigated True the Vote's claims and **found no evidence whatsoever of any breach of our systems** or Konnech data anywhere in the world."  This is an admission against interest.

---

instances in which the very same politicians (*e.g.,* President Joe Biden, President Jimmy Carter, former Presidential candidate Hillary Clinton, Vice President Kamala Harris, Senator Chuck Schumer, Senator Elizabeth Warren) and media outlets (*e.g.* CNN, MSNBC, Washington Post) now claiming that any questioning of the 2020 election is a "CONSPIRACY THEORY" boldly asserted that the 2016 election was "stolen," caused by Russian "hacking" and election fraud, resulting in the election of an "illegitimate President" — President Trump — in 2016.

## CONCLUSION

Defendants respectfully request the Court to deny Plaintiff's Motion for a Preliminary Injunction, and terminate the Temporary Restraining Order entered on September 12, 2022.

THE AKERS FIRM, PLLC

By:    */s/ Brock C. Akers*
        Brock C. Akers
        Federal I.D. No. 2046
        State Bar No. 00953250
        THE AKERS FIRM, PLLC
        3401 Allen Parkway, Suite 101
        Houston, Texas 77019
        Telephone: 713-877-2500
        Facsimile: 713-583-8662
        E-mail: bca@akersfirm.com

By:    */s/ J. Mark Brewer*
        J. Mark Brewer
        Federal I.D. No. 9909
        State Bar No. 02965010
        BREWER & PRITCHARD, P.C.
        800 Bering Drive, Suite 201
        Houston, Texas 77057
        Telephone 713-209-2950
        Email:  brewer@bplaw.com

        Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I certify that on October 5, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

  */s/ J. Mark Brewer*
J. Mark Brewer