1             **IN THE UNITED STATES DISTRICT COURT**

              **FOR THE SOUTHERN DISTRICT OF TEXAS**

2                   **HOUSTON DIVISION**

3  KONNECH, INC.             )     NO. 4:22-cv-03096

                       )

4                      )

    VS.                   )     Houston, Texas

5                     )     9:12 a.m.

                      )

6  TRUE THE VOTE, INC., ET   )     OCTOBER 31, 2022

    AL                 )

7

8

9    *********************************************************

10                 **CONTEMPT HEARING**

11       **BEFORE THE HONORABLE KENNETH M. HOYT**

12         **UNITED STATES DISTRICT JUDGE**

13

14    *********************************************************

15  APPEARANCES:

16  FOR THE PLAINTIFF:

17      Mr. Constantine Z. Pamphilis

       MR. Nathan Richardson

18      Kasowitz Benson Torres LLP

       Wedge International Tower

19      1415 Louisiana

       Suite 2100

20      Houston, TX 77002

       713-220-8852

21      Email: Dpamphilis@kasowitz.com

22

23  Proceedings recorded by mechanical stenography.

24  Transcript produced by computer-assisted transcription.

25

1 FOR THE DEFENDANTS:

2      Mr. Michael John Wynne
       Mr. Joseph R. Larsen
3      Mr. Cameron Powell
       Gregor Cassidy Wynne, PLLC
4      909 Fannin, Suite 3800
       Houston, TX 77010
5      Tel:  713-450-7403
       Email: Mwynne@gwafirm.com
6

7 ALSO PRESENT:

8      Mr. Todd Burns

9 COURT REPORTER:

10      Ms. Kathleen K. Miller, CSR, RMR, CRR
        515 Rusk, Room 8004
11      Houston, Texas  77002
        Tel:  713-250-5087
12

13

14

15

16

17

18

19

20

21

22

23

24

25

<pre>
        1                   P R O C E E D I N G S
        2             THE COURT:  Good morning.  Please, be seated.
        3                   All right.  I apologize for the delay this
        4 morning in getting started, but I was served, or at least
09:12:59 5 received a copy of documents that were filed, I believe,
        6 on probably Friday or Saturday, the 28th.  And they're
        7 entitled -- it's Document Number 46, entitled, "Defendant's
        8 Submission of Evidence in Furtherance of Request to Purge
        9 Finding of Contempt."
09:13:25 10                  Let's get an announcement as it relates to
       11 the parties and counsel present, please.  Who is here on
       12 behalf of Konnech?
       13             MR. PAMPHILIS:  Your Honor, Dean Pamphilis and
       14 Nathan Richardson with Kasowitz, Benson, Torres on behalf
09:13:40 15 of plaintiff, Konnech.
       16             THE COURT:  All right.  And here in behalf of
       17 True the Vote?
       18             MR. WYNNE:  This is, Your Honor, Michael Wynne.
       19 I entered designation now as lead counsel.  And Joe Larsen,
09:13:54 20 Cameron Powell, and my paralegal Heather Martinez, are with
       21 me, along with a consultant, Mr. Ted Burns.
       22             THE COURT:  All right.  Mr. Akers is not back
       23 yet?
       24             MR. WYNNE:  No.  I spoke with Mr. Akers
09:14:11 25 yesterday, and he is still in the Mediterranean on his
</pre>

1 cruise.

2              THE COURT:  Okay.  Very good.  But you have and

3 are listing yourself as the attorney in charge?

4              MR. WYNNE:  Upon counsel's request, yes, sir, I

09:14:31  5 am.

6              THE COURT:  You say "upon counsel's request,"

7 you mean Mr. Akers?

8              MR. WYNNE:  No.  Counsel's request that

9 being -- I'm sorry, upon the client's request --

09:14:41 10              THE COURT:  Okay.

11              MR. WYNNE:  -- and in consultation with an

12 agreement of Mr. Akers.

13              THE COURT:  Okay.  Very good.  All right.  Do

14 you want to then -- is this your filing then, Counsel, that

09:14:50 15 has been presented to the Court?

16              MR. WYNNE:  Yes, Your Honor.

17              THE COURT:  Do you want to tell the Court what

18 this is?

19              MR. WYNNE:  Yes, Your Honor.  We have provided

09:14:58 20 the affidavit of Mr. Gregg Phillips addressing each of the

21 items small Roman Numeral Number 5, 6, and 7, affirming his

22 testimony; that is, that to the best of his knowledge, that

23 the person who accessed the Konnech computers was

24 Mr. Hasson, and only Mr. Hasson, and that it was his

09:15:23 25 impression that act had been done before Mr. Phillips was

1 in the hotel room.  So that the only thing that he can say

2 to this Court, best of his knowledge, is Mr. Hasson.

3                THE COURT:  He, Mr. Phillips, can say to the

4 Court?

09:15:38  5                MR. WYNNE:  That is all that Mr. Phillips can

6 say to the Court.  The second matter, how it was done,

7 again, because of what he was shown on the screen --

8                THE COURT:  I think your elbow is touching the

9 microphone.

09:15:53 10                MR. WYNNE:  -- because what was shown on the

11 screen was something that had already been done, he does

12 not know the specifics of how it was done.

13                     Now, afterward, he engaged in some

14 educated speculation in how that might be done based on

09:16:10 15 known vulnerabilities out there that are obtained through a

16 number of different programs that I was able to witness

17 yesterday and confirm, that sure does appear to be the

18 case, but it was accessed through vulnerabilities in

19 Konnech's system and also with the Chinese servers.

09:16:33 20                THE COURT:  So are you telling the Court that

21 yesterday, Mr. Phillips accessed Konnech's computers

22 through some --

23                MR. WYNNE:  No.  No.  No.  He went online and

24 showed open source material, not Konnech, not having to do

09:16:50 25 with any of those.  But if you go on Wire, or Google, or

1 some of these other search engines, you can see displayed

2 not Konnech's data, but you can see how it might be done.

3            THE COURT:  I see.

4            MR. WYNNE:  Okay.  So that he summarizes that

09:17:05  5 this is how it might have been done.  Because he didn't do

6 it, he can't swear that this is how it was done, but we can

7 share confidentially, as we're requested, with plaintiff's

8 counsel our best guess about it might have been done.

9                 As far as what he can say about who has

09:17:25  10 possession now, he assumes Mr. Hasson, who we cannot

11 locate; and the FBI, based on the disclosure to the FBI.

12 Neither Ms. Engelbrecht, nor Mr. Phillips, nor True the

13 Vote have retained access.  I have also been able to

14 confirm through Mr. Burns' communications last night

09:17:50  15 directly what she -- division counsel --

16            THE COURT:  Mr. Who?

17            MR. WYNNE:  Mr. Todd Burns, who is helping me

18 as a consultant, most recently with the FBI.

19            THE COURT:  Uh-huh.

09:18:01  20            MR. WYNNE:  And I have spoken with an FBI agent

21 last night, along with the former chief of the FBI in

22 Brownsville.  He has spoken directly with chief division

23 counsel for the FBI in San Antonio.  I have also spoken

24 with others in the government in San Antonio, and can

09:18:20  25 confirm that this third person is a confidential informant.

1                Now, we're tracking down now, Mr. Burns

2 is, whether the handling agents in San Antonio and

3 throughout the border have an issue with or if, in fact,

4 this will compromise any agent, and I don't know the answer

09:18:41   5 to that, so I am asking for six hours.  They're tracing it

6 down right now.  I can have Mr. Burns attest to that, and

7 then if -- if, in fact, he is, we're in a very, very

8 different situation.

9                THE COURT:  Well, that's not something that I

09:18:59   10 have any intentions of engaging in, this back and forth.  I

11 simply -- Mr. Phillips, as well as Ms. Engelbrecht, who

12 apparently either got it directly or indirectly, the

13 information, from Mr. Phillips indicated that there was a

14 third person in the room.  And there may have been other

09:19:22   15 persons in the room.  I have never gotten a straight answer

16 from either of them as to what happened in the hotel room.

17                And when you use language that "no longer

18 have access," it suggests that they had access to the -- to

19 the data.  And the fact that they don't have access now

09:19:42   20 simply is a matter of them choosing not to exercise the

21 intelligence and the knowledge that they have to gain

22 access.

23                This suggests to me that they had access.

24 They had the -- they have provided this access information

09:19:58   25 to other entities.  They even went on their website, I

1 believe, indicating on their website that they had

2 cooperated.

3                    I mean, this is public knowledge that

4 they're saying, you know, we have -- we provided this

09:20:12  5 information to the sheriff's department, or some other

6 department in California, or the District Attorney.  We've

7 had this information.  We gave it to them.

8                    And then how would they give it to the FBI

9 if they didn't have it in the first place?  How could they

09:20:30 10 disclose anything to the FBI if they didn't have it?  And I

11 am not asking you to give me your opinion.  I am not asking

12 you to do anything except understand that the knowledge of

13 understanding has been evasive.  Whatever their knowledge

14 is, they have evaded the Court.

09:20:48 15                    I stepped into the matter and tried to

16 figure out how to get this data from them.  They have not

17 done so.  And all I have heard from you is, Judge, give us

18 some time to go ahead and work something out with counsel.

19 I mean, this has been going on for weeks.  Lawyers don't

09:21:05 20 have that much business that they can't work out something

21 significant in something as important as this data is.

22 Particularly, in light of the fact that in the public

23 domain, people are being threatened, and harassed,

24 including your client said they have been threatened and

09:21:19 25 harassed.

1                    So when you step into the -- into this

2 world of whatever this is that they're into, you probably

3 should expect that, but you wouldn't necessarily expect it

4 if you had a contract with the city or county official to

09:21:35 5 conduct an election, unless someone was trying to

6 intimidate the very people who are going to be conducting

7 the election in the next eight days, eight or ten days.

8                    That's the concern that I have that's

9 beyond the concern that Konnech has.  As a judicial

09:21:54 10 official, I have the duty to make sure that I don't let

11 this thing just simply lay around because plaintiffs

12 counsel might not have the desire, or will, or even

13 knowledge, whatever the circumstances might be, or even the

14 ability to protect the general public in a real sense.  And

09:22:12 15 so that's where this case is.

16                    I have read through this information.  All

17 it says -- and, of course, both of your -- both of your

18 clients say that they know who this person is.  They are

19 concerned about it because for some reason there is some

09:22:28 20 insider deal that they have with the FBI not to disclose

21 this information, but they said they will do it

22 confidentially.

23                    There has been no confidentiality

24 agreements worked out between your clients and the

09:22:42 25 plaintiffs to provide that information to them.  There is

1 nothing been presented to me that would ensure that if

2 there is some, quote, national security issue, that it

3 would not be breached by plaintiff's counsel.

4                    I am concerned about a national security

09:22:58 5 interest, but it is more concerned about the citizens of

6 the United States, people who have given their -- who give

7 their time and effort to ensure that an election goes

8 forward, than I am individuals who are simply trying to

9 ferret out and seek out information for whatever purposes

09:23:16 10 they might have.

11                    So you have had the time to do it.  I am

12 sure their telephone line has been open.  I am sure --

13 well, maybe you haven't talked, but you have not provided

14 that information to this point.

09:23:28 15                    So I am not sure there is anything in here

16 given to me.  I have read briefly through it.  I saw the

17 affidavits that were provided to me.  And I see the e-mail

18 exchange, which is of no significance.

19                    This lawsuit is between Konnech and True

09:23:50 20 the Vote and the individual defendants.  It is not between

21 the Mr. Yu, who apparently claimed to be -- the defendants

22 claimed to have had some hand in seeing that he got

23 arrested.  No one has arrested or indicted the corporation

24 that's brought this lawsuit.  And that's the client, that's

09:24:11 25 the party in this litigation, the corporation.  And the

1 corporation has a right to go forward irrespective as to

2 whether or not Mr. Yu can go forward.

3                    You understand where I am coming from?

4                    MR. WYNNE:  I do, Your Honor.  May I correct my

09:24:25 5 statement in case I misstated it?  And that is that

6 Mr. Phillips' testimony is that -- was that he never had

7 access himself but that the information was too large, the

8 number of terabytes, for him physically to have taken

9 possession, same with the other defendants.  So he never

09:24:50 10 had access, and still does not have access.  Just want to

11 make sure I said that correctly.

12                    THE COURT:  I don't know.  And neither do you,

13 do you?

14                    MR. WYNNE:  Personally, I do not, Your Honor.

09:25:02 15                    THE COURT:  That's right.  Anything else?

16                    MR. WYNNE:  Yes.  Just for purposes of the

17 record, I want to make it known that I did reach out and

18 speak with opposing counsel at some length this morning.

19                    THE COURT:  Anything from counsel for the

09:25:21 20 plaintiff?

21                    MR. PAMPHILIS:  Your Honor, just a few brief

22 points.  We did speak this morning in the courtroom.

23                    THE COURT:  Okay.

24                    MR. PAMPHILIS:  There was no discussion of any

09:25:32 25 confidentiality agreement and there has not been one

1 reached.  We simply can't agree to keep --

2            THE COURT:  Has any confidentiality document

3 been presented to you?

4            MR. PAMPHILIS:  No, Your Honor.  Nothing.

09:25:42   5            THE COURT:  Okay.  Go ahead.

6            MR. PAMPHILIS:  This is an individual who was

7 in that room, and under Section 5 that means he was

8 involved in accessing the data.  We need to know his name.

9 We may need to add him as a party to the lawsuit.  The

09:25:55   10 notion that because he could be a confidential informant

11 that his name can't be publicly disclosed is a red herring.

12                    You haven't heard any testimony that his

13 confidential informant status has anything to do with this

14 case.  He is not going to be in here testifying about

09:26:13   15 things that relate to whatever his confidential informant

16 status is.  It is a complete red herring that they have

17 manufactured in an attempt to prevent us from discovering

18 what the truth is.  And this is clearly someone that is

19 more important to them than even Mike Hasson was because

09:26:31   20 they said he was a confidential informant as well.

21                    As to the documents that they submitted

22 this weekend that Your Honor was just referring to, all of

23 that is hearsay.  It is conflicting.  And one of the things

24 that it does confirm is what you heard both from Mr. Akers

09:26:45   25 on October 6, and also from the stand on Thursday, which is

1 they asked the FBI whether it had any desire to protect the

2 information that they were required to disclose under the

3 TRO, and the FBI said, "They have no interest in engaging

4 with the Court in order to maintain confidentiality."

09:27:05   5                    That was more than three weeks ago.  I

6 think the texts that are in there are back from September,

7 more than a month ago.

8                    So, Your Honor, this is a name that we

9 need to know.  This is a person that needs to be brought

09:27:18  10 before the Court, so that we can perhaps start to discover

11 what really happened here because the -- as Your Honor

12 rightfully points out, the conflicting statements and

13 evidence even from Mr. Akers when he was here on October 6,

14 as compared to what we're now hearing, is that the gaps in

09:27:36  15 their position have changed dramatically.  And I just

16 frankly want to get to the truth, and I think this Court

17 needs that transparency to get to the truth.

18                    THE COURT:  All right.  There is one other

19 matter that I'm not sure if it's anything in writing to

09:27:53  20 that effect.  Let me just take a quick look here.  Or if

21 there has just been another ex parte communication with the

22 case manager regarding the exhibit that was offered into

23 evidence on Friday -- on Thursday.

24                    I believe that exhibit was returned to the

09:28:14  25 Court, was it not?

1                MR. PAMPHILIS:  I believe so, Your Honor.  I

2 handed it to the Court Coordinator.

3                THE COURT:  All right.  And as is customary,

4 these exhibits are not documents that are passed out to the

09:28:25  5 public, or filed in the record because they are yet to

6 be -- the case is yet to be concluded.  But there was some

7 communication regarding whether or not the photograph of

8 the individual, and there was some question as to whether

9 or not this individual was Hasson, I believe his name is,

09:28:51 10 and, of course, we have not on our own part made this

11 document known or presented it to the public in the public

12 domain.

13                Is there any -- have you done anything to

14 see that -- to place this picture in the public domain?

09:29:08 15                MR. PAMPHILIS:  No, Your Honor.

16                THE COURT:  All right.  Was that a concern that

17 you had regarding the photograph?  I am not sure whose

18 concern it was.

19                MR. WYNNE:  Yes, Your Honor.

09:29:17 20                THE COURT:  Hold on just one second.  Let me

21 see.  Okay.  That was under your motion to seal.  Go ahead.

22                MR. WYNNE:  Yes, sir.  Purely out of an

23 abundance of caution.

24                THE COURT:  Go right ahead.

09:29:28 25                MR. WYNNE:  Purely out of an abundance of

1 caution.

2                THE COURT:  What do you mean?  Out of -- what
3 do you mean by that?

4                MR. WYNNE:  For the purposes of this
09:29:34  5 individual's privacy.

6                THE COURT:  How do we know it's anybody?

7                MR. WYNNE:  Well, my suggestion is it is
8 somebody.  We don't know who.  And out of an abundance of
9 caution, I know that this matter has received press
09:29:49  10 coverage, so this does not necessarily relate to my client,
11 but protection, just like a Social Security number, of this
12 particular individual, assuming it's just a photograph of
13 someone, United States citizen, who has nothing to do with
14 this case, who might -- someone might think were it posted
09:30:08  15 or caused embarrassment to his family.

16                THE COURT:  But you are telling me that and you
17 have no knowledge as to whether or not this is, in fact, a
18 person who has been identified in the plaintiff's
19 pleadings, or by your -- by your counsel, and apparently by
09:30:24  20 your -- your clients as being Mike Hasson, I guess is the
21 case.

22                MR. WYNNE:  Right.  I am leaving that
23 entirely -- entirely up to the Court.  My concern is that
24 some media outlet would take it out of context in this
09:30:38  25 charged political environment, but I defer to the Court on

1 that, Judge.

2             THE COURT:  All right.  Irrespective as to how

3 this might be handled by the clerk's office, the Court is

4 going to deny your motion as it relates to opposed -- as

09:30:55   5 your opposed motion or your motion opposing the -- the --

6 placing, should I say, the picture under seal.

7             MR. WYNNE:  Yes, sir.

8             THE COURT:  And further, and finally, anything

9 else?

09:31:09   10            MR. PAMPHILIS:  Not from the plaintiff, Your

11 Honor.

12            MR. WYNNE:  May I confer with co-counsel one

13 moment?

14            THE COURT:  Sure.  Sure.

09:31:30   15            MR. WYNNE:  Nothing further, Your Honor.

16            THE COURT:  Then the Court, having previously

17 found the Defendants Gregg Phillips and Catherine

18 Engelbrecht in contempt for failure to comply with the

19 Court's ex parte temporary restraining order that address

09:31:45   20 unauthorized access by the Defendants, their agents,

21 assigns, or entities, on the plaintiff's protected computer

22 network, the return of all data belonging to Konnech, the

23 disclosure and/or the identity of all persons, entities who

24 had or have possession, custody, control, or access to any

09:32:03   25 information located on Konnech's protected computers, and

1 to confidentially disclose to Konnech how, when, and by

2 whom Konnech's protected computers were accessed, the Court

3 finds that although time to cure and thereby render the

4 holding of the contempt motion -- the holding of contempt

09:32:25  5 moot, as provided, the Defendants have yet to comply with

6 the Court's order.

7                     Therefore, it is ordered that Gregg

8 Phillips and Catherine Engelbrecht are ordered detained by

9 the United States Marshal for one day and further until

09:32:40  10 they fully comply with the Court's order as set forth in

11 TRO exhibit -- or Documents Numbers 8 and 9.  That's it.

12                     You're to remain in the courtroom.

13                     Counsel may be excused.  Thank you very

14 much.  Y'all have a good day.

09:32:59  15                     U.S. Marshals, you're to take them into

16 custody, please.

17 (Concluded at 9:32 a.m.)

18                 COURT REPORTER'S CERTIFICATE

19

20     I, Kathleen K. Miller, certify that the foregoing is a

21 correct transcript from the record of proceedings in the

22 above-entitled matter.

23

24 DATE:  Nov. 1, 2022      /s/    _Kathleen K Miller

25                          **Kathleen K. Miller, RPR, RMR, CRR**

## /

/s [1] - 17:24

## 1

1 [1] - 17:24
1415 [1] - 1:19

## 2

2022 [2] - 1:6, 17:24
2100 [1] - 1:19
28th [1] - 3:6

## 3

31 [1] - 1:6
3800 [1] - 2:4

## 4

46 [1] - 3:7
4:22-cv-03096 [1] - 1:3

## 5

5 [2] - 4:21, 12:7
515 [1] - 2:10

## 6

6 [3] - 4:21, 12:25, 13:13

## 7

7 [1] - 4:21
713-220-8852 [1] - 1:20
713-250-5087 [1] - 2:11
713-450-7403 [1] - 2:5
77002 [2] - 1:20, 2:11
77010 [1] - 2:4

## 8

8 [1] - 17:11
8004 [1] - 2:10

## 9

9 [1] - 17:11
909 [1] - 2:4
9:12 [1] - 1:5
9:32 [1] - 17:17

## A

a.m [2] - 1:5, 17:17
ability [1] - 9:14
able [2] - 5:16, 6:13
above-entitled [1] - 17:22

abundance [3] - 14:23, 14:25, 15:8
access [12] - 6:13, 7:18, 7:19, 7:22,
  7:23, 7:24, 11:7, 11:10, 16:20, 16:24
accessed [4] - 4:23, 5:18, 5:21, 17:2
accessing [1] - 12:8
act [1] - 4:25
add [1] - 12:9
address [1] - 16:19
addressing [1] - 4:20
affidavit [1] - 4:20
affidavits [1] - 10:17
affirming [1] - 4:21
agent [2] - 6:20, 7:4
agents [2] - 7:2, 16:20
ago [2] - 13:5, 13:7
agree [1] - 12:1
agreement [2] - 4:12, 11:25
agreements [1] - 9:24
ahead [4] - 8:18, 12:5, 14:21, 14:24
Akers [1] - 3:22
akers [5] - 3:24, 4:7, 4:12, 12:24, 13:13
AL [1] - 1:6
ALSO [1] - 2:7
announcement [1] - 3:10
answer [2] - 7:4, 7:15
Antonio [3] - 6:23, 6:24, 7:2
apologize [1] - 3:3
appear [1] - 5:17
APPEARANCES [1] - 1:15
arrested [2] - 10:23
assigns [1] - 16:21
assisted [1] - 1:24
assumes [1] - 6:10
assuming [1] - 15:12
attempt [1] - 12:17
attest [1] - 7:6
attorney [1] - 4:3
Attorney [1] - 8:6

## B

based [2] - 5:14, 6:11
BEFORE [1] - 1:11
behalf [3] - 3:12, 3:14, 3:16
belonging [1] - 16:22
Benson [2] - 1:18, 3:14
best [3] - 4:22, 5:2, 6:8
between [3] - 9:24, 10:19, 10:20
beyond [1] - 9:9
border [1] - 7:3
breached [1] - 10:3
brief [1] - 11:21
briefly [1] - 10:16
brought [2] - 10:24, 13:9
Brownsville [1] - 6:22
Burns [3] - 2:8, 3:21, 6:17
burns [2] - 7:1, 7:6
burns' [1] - 6:14
business [1] - 8:20

## C

California [1] - 8:6
Cameron [2] - 2:3, 3:20
cannot [1] - 6:10
case [8] - 5:18, 9:15, 11:5, 12:14, 13:22,
  14:6, 15:14, 15:21
Cassidy [1] - 2:3
Catherine [2] - 16:17, 17:8
caused [1] - 15:15
caution [3] - 14:23, 15:1, 15:9
CERTIFICATE [1] - 17:18
certify [1] - 17:20
changed [1] - 13:15
charge [1] - 4:3
charged [1] - 15:25
chief [2] - 6:21, 6:22
Chinese [1] - 5:19
choosing [1] - 7:20
circumstances [1] - 9:13
citizen [1] - 15:13
citizens [1] - 10:5
city [1] - 9:4
claimed [2] - 10:21, 10:22
clearly [1] - 12:18
clerk's [1] - 16:3
client [3] - 8:24, 10:24, 15:10
client's [1] - 4:9
clients [3] - 9:18, 9:24, 15:20
co [1] - 16:12
co-counsel [1] - 16:12
coming [1] - 11:3
communication [2] - 13:21, 14:7
communications [1] - 6:14
compared [1] - 13:14
complete [1] - 12:16
comply [2] - 16:18, 17:5, 17:10
compromise [1] - 7:4
computer [1] - 1:24, 16:21
computer-assisted [1] - 1:24
computers [4] - 4:23, 5:21, 16:25, 17:2
concern [5] - 9:8, 9:9, 14:16, 14:18,
  15:23
concerned [3] - 9:19, 10:4, 10:5
concluded [1] - 14:6
Concluded [1] - 17:17
conduct [1] - 9:5
conducting [1] - 9:6
confer [1] - 16:12
confidential [5] - 6:25, 12:10, 12:13,
  12:15, 12:20
confidentiality [4] - 9:23, 11:25, 12:2,
  13:4
confidentially [3] - 6:7, 9:22, 17:1
confirm [4] - 5:17, 6:14, 6:25, 12:24
conflicting [2] - 12:23, 13:12
Constantine [1] - 1:17
consultant [2] - 3:21, 6:18
consultation [1] - 4:11

**Contempt** [1] - 3:9
**CONTEMPT** [1] - 1:10
**contempt** [3] - 16:18, 17:4
**context** [1] - 15:24
**contract** [1] - 9:4
**control** [1] - 16:24
**cooperated** [1] - 8:2
**Coordinator** [1] - 14:2
**copy** [1] - 3:5
**corporation** [3] - 10:23, 10:25, 11:1
**correct** [2] - 11:4, 17:21
**correctly** [1] - 11:11
**counsel** [13] - 3:11, 3:19, 6:8, 6:15,
   6:23, 8:18, 9:12, 10:3, 11:18, 11:19,
   15:19, 16:12, 17:13
**Counsel** [1] - 4:14
**counsel's** [3] - 4:4, 4:6, 4:8
**county** [1] - 9:4
**course** [2] - 9:17, 14:10
**COURT** [36] - 1:1, 2:9, 3:2, 3:16, 3:22,
   4:2, 4:6, 4:10, 4:13, 4:17, 5:3, 5:8,
   5:20, 6:3, 6:16, 6:19, 7:9, 11:12,
   11:15, 11:19, 11:23, 12:2, 12:5, 13:18,
   14:3, 14:16, 14:20, 14:24, 15:2, 15:6,
   15:16, 16:2, 16:8, 16:14, 16:16, 17:18
**Court** [17] - 4:15, 4:17, 5:2, 5:4, 5:6,
   5:20, 8:14, 13:4, 13:10, 13:16, 13:25,
   14:2, 15:23, 15:25, 16:3, 16:16, 17:2
**Court's** [3] - 16:19, 17:6, 17:10
**courtroom** [2] - 11:22, 17:12
**coverage** [1] - 15:10
**CRR** [2] - 2:10, 17:25
**cruise** [1] - 4:1
**CSR** [1] - 2:10
**cure** [1] - 17:3
**custody** [2] - 16:24, 17:16
**customary** [1] - 14:3

---

**D**

**data** [6] - 6:2, 7:19, 8:16, 8:21, 12:8,
   16:22
**DATE** [1] - 17:24
**days** [2] - 9:7
**deal** [1] - 9:20
**Dean** [1] - 3:13
**defendant's** [1] - 3:7
**Defendants** [3] - 16:17, 16:20, 17:5
**defendants** [3] - 10:20, 10:21, 11:9
**DEFENDANTS** [1] - 2:1
**defer** [1] - 15:25
**delay** [1] - 3:3
**deny** [1] - 16:4
**department** [2] - 8:5, 8:6
**designation** [1] - 3:19
**desire** [2] - 9:12, 13:1
**detained** [1] - 17:8
**different** [2] - 5:16, 7:8
**directly** [3] - 6:15, 6:22, 7:12

**disclose** [4] - 8:10, 9:20, 13:2, 17:1
**disclosed** [1] - 12:11
**disclosure** [2] - 6:11, 16:23
**discover** [1] - 13:10
**discovering** [1] - 12:17
**discussion** [1] - 11:24
**displayed** [1] - 6:1
**DISTRICT** [3] - 1:1, 1:1, 1:12
**District** [1] - 8:6
**DIVISION** [1] - 1:2
**division** [2] - 6:15, 6:22
**document** [2] - 12:2, 14:11
**Document** [1] - 3:7
**Documents** [1] - 17:11
**documents** [3] - 3:5, 12:21, 14:4
**domain** [3] - 8:23, 14:12, 14:14
**done** [11] - 4:25, 5:6, 5:11, 5:12, 5:14,
   6:2, 6:5, 6:6, 6:8, 8:17, 14:13
**down** [2] - 7:1, 7:6
**dpamphilis@kasowitz.com** [1] - 1:21
**dramatically** [1] - 13:15
**duty** [1] - 9:10

---

**E**

**e-mail** [1] - 10:17
**educated** [1] - 5:14
**effect** [1] - 13:20
**effort** [1] - 10:7
**eight** [1] - 9:7
**either** [2] - 7:12, 7:16
**elbow** [1] - 5:8
**election** [3] - 9:5, 9:7, 10:7
**Email** [2] - 1:21, 2:5
**embarrassment** [1] - 15:15
**engaged** [1] - 5:13
**engaging** [2] - 7:10, 13:3
**Engelbrecht** [4] - 6:12, 7:11, 16:18,
   17:8
**engines** [1] - 6:1
**ensure** [2] - 10:1, 10:7
**entered** [1] - 3:19
**entirely** [1] - 15:23
**entities** [3] - 7:25, 16:21, 16:23
**entitled** [3] - 3:7, 17:22
**environment** [1] - 15:25
**ET** [1] - 1:6
**evaded** [1] - 8:14
**evasive** [1] - 8:13
**evidence** [2] - 13:13, 13:23
**Evidence** [1] - 3:8
**ex** [2] - 13:21, 16:19
**except** [1] - 8:12
**exchange** [1] - 10:18
**excused** [1] - 17:13
**exercise** [1] - 7:20
**exhibit** [3] - 13:22, 13:24, 17:11
**exhibits** [1] - 14:4
**expect** [2] - 9:3

---

**F**

**fact** [5] - 7:3, 7:7, 7:19, 8:22, 15:17
**failure** [1] - 16:18
**family** [1] - 15:15
**Fannin** [1] - 2:4
**far** [1] - 6:9
**FBI** [11] - 6:11, 6:18, 6:20, 6:21, 6:23,
   8:8, 8:10, 9:20, 13:1, 13:3
**ferret** [1] - 10:9
**few** [1] - 11:21
**figure** [1] - 8:16
**filed** [2] - 3:5, 14:5
**filing** [1] - 4:14
**finally** [1] - 16:8
**first** [1] - 8:9
**FOR** [3] - 1:1, 1:16, 2:1
**foregoing** [1] - 17:20
**former** [1] - 6:21
**forth** [2] - 7:10, 17:10
**forward** [3] - 10:8, 11:1, 11:2
**frankly** [1] - 13:16
**Friday** [2] - 3:6, 13:23
**fully** [1] - 17:10
**Furtherance** [1] - 3:8

---

**G**

**gain** [1] - 7:21
**gaps** [1] - 13:14
**general** [1] - 9:14
**given** [2] - 10:6, 10:16
**Google** [1] - 5:25
**government** [1] - 6:24
**Gregg** [3] - 4:20, 16:17, 17:7
**Gregor** [1] - 2:3
**guess** [2] - 6:8, 15:20

---

**H**

**hand** [1] - 10:22
**handed** [1] - 14:2
**handled** [1] - 16:3
**handling** [1] - 7:2
**harassed** [2] - 8:23, 8:25
**Hasson** [7] - 4:24, 5:2, 6:10, 12:19,
   14:9, 15:20
**heard** [3] - 8:17, 12:12, 12:24
**hearing** [1] - 13:14
**HEARING** [1] - 1:10
**hearsay** [1] - 12:23
**Heather** [1] - 3:20
**helping** [1] - 6:17
**herring** [2] - 12:11, 12:16
**himself** [1] - 11:7
**hold** [1] - 14:20
**holding** [1] - 17:4
**Honor** [16] - 3:13, 3:18, 4:16, 4:19, 11:4,
   11:14, 11:21, 12:4, 12:22, 13:8, 13:11,

14:1, 14:15, 14:19, 16:11, 16:15
**HONORABLE** [1] - 1:11
**hotel** [2] - 5:1, 7:16
**hours** [1] - 7:5
**HOUSTON** [1] - 1:2
**houston** [1] - 1:4
**Houston** [3] - 1:20, 2:4, 2:11
**HOYT** [1] - 1:11

## I

**identified** [1] - 15:18
**identity** [1] - 16:23
**important** [2] - 8:21, 12:19
**impression** [1] - 4:25
**IN** [1] - 1:1
**INC** [2] - 1:3, 1:6
**including** [1] - 8:24
**indicated** [1] - 7:13
**indicating** [1] - 8:1
**indicted** [1] - 10:23
**indirectly** [1] - 7:12
**individual** [5] - 10:20, 12:6, 14:8, 14:9, 15:12
**individual's** [1] - 15:5
**individuals** [1] - 10:8
**informant** [5] - 6:25, 12:10, 12:13, 12:15, 12:20
**information** [12] - 7:13, 7:24, 8:5, 8:7, 9:16, 9:21, 9:25, 10:9, 10:14, 11:7, 13:2, 16:25
**insider** [1] - 9:20
**intelligence** [1] - 7:21
**intentions** [1] - 7:10
**interest** [2] - 10:5, 13:3
**International** [1] - 1:18
**intimidate** [1] - 9:6
**involved** [1] - 12:8
**irrespective** [2] - 11:1, 16:2
**issue** [2] - 7:3, 10:2
**items** [1] - 4:21

## J

**Joe** [1] - 3:19
**John** [1] - 2:2
**Joseph** [1] - 2:2
**Judge** [2] - 8:17, 16:1
**JUDGE** [1] - 1:12
**judicial** [1] - 9:9

## K

**Kasowitz** [2] - 1:18, 3:14
**Kathleen** [4] - 2:10, 17:20, 17:24, 17:25
**keep** [1] - 12:1
**KENNETH** [1] - 1:11
**knowledge** [8] - 4:22, 5:2, 7:21, 8:3, 8:12, 8:13, 9:13, 15:17
**known** [3] - 5:15, 11:17, 14:11

**Konnech** [8] - 3:12, 3:15, 4:23, 5:24, 9:9, 10:19, 16:22, 17:1
**KONNECH** [1] - 1:3
**Konnech's** [5] - 5:19, 5:21, 6:2, 16:25, 17:2

## L

**language** [1] - 7:17
**large** [1] - 11:7
**Larsen** [2] - 2:2, 3:19
**last** [2] - 6:14, 6:21
**lawsuit** [3] - 10:19, 10:24, 12:9
**lawyers** [1] - 8:19
**lay** [1] - 9:11
**lead** [1] - 3:19
**least** [1] - 3:4
**leaving** [1] - 15:22
**length** [1] - 11:18
**light** [1] - 8:22
**line** [1] - 10:12
**listing** [1] - 4:3
**litigation** [1] - 10:25
**LLP** [1] - 1:18
**locate** [1] - 6:11
**located** [1] - 16:25
**look** [1] - 13:20
**Louisiana** [1] - 1:19

## M

**mail** [1] - 10:17
**maintain** [1] - 13:4
**manager** [1] - 13:22
**manufactured** [1] - 12:17
**Marshal** [1] - 17:9
**Marshals** [1] - 17:15
**Martinez** [1] - 3:20
**material** [1] - 5:24
**matter** [6] - 5:6, 7:20, 8:15, 13:19, 15:9, 17:22
**mean** [5] - 4:7, 8:3, 8:19, 15:2, 15:3
**means** [1] - 12:7
**mechanical** [1] - 1:23
**media** [1] - 15:24
**Mediterranean** [1] - 3:25
**Michael** [2] - 2:2, 3:18
**microphone** [1] - 5:9
**might** [10] - 5:14, 6:2, 6:5, 6:8, 9:12, 9:13, 10:10, 15:14, 16:3
**Mike** [2] - 12:19, 15:20
**Miller** [4] - 2:10, 17:20, 17:24, 17:25
**misstated** [1] - 11:5
**moment** [1] - 16:13
**month** [1] - 13:7
**moot** [1] - 17:5
**morning** [4] - 3:2, 3:4, 11:18, 11:22
**most** [1] - 6:18
**motion** [5] - 14:21, 16:4, 16:5, 17:4

**MR** [33] - 3:13, 3:18, 3:24, 4:4, 4:8, 4:11, 4:16, 4:19, 5:5, 5:10, 5:23, 6:4, 6:17, 6:20, 11:4, 11:14, 11:16, 11:21, 11:24, 12:4, 12:6, 14:1, 14:15, 14:19, 14:22, 14:25, 15:4, 15:7, 15:22, 16:7, 16:10, 16:12, 16:15
**mwynne@gwafirm.com** [1] - 2:5

## N

**name** [4] - 12:8, 12:11, 13:8, 14:9
**Nathan** [2] - 1:17, 3:14
**national** [2] - 10:2, 10:4
**necessarily** [2] - 9:3, 15:10
**need** [3] - 12:8, 12:9, 13:9
**needs** [2] - 13:9, 13:17
**network** [1] - 16:22
**never** [3] - 7:15, 11:6, 11:9
**next** [1] - 9:7
**night** [2] - 6:14, 6:21
**NO** [1] - 1:3
**nothing** [4] - 10:1, 12:4, 15:13, 16:15
**notion** [1] - 12:10
**Nov** [1] - 17:24
**Number** [2] - 3:7, 4:21
**number** [3] - 5:16, 11:8, 15:11
**Numbers** [1] - 17:11
**Numeral** [1] - 4:21

## O

**obtained** [1] - 5:15
**October** [2] - 12:25, 13:13
**OCTOBER** [1] - 1:6
**OF** [1] - 1:1
**offered** [1] - 13:22
**office** [1] - 16:3
**official** [1] - 9:4, 9:10
**one** [7] - 10:23, 11:25, 12:23, 13:18, 14:20, 16:12, 17:9
**online** [1] - 5:23
**open** [2] - 5:24, 10:12
**opinion** [1] - 8:11
**opposed** [2] - 16:4, 16:5
**opposing** [2] - 11:18, 16:5
**order** [4] - 13:4, 16:19, 17:6, 17:10
**ordered** [2] - 17:7, 17:8
**outlet** [1] - 15:24
**own** [1] - 14:10

## P

**PAMPHILIS** [8] - 3:13, 11:21, 11:24, 12:4, 12:6, 14:1, 14:15, 16:10
**Pamphilis** [2] - 1:17, 3:13
**paralegal** [1] - 3:20
**part** [1] - 14:10
**parte** [2] - 13:21, 16:19
**particular** [1] - 15:12
**particularly** [1] - 8:22

**parties** [1] - 3:11
**party** [2] - 10:25, 12:9
**passed** [1] - 14:4
**people** [3] - 8:23, 9:6, 10:6
**perhaps** [1] - 13:10
**person** [6] - 4:23, 6:25, 7:14, 9:18, 13:9, 15:18
**personally** [1] - 11:14
**persons** [2] - 7:15, 16:23
**Phillips** [10] - 4:20, 4:25, 5:3, 5:5, 5:21, 6:12, 7:11, 7:13, 16:17, 17:8
**Phillips'** [1] - 11:6
**photograph** [3] - 14:7, 14:17, 15:12
**physically** [1] - 11:8
**picture** [2] - 14:14, 16:6
**place** [2] - 8:9, 14:14
**placing** [1] - 16:6
**plaintiff** [3] - 3:15, 11:20, 16:10
**PLAINTIFF** [1] - 1:16
**plaintiff's** [4] - 6:7, 10:3, 15:18, 16:21
**plaintiffs** [2] - 9:11, 9:25
**pleadings** [1] - 15:19
**PLLC** [1] - 2:3
**point** [1] - 10:14
**points** [2] - 11:22, 13:12
**political** [1] - 15:25
**position** [1] - 13:15
**possession** [3] - 6:10, 11:9, 16:24
**posted** [1] - 15:14
**Powell** [2] - 2:3, 3:20
**present** [1] - 3:11
**PRESENT** [1] - 2:7
**presented** [4] - 4:15, 10:1, 12:3, 14:11
**press** [1] - 15:9
**prevent** [1] - 12:17
**previously** [1] - 16:16
**privacy** [1] - 15:5
**proceedings** [2] - 1:23, 17:21
**produced** [1] - 1:24
**programs** [1] - 5:16
**protect** [2] - 9:14, 13:1
**protected** [3] - 16:21, 16:25, 17:2
**protection** [1] - 15:11
**provide** [1] - 9:25
**provided** [6] - 4:19, 7:24, 8:4, 10:13, 10:17, 17:5
**public** [7] - 8:3, 8:22, 9:14, 14:5, 14:11, 14:14
**publicly** [1] - 12:11
**purely** [2] - 14:22, 14:25
**Purge** [1] - 3:8
**purposes** [3] - 10:9, 11:16, 15:4

## Q

**quick** [1] - 13:20
**quote** [1] - 10:2

## R

**reach** [1] - 11:17
**reached** [1] - 12:1
**read** [2] - 9:16, 10:16
**real** [1] - 9:14
**really** [1] - 13:11
**reason** [1] - 9:19
**received** [2] - 3:5, 15:9
**recently** [1] - 6:18
**record** [3] - 11:17, 14:5, 17:21
**recorded** [1] - 1:23
**red** [2] - 12:11, 12:16
**referring** [1] - 12:22
**regarding** [3] - 13:22, 14:7, 14:17
**relate** [2] - 12:15, 15:10
**relates** [2] - 3:10, 16:4
**remain** [1] - 17:12
**render** [1] - 17:3
**REPORTER** [1] - 2:9
**REPORTER'S** [1] - 17:18
**Request** [1] - 3:8
**request** [4] - 4:4, 4:6, 4:8, 4:9
**requested** [1] - 6:7
**required** [1] - 13:2
**restraining** [1] - 16:19
**retained** [1] - 6:13
**return** [1] - 16:22
**returned** [1] - 13:24
**Richardson** [2] - 1:17, 3:14
**rightfully** [1] - 13:12
**RMR** [2] - 2:10, 17:25
**Roman** [1] - 4:21
**room** [5] - 5:1, 7:14, 7:15, 7:16, 12:7
**Room** [1] - 2:10
**RPR** [1] - 17:25
**Rusk** [1] - 2:10

## S

**San** [3] - 6:23, 6:24, 7:2
**Saturday** [1] - 3:6
**saw** [1] - 10:16
**screen** [2] - 5:7, 5:11
**seal** [2] - 14:21, 16:6
**search** [1] - 6:1
**seated** [1] - 3:2
**second** [2] - 5:6, 14:20
**Section** [1] - 12:7
**security** [2] - 10:2, 10:4
**Security** [1] - 15:11
**see** [6] - 6:1, 6:2, 6:3, 10:17, 14:14, 14:21
**seeing** [1] - 10:22
**seek** [1] - 10:9
**sense** [1] - 9:14
**September** [1] - 13:6
**served** [1] - 3:4
**servers** [1] - 5:19

**set** [1] - 17:10
**share** [1] - 6:7
**sheriff's** [1] - 8:5
**showed** [1] - 5:24
**shown** [2] - 5:7, 5:10
**significance** [1] - 10:18
**significant** [1] - 8:21
**simply** [5] - 7:11, 7:20, 9:11, 10:8, 12:1
**situation** [1] - 7:8
**six** [1] - 7:5
**small** [1] - 4:21
**Social** [1] - 15:11
**someone** [4] - 9:5, 12:18, 15:13, 15:14
**sorry** [1] - 4:9
**source** [1] - 5:24
**SOUTHERN** [1] - 1:1
**specifics** [1] - 5:12
**speculation** [1] - 5:14
**spoken** [3] - 6:20, 6:22, 6:23
**stand** [1] - 12:25
**start** [1] - 13:10
**started** [1] - 3:4
**statement** [1] - 11:5
**statements** [1] - 13:12
**STATES** [2] - 1:1, 1:12
**States** [3] - 10:6, 15:13, 17:9
**status** [2] - 12:13, 12:16
**stenography** [1] - 1:23
**step** [1] - 9:1
**stepped** [1] - 8:15
**still** [2] - 3:25, 11:10
**straight** [1] - 7:15
**Submission** [1] - 3:8
**submitted** [1] - 12:21
**suggestion** [1] - 15:7
**suggests** [2] - 7:18, 7:23
**Suite** [2] - 1:19, 2:4
**summarizes** [1] - 6:4
**swear** [1] - 6:6
**system** [1] - 5:19

## T

**Ted** [1] - 3:21
**Tel** [2] - 2:5, 2:11
**telephone** [1] - 10:12
**temporary** [1] - 16:19
**ten** [1] - 9:7
**terabytes** [1] - 11:8
**testifying** [1] - 12:14
**testimony** [3] - 4:22, 11:6, 12:12
**TEXAS** [1] - 1:1
**Texas** [2] - 1:4, 2:11
**texts** [1] - 13:6
**THE** [39] - 1:1, 1:1, 1:6, 1:11, 1:16, 2:1, 3:2, 3:16, 3:22, 4:2, 4:6, 4:10, 4:13, 4:17, 5:3, 5:8, 5:20, 6:3, 6:16, 6:19, 7:9, 11:12, 11:15, 11:19, 11:23, 12:2, 12:5, 13:18, 14:3, 14:16, 14:20, 14:24,

15:2, 15:6, 15:16, 16:2, 16:8, 16:14, 16:16
**thereby** [1] - 17:3
**therefore** [1] - 17:7
**third** [2] - 6:25, 7:14
**threatened** [2] - 8:23, 8:24
**three** [1] - 13:5
**throughout** [1] - 7:3
**Thursday** [2] - 12:25, 13:23
**Todd** [2] - 2:8, 6:17
**Torres** [2] - 1:18, 3:14
**touching** [1] - 5:8
**Tower** [1] - 1:18
**tracing** [1] - 7:5
**tracking** [1] - 7:1
**transcript** [1] - 17:21
**Transcript** [1] - 1:24
**transcription** [1] - 1:24
**transparency** [1] - 13:17
**tried** [1] - 8:15
**TRO** [2] - 13:3, 17:11
**TRUE** [1] - 1:6
**True** [3] - 3:17, 6:12, 10:19
**truth** [3] - 12:18, 13:16, 13:17
**trying** [2] - 9:5, 10:8
**TX** [2] - 1:20, 2:4

## U

**U.S** [1] - 17:15
**unauthorized** [1] - 16:20
**under** [4] - 12:7, 13:2, 14:21, 16:6
**United** [3] - 10:6, 15:13, 17:9
**UNITED** [2] - 1:1, 1:12
**unless** [1] - 9:5
**up** [1] - 15:23

## V

**Vote** [3] - 3:17, 6:13, 10:20
**VOTE** [1] - 1:6
**VS** [1] - 1:4
**vulnerabilities** [2] - 5:15, 5:18

## W

**website** [2] - 7:25, 8:1
**Wedge** [1] - 1:18
**weekend** [1] - 12:22
**weeks** [2] - 8:19, 13:5
**Wire** [1] - 5:25
**witness** [1] - 5:16
**world** [1] - 9:2
**writing** [1] - 13:19
**Wynne** [3] - 2:2, 2:3, 3:18
**WYNNE** [25] - 3:18, 3:24, 4:4, 4:8, 4:11, 4:16, 4:19, 5:5, 5:10, 5:23, 6:4, 6:17, 6:20, 11:4, 11:14, 11:16, 14:19, 14:22, 14:25, 15:4, 15:7, 15:22, 16:7, 16:12, 16:15

## Y

**y'all** [1] - 17:14
**yesterday** [3] - 3:25, 5:17, 5:21
**yourself** [1] - 4:3
**Yu** [2] - 10:21, 11:2