UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KONNECH, INC., | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 4:22-cv-03096 |
| | § | |
| v. | § | |
| | § | |
| TRUE THE VOTE, INC., *et al.,* | § | |
| | § | |
| Defendants. | § | |

# DEFENDANTS' ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT

## INTRODUCTION

1. Defendants admit Ms. Engelbrecht is the founder of True the Vote and that Konnech was the subject of an FBI investigation, but state that Defendant Gregg Phillips is no longer a member of the board. Defendants deny the remainder of Paragraph 1.

2. As to the first sentence of Paragraph 2, Defendants admit Konnech is a company incorporated in the U.S. but have no independent information about its founding or formal affiliation with the Chinese Communist Party. As to the second sentence, Defendants lack information on how Konnech has obtained all of its contracts. Whether Plaintiff has engaged in bribery or other criminal activity are questions of law that do not require an answer. Defendants deny the third sentence regarding storage of Konnech's data; Defendants believe at least some of that data has been obtained and stored by persons unknown on unsecured servers located in China. As to the fourth and fifth sentences, Defendants lack knowledge about all of Plaintiff's suite of software products, but believe that Plaintiff has offered to customers certain ballot-handling software. Plaintiff's sixth sentence is a tendentious statement of argument or opinion that does not require an answer. Defendants deny the seventh sentence.

3. Defendants deny the first sentence of Paragraph 3, and point out that True the Vote began its business in 2010. Plaintiff's second sentence, irrelevant to this matter and unduly inflammatory and tendentious, refers to documents that speak for themselves, while Defendants deny they have "enriched themselves" or "spread conspiracy theories". Regarding the third sentence, which is also irrelevant to this matter, Defendants admit Engelbrecht, True the Vote, Gregg. Phillips, and others were made defendants in a 2020 lawsuit, since dismissed, and that one of True the Vote's donors donated $2.5 million. Regarding the fourth sentence, Defendants lack knowledge as to what the donor discovered, but deny that they "siphoned" funds for personal gain.

4. Defendants admit they were involved in the referenced documentary but deny the remainder of the first sentence of Paragraph 4. Defendants deny that all theories referred to in the second sentence have been disproven and aver that the referenced documentary and extraneous citations in footnotes may speak for themselves. Regarding the third sentence of Paragraph 4, Defendants have no knowledge of what Plaintiff means by "declaring an end to 'mules'" or a documentary running its course, and so deny, but admit they were involved in an event called The Pit.

5. Defendants deny the first sentence of Paragraph 5. As to the second sentence, Defendants admit they announced a website called Open.Ink to publish publicly available documents, and deny the remainder of the sentence.

6. As to the first sentence of Paragraph 6, Defendants deny that they have obtained any personal data at all from poll workers, and deny that the data they viewed included 1.8 million U.S. poll workers. Not all of the data Defendant Phillips viewed was of poll workers, but Defendants have since discovered there were far more than 1.8 million records on the server. Defendants admit that Defendant Phillips was made aware of social security numbers, phone

numbers, email addresses, and banking information, which appeared to have originally derived from Konnech, residing on a server in China, but have no knowledge as to the ownership of the server or how the data got there. Defendants deny such data was protected on the server. Defendants lack knowledge regarding Plaintiff's claim in the second sentence regarding the amount of data on poll workers Konnech has managed. As to the third sentence, Defendants lack knowledge of the full extent of Konnech's security measures, and Defendants deny that any Defendants stated they hacked or did hack into any of Plaintiff's computers, protected or otherwise.

7. As to the first sentence of Paragraph 7, Defendants deny that they have claimed access to Konnech's computers; Defendants viewed data, appearing to derive from Konnech, on unsecured computers of unknown ownership. Plaintiff's second and third sentences refer to podcasts whose content speaks for itself, but Defendants deny they attempted to conceal knowingly unlawful conduct or that they hacked into any servers, let alone Konnech's, and deny that they unlawfully or otherwise downloaded any data. Regarding the fourth sentence, Defendants deny admitting that Defendants are subjects of an ongoing FBI investigation. Defendants deny the fifth sentence to the extent it characterizes their actions as "attacks" and they deny that they ever intended to release information from any servers owned or controlled by Konnech, or any personal information of any kind.

8. Defendants deny Plaintiff's claim in the first sentence of Paragraph 8 that they are pushing a false narrative or conspiracy theories but admit they have made posts and ReTruths on social media. Defendants deny the allegations in the second sentence. Defendants lack knowledge or information as to the online content referred to by Plaintiff in the third sentence, which content is in any event in the form of documents that speak for themselves. As to the fourth sentence,

Defendants lack knowledge as to the virality of Konnech on social media or the number of posts regarding it. As to the fifth sentence, Defendants lack knowledge as to any death threats against Konnech's founder and family, or whether they have left their home, but deny they have engaged in a public smear campaign.

9. Paragraph 9 is denied.

10. Defendants deny Plaintiff's first sentence of Paragraph 10 to the extent it attempts to characterize all three Defendants' state of mind or intentions, or alleges claims of misconduct, and Defendants lack knowledge regarding unnamed others and their work. Plaintiff's second sentence constitutes statements of opinion, puffery, and conclusion of law that require no answer, but Defendants deny they have fabricated any conspiracy against Konnech.

11. As to the first sentence, Defendants deny that any damaging behavior has occurred or will continue to occur, with or without the court's involvement, and lack knowledge as to Konnech's contracts. As to the second sentence, Defendants lack knowledge as to why Konnech is filing this action, but to the extent it refers to their Complaint, that document speaks for itself.

## PARTIES

12. Paragraph 12 is admitted.

13. Paragraph 13 is admitted.

14. Paragraph 14 is admitted.

15. Paragraph 15 is admitted.

## JURISDICTION AND VENUE

16. Plaintiff's statements of jurisdiction and venue in Paragraph 16 are conclusions of law that do not require an answer.

17. Plaintiff's regarding venue in the first and second sentences of Paragraph 17 are conclusions of law that do not require an answer. Defendants aver that True the Vote is headquartered in Houston, Texas, and that Defendant Engelbrecht resides in Cat Springs. Defendants are without knowledge as to the property Plaintiff refers to in the first sentence. Defendants deny they have published defamatory statements about Plaintiff.

18. Defendants admit Paragraph 18's statements regarding Defendant True the Vote's incorporation and principal place of business and Defendant Engelbrecht's domicile, but deny that Defendant Phillips committed a tort and committed other unlawful conduct, or that any Defendants obtained any information from computers, protected and otherwise, belonging to Plaintiff. The remainder of Plaintiff's statements are conclusions of law that do not require an answer.

## FACTUAL BACKGROUND

19. Defendants lack knowledge regarding the statements in Paragraph 19 except for statements regarding the state of incorporation of Konnech and its provision of a product called PollChief, both of which it admits. On information and belief, Konnech has previously offered or currently offers software that handles ballots.

20. Defendants admit they advertised an event called The Pit, but the rest of Paragraph 20 is denied.

21. Defendants admit Paragraph 21 except to the extent it characterizes their states of mind or beliefs, any alleged conspiracy, or disinformation.

22. Defendants admit Paragraph 22 except for its characterization of all attendees at The Pit as conspiracy theorists. The remainder of the paragraph is denied.

23. Regarding Paragraph 23, Defendants admit that they took the stage to announce a website at open.ink and informed attendees that subscribers could log on to view records related to elections, and deny the remainder.

24. Defendants admit the first sentence of Paragraph 24 except to the extent it characterizes their state of mind as one of attempting to intimidate anyone. As to the second sentence, Defendants admit that they have said Konnech had some connection to a server in China, by virtue of the existence of Konnech-sourced data on that server, such as data about U.S. poll workers and the publicly available information that domain names owned and operated by Konnech resided on the same server. As to the third sentence, Defendants deny that they claimed or did hack into, steal data from, or illegally download information from any computer, including any computer owned or controlled by Konnech, or that they claimed to have either seen or downloaded data on 1.8 million poll workers, but admit that their belief that the website 2dmeetings.com, which also once ran on the same server, appeared to be involved in Chinese elections. Plaintiff's screenshot of a social media post from third-party Taylor Phillips is a document that speaks for itself.

25. Defendants lack knowledge of how all of Konnech's U.S. customer data is secured and stored, but on information and belief stemming from what was discovered during the FBI's raid on Plaintiff's offices, and forensics conducted by state prosecutors, Defendants deny that all Konnech-related data was securely stored.

26. As to the first sentence of Paragraph 26, Defendants admit that they brought to the attention of the FBI the existence of data of U.S. poll workers, and more, residing on an unsecured server located in China, but are without knowledge as to what Plaintiff means by "brought all of their information." As to the second sentence, Defendants admit that they expressed concerns and engaged in speculation that may have risen to what might be characterized as fear that the FBI

might have considered or entertained the idea of turning the tables on them, but deny that they had knowledge of a formal FBI investigation into them, sought to "capitalize" on it, or hacked any computers or stole data.

27. As to the first sentence of Paragraph 27, Defendants deny making defamatory statements or seeking to inflict damage from them, and deny encouraging any "attacks", on Konnech or others, but admit they encouraged attendees to share information and do research generally. To the extent the sentence refers to a document by a third-party that Plaintiff found online, the document speaks for itself. Defendants lack knowledge regarding Plaintiff's claims of Internet evolution or speed of any information about Konnech appearing on the Internet.

28. Defendants lack knowledge regarding the claims of Paragraph 28, while the referenced documents, which appear to be emails, speak for themselves. Defendants deny that they have made malicious and baseless attacks against Konnech.

29. Paragraph 29 is denied.

30. As to Paragraph 30, Defendants admit to posting and ReTruthing various articles in the exercise of their free speech rights, but those documents, whichever ones Plaintiff is referring to, speak for themselves.

31. Paragraph 31 refers to a document, which document speaks for itself, but was shared, not posted, by Defendant True the Vote.

32. Paragraph 32 refers to a document, which document speaks for itself but does not mention Konnech or any conspiracy theory, growing or otherwise.

33. Denied. Paragraph 33 refers to documents that speak for themselves, but True the Vote's document, in the form of a post sharing a third-party document, does not mention Konnech or make direct accusations of unlawfulness.

34. Denied. Paragraph 34 refers to documents that speak for themselves, but True the Vote's document, in the form of a post sharing a third-party document, does not reference Konnech or make any of the stated claims.

35. Defendant Phillips admits to Retruthing the post referenced in Paragraph 35, which is a third-party document that speaks for itself, but ReTruths of posts by third parties do not amount to statements by Defendants.

36. Defendants admit they hosted the Tiger Project podcast, as titled, on September 5, 2022, and deny the remainder of Paragraph 36.

37. Defendant Phillips admits to ReTruthing the post and article referenced in Paragraph 37, which refers to documents that speak for themselves, while ReTruths of articles by third parties do not amount to statements by Defendants.

38. Defendants admit they have spoken in other media but deny attacks, hacking into computers, stealing data, or confessing to any of these, and deny the rest of Paragraph 38.

39. Defendants deny the first sentence of Paragraph 39. The second sentence of Paragraph 39 refers to content from a podcast that speaks for itself, does not mention bribery, and constitutes protected free speech, and Defendants deny it constitutes an accusation of bribery. Defendants lack information as to the third and fourth sentences of Paragraph 39, except that on information and belief they have provided software that handles ballots.

40. Paragraph refers to content from a podcast that speaks for itself, but Defendants deny the inferences Plaintiffs have created by mis-use of square brackets, including that Defendants stated they ever hacked, took, or discussed disclosing data belonging to Konnech.

41. Paragraph 41 refers to content from a podcast that speaks for itself, but Defendants admit Defendant Phillips witnessed, on a television monitor in a Dallas hotel room, what appeared to be

millions of records of Americans, all being stored on a server in China, that he drove to Houston to speak with Defendant Engelbrecht about it, and that they decided to file a complaint with the FBI, but deny that he gained unauthorized access to any computer (Konnech-owned or otherwise), or that they turned over or even possessed any data other than publicly available data that did not arise from the server.

42. Defendants admit that Defendant Phillips spoke on the referenced podcast, which speaks for itself, but deny that they accessed the referenced server. Defendants have no knowledge as to the owner of the server.

43. Paragraph 43 refers to content from a podcast that speaks for itself, but Defendants admit they claimed, and that Konnech was, the subject of an FBI investigation, that a grand jury indictment would issue imminently, and that Defendant Phillips was involved in a major and mature counterintelligence operation with the FBI investigating Konnech, but deny that such statements were false, let alone knowingly false.

44. Defendants admit that Defendant Phillips spoke on the referenced podcast, though Paragraph 44 refers to content from a podcast that speaks for itself. Defendants deny that they claimed to know Konnech had committed unlawful acts worthy of prosecution.

45. Paragraph 45 is denied.

46. Defendants deny the first sentence of Paragraph 46. Defendants claim data stemming from Konnech was found on a server in China, not that Plaintiff "stored" it there. Paragraph 46 refers to a podcast whose content speaks for itself, but Defendants admit to saying they witnessed the presence, on a server located in China, of data apparently sourced from Konnech.

47. Defendants admit Paragraph 47 to the extent they advertised the referenced podcast (whose content will speak for itself) and that Defendant Phillips spoke on it, but deny stating it was Konnech who left the database open.

48. Paragraph 48 is admitted, except that Defendants deny the referenced statements were false.

49. Paragraph 49 refers to content from a podcast that speaks for itself, but on information and belief, Defendants believe Plaintiff has handled military ballots, created online voting systems such as ABVotes, and employed programmers based in China. Though not necessary for the purpose of this response, Defendants refer Plaintiff to the Felony Complaint for Arrest Warrant filed by the Los Angeles District Attorney on October 13, which states that "Konnech employees both known and unknown sent personal identifying information of Los Angeles County election workers to third-party software developers who assisted with creating and fixing Konnech's internal 'PollChief' software."

50. Defendants lack information as to Paragraph 50, except as previously stated.

51. Defendants lack knowledge as to the source of the statements in Paragraph 51, but to the extent they refer to podcasts or other documents, the documents speak for themselves.

52. Paragraph 52 refers to a podcast that speaks for itself.

53. Paragraph 53 refers to a podcast that speak for itself.

54. Defendants lack information as to the statements in Paragraph 54.

55. Paragraph 55 is denied; to the extent it contains conclusions of law, it does not require an answer.

56. Paragraph is denied; to the extent it refers to statements outside the Complaint, those statements speak for themselves.

57. Paragraph 57 is needlessly tendentious and is denied.

58. Paragraph 58 refers to documents that speak for themselves. The last sentence is denied.

59. Defendants deny the first sentence of Paragraph 59 insofar as the expenses Plaintiff refers to could have been avoided had Plaintiff understood the plain meaning of Defendants' public statements, which have never "admitted to" accessing, downloading, obtaining, or sharing information from any server, and have never spoken of seeing data on any server based in the United States, which are the only servers Plaintiff claims to operate. Defendants deny the remainder of Paragraph 59.

60. Paragraph 60 is denied, and Defendants refer Plaintiffs to the above explanations of what Defendants have actually said and done, and how it has no relation to Plaintiff's conclusions here.

61. Paragraph 61 is denied.

## CLAIM 1: DEFAMATION, LIBEL, AND SLANDER

62. Defendants repeat their responses to Paragraphs 1 through 61, as if fully set forth herein.

63. Paragraph 63 is denied. Defendants did not publish all of the foregoing statements, nor did all of them refer to Konnech, but they speak for themselves.

64. Paragraph 64 is denied.

65. Paragraph 65 is denied and contains conclusions of law that require no answer.

66. Paragraph 66 makes a conclusion of law that does not require a response.

67. Paragraph 67 is denied and contains conclusions of law that require no answer.

68. Paragraph 68 is denied and contains conclusions of law that require no answer, but Defendants are unable to answer in any event because Plaintiff does not identify which statements it believes are defamatory.

69. Paragraph 69 is denied.

70. Paragraph 70 is denied and contains conclusions of law that require no answer.

71. Paragraph 71 is denied.

## CLAIM 2: TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS RELATIONS

72. Defendants repeat their responses to Paragraphs 1 through 71 as if fully set forth herein.

73. Paragraph 73 is denied.

74. Paragraph 74 is admitted to the extent it states Konnech has contracts with governmental agencies to provide the referenced software, but Defendants are without information to conclude there are "many".

75. Paragraph 75 is denied.

76. Paragraph 76 is denied and contains conclusions of law that require no answer. Regarding the lack of necessity of Plaintiff undergoing costly audits on any servers or systems based in the United States in particular, see above.

77. Defendants lack information to answer Paragraph 77.

78. Paragraph 78 is denied and contains conclusions of law that require no answer.

79. Paragraph 79 is denied and contains conclusions of law that require no answer.

## CLAIM 3: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

80. Defendants repeat each response in Paragraphs 1 through 79 as if fully set forth herein.

81. Paragraph 81 contains conclusions of law for which no answer is required.

82. Defendants lack information to respond to Paragraph 82.

83. Paragraph 83 is denied; see above.

84. Paragraph 84 is denied; see above.

85. Paragraph 85 is denied; see above.

86. Paragraph 86 is denied; see above.

87. Paragraph 87 is denied.

88. Paragraph 88 contains conclusions of law for which no answer is required, and Defendants deny misconduct.

### CLAIM 4: CONSPIRACY TO VIOLATE THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

89. Defendants repeat each response in Paragraphs 1 through 88 as if fully set forth herein.

90. Paragraph 90 contains conclusions of law for which no answer is required.

91. Defendants lack information to respond to Paragraph 91.

92. Paragraph 92 is denied; see above.

93. Paragraph 93 is denied; see above.

94. Paragraph 94 is denied.

95. Paragraph 95 is denied.

96. Paragraph 96 is denied and contains conclusions of law that do not require an answer.

97. Paragraph 97 is denied and contains conclusions of law that do not require an answer.

98. Paragraph 98 is denied and contains conclusions of law that do not require an answer.

99. Defendants deny Paragraph 99.

100. Defendants deny Paragraph 100.

101. Defendants deny Paragraph 101.

102. Paragraph 102 contains conclusions of law that do not require an answer.

### CLAIM 5: HARMFUL ACCESS BY COMPUTER, TEXAS CIVIL PRACTICE & REMEDIES CODE § 143.001; TEXAS PENAL CODE § 33.02

103. Defendants repeat their responses to Paragraphs 1 through 102 as if set forth fully herein.

104. Paragraph 104 contains conclusions of law that do not require an answer.

105. Defendants lack information with which to answer Paragraph 105.

106. Defendants deny Paragraph 106.

107. Defendants deny Paragraph 107.

108. Defendants deny Paragraph 108.

109. Defendants deny Paragraph 109.

110. Paragraph 110 contains conclusions of law that do not require an answer.

### CLAIM 6: CONSPIRACY TO GAIN HARMFUL ACCESS BY COMPUTER, TEXAS CIVIL PRACTICE & REMEDIES CODE § 143.001; TEXAS PENAL CODE § 33.02

111. Defendants repeat their responses to Paragraphs 1 through 110 as if fully set forth herein.

112. Paragraph 112 contains conclusions of law that do not require an answer.

113. Paragraph 113 is denied.

114. Paragraph 114 is denied.

115. Paragraph 115 is denied.

116. Paragraph 116 is denied.

117. Paragraph 117 is denied and contains conclusions of law that require no answer.

118. Paragraph 118 is denied and contains conclusions of law that require no answer.

119. Paragraph 119 is denied.

120. Paragraph 120 is denied and contains conclusions of law that require no answer.

121. Paragraph 121 is denied.

122. Paragraph 122 is denied and contains conclusions of law that require no answer.

### CLAIM 7: CONVERSION

123. Defendants repeat their responses to Paragraphs 1 through 122 as if fully set forth herein.

124. Paragraph 124 is denied.

125. Paragraph 125's first sentence is denied, which is why the second sentence is admitted, except to the extent it grossly mischaracterizes what Defendants claim to have admitted.

126. Paragraph 126 is denied.

127. Paragraph 127 contains conclusions of law that do not require an answer, and refers to Plaintiff's Complaint, which speaks for itself.

### CLAIM 8: VIOLATION OF THE TEXAS THEFT LIABILITY ACT

128. Defendants repeat their responses to Paragraphs 1 through 127 as if fully set forth herein.

129. Paragraph 129 is denied.

130. Paragraph 130 is denied.

131. Paragraph 131 is denied.

132. Paragraph 132 is denied and contains conclusions of law that do not require an answer.

133. Paragraph 133 contains conclusions of law that do not require an answer, and refers to Plaintiff's Complaint, which speaks for itself.

### CLAIM 9: INJUNCTIVE RELIEF

134. Defendants repeat their responses to Paragraphs 1 through 133 as if fully set forth herein.

135. Paragraph 135 is denied.

136. Paragraph 136 is denied.

137. Paragraph 137 is denied.

138. Paragraph 138 is denied to the extent it alleges irreparable harm, while Defendants have (1) already agreed not to access or attempt to access computers it has never previously accessed or stated it did; (2) cannot return what they did not take; (3) cannot disclose what they did not download; (4) cannot preserve or fail to delete what they do not possess; (5) have identified all persons they believed to have "accessed" servers based in China that Konnech has claimed publicly

not to own; (6) have already told Plaintiff what they know of who accessed servers based in China (and how and when) that Konnech claims not to own and for which it therefore has no need to implement security measures; (7) and have already identified persons who have had possession of data from those servers in China that Konnech claims not to own. As such, Paragraph 138 is moot.

139. Paragraph 139 is denied for the reasons stated above.

140. Paragraph 140 is denied for the reasons stated above.

## AFFIRMATIVE DEFENSES

1. Plaintiff had a duty of self-help and a duty to inform itself adequately of the facts, and Defendants are not responsible for Plaintiff's demonstrably useless actions regarding its computer security and the attendant costs.

2. Plaintiff has stated after an extensive audit of its computers that none were accessed.

3. Plaintiff has an affirmative duty to disclose any such access to affected parties and it has not done so, confirming the absence of proof of any access of Plaintiff's computers by Defendants or anyone else.

4. Though Plaintiff fails to indicate which of the many statements it references are defamatory, many of the statements by Defendants that Plaintiff references are true.

5. Defendants' statements constitute protected free speech.

6. Defendants' statements were made in the good faith belief of their truthfulness.

Respectfully submitted,

GREGOR | WYNNE | ARNEY, PLLC

By: */s/ Michael J. Wynne*
Michael J. Wynne

Attorney at Law
Texas State Bar No. 00785289
SDTX No. 0018569
909 Fannin Street, Suite 3800
Houston, TX 77010
Telephone: (281) 450-7403
mwynne@gwafirm.com

Cameron Powell, Esq.
Attorney at Law
DC Bar No. 00459020
Telephone: (503) 502-5030
cpowell@gwafirm.com

**ATTORNEYS FOR DEFENDANTS TRUE THE VOTE, INC., GREGG PHILLIPS, AND CATHERINE ENGELBRECHT**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed with the Court electronically this 14th day of November, 2022, with consequent service on counsel for all parties.

By: */s/ Michael J. Wynne*
Michael J. Wynne