IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

KONNECH, INC.,                          §
                                        §
            PLAINTIFF,                   §
                                        §
v.                                      §        CIVIL ACTION NO. 4:22-CV-03096
                                        §
TRUE THE VOTE, INC., GREGG              §
PHILLIPS, and CATHERINE                 §
ENGELBRECHT,                            §
                                        §
            DEFENDANTS.                  §

PLAINTIFF KONNECH, INC.'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO RECUSE

KASOWITZ BENSON TORRES LLP

Constantine Z. Pamphilis
Attorney in Charge
Texas State Bar No. 00794419
SDTX Bar No. 19378
DPamphilis@kasowitz.com
Nathan W. Richardson
Texas State Bar No. 24094914
SDTX Bar No. 24094914
NRichardson@kasowitz.com
1415 Louisiana Street, Suite 2100
Houston, Texas 77002
(713) 220-8800
(713) 222-0843 (fax)

*Attorneys for Plaintiff Konnech, Inc.*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES .......................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT .................................................................................................................... 3

    A.   Defendants' Motion to Recuse is Untimely ....................................................... 3

    B.   Prior Adverse Rulings Are Not Grounds for Recusal ........................................ 5

    C.   The Court Has Never Inappropriately Opined On an Ultimate Issue .............................. 11

    D.   Defendants Have Presented No Evidence of Extrajudicial Bias ...................................... 12

PRAYER ........................................................................................................................ 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Primerica Holdings, Inc.*,
  10 F.3d 155 (3d Cir. 1993) .............................................................................15

*Berger v. United States*,
  255 U.S. 22 (1921) ...................................................................................14, 15

*City of El Cenizo, Texas v. Texas*,
  890 F.3d 164 (5th Cir. 2018) ........................................................................11

*Grambling Univ. Nat. Alumni Ass'n v. Bd. of Sup'rs for Louisiana Sys.*,
  286 F. App'x 864 (5th Cir. 2008) ...............................................................3, 4

*Hill v. Breazeale*,
  197 Fed. Appx. 331 (5th Cir. 2006) ...........................................................3, 4

*In re Katrina Canal Breaches Litigation*,
  351 Fed. Appx. 938 (5th Cir. 2009) ...............................................................3

*Liteky v. U.S.*,
  510 U.S. 540 (1994) ...........................................................................*passim*

*In re Phillips*,
  No. 22-20578, 2022 WL 17175826 (Nov. 22, 2022) ......................................7

*Reyes-Melendez v. I.N.S.*,
  342 F.3d 1001 (9th Cir. 2003) ........................................................................8

*Silver v. City of San Antonio*,
  No. SA20CV0888JKPRBF, 2020 WL 4480817 (W.D. Tex. Aug. 4, 2020) ....6, 7

*Thornton v. Hughes, Watters and Askanase, LLP*,
  No. 2:16-CV-66, 2016 WL 8710442 (S.D. Tex. Oct. 21, 2016) ...................6, 7

*Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*,
  38 F.3d 1404 (5th Cir. 1994) ...................................................................3, 4, 5

*U.S. v. Clark*,
  605 F.2d 939 (5th Cir. 1979) .............................................................5, 12, 15

*U.S. v. Cooley*,
  1 F.3d 985 (10th Cir. 1993) ...........................................................................8

*U.S. v. Grinnell Corp.*,
    384 U.S. 563 (1966) ...........................................................................................12, 14

*U.S. v. Mizell*,
    88 F.3d 288 (5th Cir. 1996) ...........................................................................5, 7, 11

*United States v. Smith-Garcia*,
    802 F. App'x 822 (5th Cir. 2020) ......................................................................6, 7

*Willner v. Univ. of Kansas*,
    848 F.2d 1023 (10th Cir. 1988) ............................................................................3

**Statutes**

28 U.S.C. § 144 ...................................................................................................12

Plaintiff Konnech, Inc. ("Konnech") files this Response in Opposition to Defendants' Motion to Recuse based on the following grounds:

## PRELIMINARY STATEMENT

Defendants' Motion to Recuse is a frivolous attempt to remove Judge Hoyt from this action merely because of his prior rulings and to delay Defendants from accountability for their open contempt of the preliminary injunction in this action. Defendants' Motion is baseless, as a matter of law, and Konnech has put Defendants on notice that it will seek sanctions if the Motion is not withdrawn.[1]

*First*, Defendants' Motion to Recuse is untimely because it was not filed "at the earliest moment after knowledge of the facts demonstrating the basis." Defendants' alleged grounds for recusal stem from hearings and rulings by the Court which occurred months ago and which Defendants publicly stated would be grounds for recusal over 2 months ago. The alleged grounds for recusal arose before the Court found them in contempt of the TRO, and issued a preliminary injunction. Despite that, months after the alleged grounds for recusal arose and shortly before filing their Motion to Recuse, Defendants sought relief from the Court in the form of a Motion to Dissolve the Preliminary Injunction, which is *sub judice*, and responded to Konnech's Motion to Show Cause and for Contempt, which is also *sub judice*. Defendants now seek to avoid the consequences of their misconduct or at least to delay an additional contempt finding by seeking to recuse Judge Hoyt. Defendants' motion should be denied because it is untimely.

---

[1] On January 5, 2022, in response to Defendants' request to confer in connection with their Motion to Recuse, counsel for Konnech specifically stated: "Please note in the certificate of conference that Konnech is opposed to Defendants' motion to recuse and intends to seek sanctions for this filing." (Ex. D, Jan. 5, 2022 Counsel Correspondence). Defendants, however, failed to include Konnech's statement that it intends to seek sanctions in their certificate of conference. Upon filing and serving this Response, Konnech has also served Defendants with its Rule 11 Motion for Sanctions and intends to file it if Defendants do not withdraw their Motion to Recuse.

*Second*, Defendants' Motion to Recuse should also be denied because it is frivolously based on adverse judicial rulings which are not grounds for recusal as a matter of law. Simply put, Defendants seek to recuse Judge Hoyt because they disagree with his decision to issue a TRO (which Defendants then agreed to extend and did not move to dissolve), a preliminary injunction which was issued after full briefing and a hearing (which Defendants failed to timely move to dissolve or appeal), his ruling on objections at their show cause hearing (which Defendants did not appeal), and an Order of Contempt which was issued after a show cause hearing and opportunity for Defendants to purge their contempt. Recusal is not a substitute for an appeal, and Defendants have abused the legal process by seeking recusal based on adverse judicial rulings. Moreover, Defendants' delay in seeking to recuse Judge Hoyt until more than 2 months after the Preliminary Injunction was issued and while Konnech's Motion to Show Cause and for Contempt is *sub judice* demonstrates that Defendants' true intent in seeking to recuse Judge Hoyt is to avoid or delay the consequences for the contemptuous behavior. In short, Judge Hoyt's rulings in this action are not grounds for recusal, and the Court should deny the Motion.

*Third*, Defendants' Motion to Recuse should be denied because the Court has never, as Defendants' argue, inappropriately expressed an opinion on the merits in this case.[2] The Court was presented with a Motion for a Temporary Restraining Order and Preliminary Injunction, which necessarily required the Court to assess whether Konnech has shown a substantial likelihood of success. The Court was therefore *required* to make a ruling on the motions, and those rulings cannot support grounds for recusal. In any event, this case will be tried to a jury who will determine the merits of the case.

---

[2] Although Defendants now complain about the merits of Konnech's claims, Defendants did not even bother to file a Rule 12 motion to dismiss in this action and instead just filed an answer.

2

*Fourth*, Defendants' Motion to Recuse should be denied because they have not presented any evidence of extrajudicial bias resulting in an opinion on the merits. Instead, Defendants argue that the alleged bias stems from Konnech's Complaint and briefing, which are necessarily not extrajudicial. Furthermore, reviewing the record as a whole, the Court has made clear that Defendants have had every opportunity to present evidence and deny Konnech's claims, but they have chosen not to.

The Court should deny Defendants' Motion to Recuse.

## ARGUMENT

### A.   Defendants' Motion to Recuse is Untimely

Defendants' Motion to Recuse should be denied because it is untimely.

A motion to recuse must be timely filed. *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994) (affirming denial of motion to recuse as untimely); *In re Katrina Canal Breaches Litigation*, 351 Fed. Appx. 938, 944 (5th Cir. 2009) (same); *Grambling Univ. Nat. Alumni Ass'n v. Bd. of Sup'rs for Louisiana Sys.*, 286 F. App'x 864, 867-68 (5th Cir. 2008) (affirming denial of recusal motion where party "did not immediately move to have this case assigned to a judge from another division or district and instead allowed the case to linger" for months, and only after adverse rulings); *Willner v. Univ. of Kansas*, 848 F.2d 1023, 1028 (10th Cir. 1988) (affirming denial of recusal motion as untimely). To be timely, "it is well-settled that—for obvious reasons—a motion to recuse must be filed "at the earliest moment after knowledge of the facts demonstrating the basis" for recusal. *Travelers Ins. Co.*, 38 F.3d at 1410. Indeed, the "most egregious delay occurs when a party knows the facts and circumstances that would lead to disqualification of the judge but does not raise the issue of recusal until after the judge makes an adverse decision." *Hill v. Breazeale*, 197 Fed. Appx. 331, 335 (5th Cir. 2006) (affirming denial of motion to recuse as untimely where party waited until adverse ruling).

3

The alleged grounds for recusal put forth by Defendants occurred at the earliest on September 12, 2022 (Konnech's Complaint and the issuance of the *ex parte* TRO), and then later on October 6, 2022 (the hearing on Konnech's preliminary injunction), October 27, 2022 (the show cause hearing), and October 31, 2022 (the continued show cause hearing).  (*See generally* Mot.). Defendants, however, did not file their Motion to Recuse until months later, on January 4, 2022, and only after several adverse rulings.  (*Id.*).  Specifically, for example, if the Court's statements at the October 6, 2022 hearing provided grounds for recusal, Defendants were required to seek recusal at that time.  *Hill*, 197 Fed. Appx. at 335; *Grambling*, 286 F. App'x at 867-68; *Travelers Ins. Co.*, 38 F.3d at 1410.  Defendants, however, waited for several additional adverse rulings— such as a finding of contempt and a preliminary injunction—before seeking recusal.  *Grambling*, 286 F. App'x at 867-68 (affirming denial of recusal motion where party "did not immediately move to have this case assigned to a judge from another division or district and instead allowed the case to linger" for months, and only after adverse rulings); *Hill*, 197 Fed. Appx. at 335 (affirming denial of motion to recuse as untimely where party waited until adverse ruling).  Indeed, Defendants waited to file this Motion until Konnech's Motion to Show Cause and for Contempt (Doc. 67) is *sub judice*, which, if granted, will again require Defendants to appear and answer for their indisputable contempt of the Preliminary Injunction.

Defendant Phillips even relayed to the public that Defendants were planning to file a motion for recusal as early as November 4, 2022:



Defendants nevertheless waited over two additional months to file the Motion to Recuse and, in fact, sought relief from this Court in the interim by way of their Motion to Dissolve Preliminary Injunction, filed a month later on December 1, 2022. (Doc. 65).

Defendants' Motion to Recuse is therefore untimely and should be denied as it was not filed "at the earliest moment after knowledge of the facts demonstrating the basis" for recusal. *Travelers Ins. Co.*, 38 F.3d at 1410.

**B. Prior Adverse Rulings Are Not Grounds for Recusal**

Defendants' attempt to use this Court's prior adverse rulings as grounds for recusal is legally improper and frivolous, as prior adverse rulings are not grounds for recusal.

As the United Supreme Court has held "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. U.S.*, 510 U.S. 540, 555 (1994); *U.S. v. Mizell*, 88 F.3d 288, 300 (5th Cir. 1996) (denying motion to recuse where "[t]he grounds for recusal . . . consist of judicial rulings which the district judge was required to make."); *U.S. v. Clark*, 605 F.2d

939, 942 (5th Cir. 1979) (same); *Thornton v. Hughes, Watters and Askanase, LLP*, No. 2:16-CV-66, 2016 WL 8710442, at \*5 (S.D. Tex. Oct. 21, 2016) ("To the extent that Plaintiffs complain of adverse rulings, such rulings are not an adequate basis for demanding recusal.").  That is because, the "recusal and disqualification statues are not designed to substitute for an appeal[.]"  *Thornton*, 2016 Wl 8710442 at \*5; *Liteky*, 510 U.S. at 555 ("Almost invariably, they [prior rulings] are proper grounds for appeal, not for recusal.").  As the Fifth Circuit has held, a motion to recuse based on adverse rulings by the judge is "frivolous."  *United States v. Smith-Garcia*, 802 F. App'x 822, 826 (5th Cir. 2020); *see Silver v. City of San Antonio*, No. SA20CV0888JKPRBF, 2020 WL 4480817, at \*1 (W.D. Tex. Aug. 4, 2020) (sanctioning party because "[r]elying on adverse rulings is a frivolous ground for recusal.").

Defendants' attempt to recuse Judge Hoyt based on Konnech's Complaint because it allegedly "conveyed unavoidable bias to the district court" is frivolous.  (Mot. at 3).  As an initial matter, Konnech's Complaint is necessarily part of this action and therefore not extrajudicial.  Further, Konnech's Complaint does not represent any of Judge Hoyt's opinions or views about this action.  Defendants' criticisms of the Complaint ring hollow especially since, although they characterize the Complaint as "needlessly inflammatory" and "disparag[ing]" (*id*.), Defendants never moved to strike any portion of the Complaint, nor did Defendants move to dismiss it.  Instead, they simply filed a routine answer.

Defendants also seek to recuse Judge Hoyt because he issued an *ex parte* TRO, a preliminary injunction, held Defendants in contempt, and overruled their objections[3] at the October

---

[3] Defendants take issue with the Court allowing Konnech to question whether one has "to believe the election was stolen from Trump to be considered a patriot?"  (Mot. at p. 15).  But Defendants clearly miss the obvious relevancy of such question.  Konnech has asserted a claim of conspiracy, which requires Konnech to show a meeting of the minds.  And when asked why Mike Hasson was giving Konnech data to Defendants, Defendant Engelbrecht answered "because he is a patriot."

27, 2022 show cause hearing. (Mot. at  pp. 13-14, 16-18).  Again, however, these are judicial rulings that cannot serve as a basis for recusal, and Defendants should be sanctioned for their frivolous argument.  *See Liteky*, 510 U.S. at 555 (explaining that judicial rulings cannot serve as a basis for recusal); *Mizell*, 88 F.3d at 300 (same); *Thornton*, 2016 WL 8710442, at *5 ("To the extent that Plaintiffs complain of adverse rulings, such rulings are not an adequate basis for demanding recusal."); *see also Smith-Garcia*, 802 F. App'x at 826 (holding that motion to recuse based on judicial rulings is "frivolous"); *Silver v. City of San Antonio*, 2020 WL 4480817 at *1 (sanctioning party because "[r]elying on adverse rulings is a frivolous ground for recusal.").

To be clear, Defendants never moved to modify or dissolve the TRO; rather, they agreed to extend its force and effect beyond its expiration deadline.  (Docs. 18, 20).  Defendants also responded to Konnech's Motion for Preliminary Injunction, and presented oral argument in opposition. (Doc. 24).  But Defendants never submitted any controverting evidence in response to Konnech's Motion for Preliminary Injunction.  (*Id*.).  As a result, and after the Court addressed both parties' positions in its Memorandum Opinion and Order, the Court granted Konnech's Motion for Preliminary Injunction.  (Doc. 57).  But Defendants did not appeal that ruling, even after the Fifth Circuit reminded Defendants of their right to appeal and the deadline to do so.  *See In re Phillips*, No. 22-20578, 2022 WL 17175826, at *1 (Nov. 22, 2022) (reminding Defendants of their right to appeal the preliminary injunction).  This does nothing but demonstrate Defendants' own failure to properly advocate for their position.  To the contrary, Defendants admit that

---

(Ex. C, Oct. 27 Hrg. Tr. at 112:14-15).  Konnech was thus trying to determine whether the meeting of the minds forming the basis of the conspiracy between Defendants and Hasson was that they sought to prove that the election was stolen from Donald Trump.  Defendants' objection to such question was improper and did not preserve any error because Defendants simply said "objection" without stating the basis for it, did not secure a ruling on their "objection," and failed to address their "objection" in their mandamus petition regarding the Court's contempt finding.

Konnech's zealous advocacy "successfully persuaded the Court," in ruling in Konnech's favor. (Mot. at p. 6). This does not show bias or an appearance of bias from the Court; it simply admits persuasive advocacy on behalf of Konnech and the dearth of evidence in opposition submitted by Defendants.

Defendants also seek to recuse Judge Hoyt because they view his pre-trial rulings as "unusual." (Mot. at pp. 13, 16). However, "unusual" rulings are not grounds for recusal. Moreover, there is nothing "unusual" about the Court's issuance of a TRO (even an *ex parte* order), preliminary injunction, or contempt finding. Indeed, all three orders are explicitly permitted by the Federal Rules of Civil Procedure. The only "unusual" thing about this proceeding is Defendants' blatant defiance of the Court's orders.

Relatedly, Defendants seek to recuse Judge Hoyt because they claim that the Fifth Circuit's mandamus decision "cast further doubt, in the mind of a reasonable observer, on this Court's impartiality" because the Fifth Circuit's opinion stated that: "The district court then used a temporary restraining order, a preliminary injunction, and civil-contempt order to litigate the case on Konnech's behalf." (Mot. at p. 15).[4] As noted above, however, the TRO, preliminary injunction, and contempt order are all judicial rulings that cannot serve as a basis for recusal. And importantly, the Court issued its rulings at Konnech's request; not *sua sponte*. Moreover,

---

[4] The cases cited by Defendants to support their argument that recusal is warranted where a judge acts an advocate for one side (Mot. at 12) are easily disposed of. First, *Reyes-Melendez v. I.N.S.* does not even concern recusal or disqualification of a judge. 342 F.3d 1001 (9th Cir. 2003). Second, the judge in the *U.S. v. Cooley*, matter was disqualified because he went on national television and expressed his plans to prevent protesters. 1 F.3d 985 (10th Cir. 1993). Of course, the Court has done no such thing here, and the Court in fact expressed that he was open to dismissing Konnech's claims had Defendants appeared to testify and deny them. (Ex. B, Oct. 6, 2022 Hrg. Tr. at 40:3-8)

Defendants had already decided to seek recusal of Judge Hoyt on November 4, 2022, which was 18 days before the Fifth Circuit decision which they rely on for recusal now.

Defendants also claim that the "Fifth Circuit gave reasonable observers further cause to suspect that the district court's impartiality could be in question" because it issued the TRO "*before* the parties could file Rule 12 motions, *before* the defendants could file an answer, *before* the parties could file their initial disclosures, or *before* discovery could begin let alone conclude in the ordinary course." (*Id.*). But the Fifth Circuit's ruling is legally unsound, and is currently the subject of a petition for *en banc* rehearing because, as this Court is aware, there is no legal prerequisite to a TRO that requires Rule 12 motions or discovery. And in any event, the Court was never presented with such arguments by Defendants.

Defendants also seek to recuse Judge Hoyt because they claim his bias is demonstrated by the Court "[f]ailing to require any evidence or testimony whatsoever from Plaintiff[.]" (Mot. at p. 13). Defendants' statement is a misrepresentation of the record. Konnech's CEO, Mr. Eugene Yu, submitted an affidavit—which is evidence—in support of the TRO and Preliminary Injunction. (Doc. 5-1). Defendants also falsely claim that the Court's bias is apparent as they were not allowed to cross-examine Konnech or engage in discovery. (Mot. at p. 13). But Defendants never requested cross-examination or discovery in the proceedings at issue.[5] Defendants further argue that the Court's bias is demonstrated by its refusal to allow "off the record" telephonic testimony (Ex. A, Oct. 27 Hrg. Tr. 1 at 5:14-23) at the October 27 show cause hearing (which was

---

[5] Defendants also complain that the "court set a show cause hearing, and conduct the hearing, with only Defendants present to offer testimony[.]" (Mot. at p. 9). But this is precisely how a show cause hearing works when a court order is violated. Plaintiff has not violated any Court order, and the Court was not required to summon Plaintiff to testify about Defendants' contempt. And notably, Defendants did not object to the show cause order requiring them to appear.

never requested prior to the hearing) from a person on the phone unknown by the Court, whom they claim was a Los Angeles County District Attorney involved in a criminal prosecution against Konnech's CEO.  (Mot. at p. 13).  But the Court rightly refused to accept "off the record" telephonic testimony from an unknown person and stated that "if he wants to be a witness in this case, he certainly could get in here and tell me what it is that I should be doing or not doing in this case from a witness testimony perspective."  (Ex. A, Oct. 27 Hrg. Tr. 1 at 5:14-23; 6:7-10). Defendants, however, failed to make a proffer of the expected testimony and failed to secure any third-party witness to appear to testify at their show cause hearing.  And notably, the criminal case against Konnech's CEO was dismissed, and the Los Angeles County District Attorney responsible for that case was put on leave over "bias in the presentation of evidence."[6]

And perhaps most frivolously, Defendants claim that Judge Hoyt should recuse himself because of Defendants' blatant misstatement of the record that the Court did not "allow . . . motions to dismiss[.]"  (Mot. at p. 13).  Defendants failed to file any Rule 12 motion to dismiss nor any motion seeking to do so and instead chose to file an answer in this matter.  The Court did absolutely nothing to prevent Defendants from moving to dismiss Konnech's Complaint.  It is simply another example of Defendants' failure to advocate for their position and attempts to blame others for their own neglect.

All of the Court's rulings in this matter are supported by the parties' briefing, evidence, and argument of counsel.  Defendants' Motion to Recuse should be denied because judicial rulings are not grounds for recusal.

---

[6] James Queally, *L.A. Prosecutor put on leave over questionable case sparked by election conspiracy theories*, Los Angeles Times (Nov. 22, 2022), available at, https://www.latimes.com/california/story/2022-11-22/l-a-prosecutor-placed-on-leave-over-bungled-case-sparked-by-election-conspiracy-theories.

### C.  The Court Has Never Inappropriately Opined On an Ultimate Issue

The Court has never inappropriately opined on an ultimate issue in this case such that it is subject to recusal.

Defendants argue that Judge Hoyt should recuse himself because he has opined on an ultimate issue in this case—namely, whether Defendants accessed Konnech's computer without authorization.  (Mot. at p. 20).  But any decision by the Court related to the issue of unauthorized access of a Konnech computer was necessarily required for the issuance of a TRO and preliminary injunction.  Specifically, in deciding a TRO and a preliminary injunction, a court is required to determine whether the movant has shown "a substantial likelihood that they will prevail on the merits."  *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018) (listing elements for preliminary injunction, which are same as a TRO).  Accordingly, because Konnech filed a motion for a TRO and preliminary injunction, the Court was required to decide if Konnech had made such a showing.[7]  As such, the Court's ruling was merely another *required* judicial ruling that cannot be considered as a basis for recusal.  *See Mizell*, 88 F.3d at 300 ("The grounds for recusal that Mizell asserts consist of judicial rulings which the district judge was *required* to make.") (emphasis in original).

The Court should deny Defendants' Motion to Recuse because it has not improperly decided an "ultimate issue."

---

[7] Conversely, if the Court had denied the motions, it does not mean that the Court improperly opined that Konnech would lose on the merits.

### D. Defendants Have Presented No Evidence of Extrajudicial Bias

Defendants have presented no evidence of extrajudicial bias concerning the merits of this case.[8]  To the contrary, the Court has presented Defendants every opportunity to submit evidence to deny Konnech's claims.

"[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."  *Liteky*, 510 U.S. at 555.  "A judge's ordinary efforts at courtroom administration— even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune."  *Id*. at 556.[9]  Instead, "alleged bias and prejudice, to be a basis for disqualification, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."  *Clark*, 605 F.2d at 942; *U.S. v. Grinnell Corp.*, 384 U.S. 563, 583 (1966).  This Court has made no opinion on the merits of the case resulting from any bias or prejudice from any extrajudicial source.

In an attempt to bolster their Motion, Defendants mischaracterize the Court's statements at the October 6, 2022 hearing on Konnech's Motion for Preliminary Injunction.  Defendants erroneously claim that the Court "compared Defendants unfavorably to Donald Trump" and claim

---

[8] Although Defendants' Motion refers to 28 U.S.C. § 144 (Mot. at p. 12), Defendants do not move under that section, which requires the submission of an affidavit in support of the motion to recuse. *See* 28 U.S.C. § 144 (requiring the submission of a "timely and sufficient affidavit" to support allegation of bias or prejudice of a judge).

[9] For this reason, Defendants' frivolous argument that the Court's reprimanding of counsel for improper courtroom conduct in violation of subsection K of the Southern District of Texas' local rules of courtroom etiquette is not grounds for recusal.  (*See* Mot. at p. 14); *see* Local Rules, Appendix C, Courtroom Etiquette, subsection K ("When it is necessary to question a witness about an exhibit, *ask permission to approach the witness*.") (emphasis added).  Although Defendants are clearly charged with knowing and abiding by the Local Rules, it is elementary knowledge and practice that attorneys must ask the Court for permission to approach the bench and the witness stand, and Defendants' attempt to recuse Judge Hoyt for requiring common courtroom decorum speaks to the meritless nature of their Motion.

that the Court determined that Defendants "supposedly like President Trump . . . lied to, their lawyers."  (Mot. at p. 7).  But Donald Trump was not mentioned at that hearing and, even if the Court's reference to "the President" was a reference to Donald Trump, there was no such comparison of "the President" to Defendants.  (*See* Ex. B, Oct. 6 Hrg. Tr. at 49:5-8).  If anything, the Court was comparing "the President" to Defendants' former counsel, Mr. Brock Akers, who claimed to be a good "judge of character."  (*Id.*) ("Mr. AKERS: I think I'm a better judge of character than that.  THE COURT:  You would have thought that of the President or a lot of lawyers who have been disbarred or who are being now sanctioned.").

Defendants also failed to include any context for the above exchange between Judge Hoyt and Mr. Akers which was the result of Defendants' failure to submit any evidence in response to Konnech's Motion for Preliminary Injunction.  Specifically, at the October 6, 2022 hearing, the Court questioned Mr. Akers as to why Defendants did not appear to testify:  THE COURT:  Why didn't you bring your clients and disprove their case then?  They would have been able to get on the witness stand and say, It ain't so, Judge.  It ain't so."  (*Id.* at 43:23-25).  As the Court explained at the hearing:

> THE COURT: It says that it was secured inferentially from Konnech, as I understand it, and it says that this came off – well, where would they get the data from?  Why don't they just come in and say, Somebody stole the data from somebody else, not Konnech?  I mean, that would be easy, and I would dismiss Konnech's suit.

(*Id.* at 40:3-8).  In other words, the Court never once called Defendants, nor their counsel, liars as Defendants suggest.  Instead, the Court was merely questioning why they had not presented evidence to deny Konnech's claims, despite the opportunity to do so.  The Court even stated that if Defendants had presented evidence to disprove Konnech's claims, that he would "dismiss Konnech's suit."  (*Id.*)  However, to date, Defendants have not submitted any such evidence.

Notably, although Mr. Akers insisted that he was a good judge of character and that he could trust his clients despite their failure to submit statements under oath, Mr. Akers, in fact, misrepresented to the Court at the October 6, 2022 hearing that there was only a single person other than Defendant Phillips "associated with this Dallas group[.]" (*Id.* at 50:10-16). As it turned out, there was in fact at least one other person (for a total of at least three people) at the January 2021 hotel meeting during which Konnech data was illegally accessed, whose presence was only revealed when Defendant Phillips accidentally referred to him during cross-examination at the October 27, 2022 show cause hearing. (Ex. C, Oct. 27 Hrg. Tr. at 40:3-11). In other words, Judge Hoyt's skepticism over Mr. Akers' reliance on unsworn statements from the Defendants proved well founded. In any event, even if the Court's statement could be considered "critical or disapproving of, or even hostile to, counsel, the parties, or their cases," such statements do not rise to grounds for recusal. *Litekey*, 510 U.S. at 555 (finding that court's "admonishments (whether or not legally supportable) to counsel" do not give rise to recusal).

Additionally, the Court's statements reflect no opinion on the merits of the case. Indeed, quite the opposite, the full record reflects that the Court would have considered dismissing Konnech's case had Defendants testified to deny the factual basis for the claims. (Ex. C, Oct. 27 Hrg. Tr. at 40:3-8). But Defendants did not present any evidence to deny Konnech's claims in response to Konnech's Motion for Preliminary Injunction. The Court's statements about "election destruction" or not having any confidence in so-called election integrity efforts, have no bearing on the merits of Konnech's claims for (a) defamation; (b) tortious interference; (c) hacking and conspiracy to hack; (d) conversion; or (e) theft. (Doc. 1).[10] *See Grinnell Corp.*, 384 U.S. at 583

---

[10] The Court's statements about election "destruction" or its lack of "confidence in any of these folk who claim they are doing" election integrity, simply does not rise to the level of race-based prejudice expressed in *Berger v. United States*, 255 U.S. 22 (1921), wherein the Court, referring

(explaining that there are no grounds for recusal unless the court express an "opinion on the merits" based on an extrajudicial source); *Clark*, 605 F.2d at 942 (same).  Rather, for example, whether or not Konnech will prevail on its defamation claim will turn on the falsity of Defendants' statements that Konnech is, "a red Chinese communist op run against the United States by Chinese operatives," among other things.  (*Id*.).

It should also be noted that the merits of this case will be decided by a jury, not the Court. Therefore, any opinions that the Court may have about the Defendants will have no bearing on the ultimate issues to be decided by the *jury* who will be tasked as the fact finder in this case.  *Cf. Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 166 (3d Cir. 1993) (highlighting the fact that the judge would "be disposing of each essential issue in this case by his decision alone at a bench trial.  [And] [w]hen the judge is the actual trier of fact, the need to preserve the appearance of impartiality is especially pronounced.").

And moreover, Defendants have not shown that any alleged bias or prejudice stems from any extrajudicial source.  In fact, in making their arguments for recusal, Defendants contradict themselves by contending that "Plaintiff invoked extrajudicial arguments" in Konnech's Complaint, which they claim improperly invoked "a full-scale assault on the probity of Defendants," including that "Defendants were allegedly in the money-making business of making false claims of election fraud."  (Mot. at p. 5).  But information gleaned by the Court through Konnech's Complaint is necessarily not "extrajudicial."  *See Liteky*, 510 U.S. at 545 (explaining that the meaning of "extrajudicial source" means "a source outside the judicial proceeding").  Defendants likewise claim that the "Court's opinions, expressed during a hearing in Court on

---

to German-American defendants, stated that "their hears are reeking with disloyalty." *Liteky*, 510 U.S. at 555 (quoting *Berger*).

October 6, were clearly extrajudicial" because they were based "on Plaintiff's *ex parte* representations." (Mot. at p. 16). But again, Konnech's representations to the Court in its briefings are necessarily *not* extrajudicial. *See Liteky*, 510 U.S. at 545, n.1 (noting that briefs are not extrajudicial). Further, Defendants responded to Konnech's Motion for Preliminary Injunction and argued in opposition to it at the October 6, 2022 hearing on that Motion and had every opportunity to present their side of the case.

Accordingly, Defendants have not shown that the Court expressed any extrajudicial bias concerning the merits of this case. Their Motion to Recuse should be denied.

**PRAYER**

Konnech, Inc. respectfully requests that the Court deny Defendants' Motion to Recuse, and grant Konnech, Inc. such other and further relief to which it may be justly entitled.

Dated: January 12, 2023

KASOWITZ BENSON TORRES LLP

By:  */s/ Constantine Z. Pamphilis*
Constantine Z. Pamphilis
Attorney in Charge
Texas State Bar No. 00794419
SDTX Bar No. 19378
DPamphilis@kasowitz.com
Nathan W. Richardson
Texas State Bar No. 24094914
SDTX Bar No. 24094914
NRichardson@kasowitz.com
1415 Louisiana Street, Suite 2100
Houston, Texas 77002
(713) 220-8800
(713) 222-0843 (fax)

*Attorneys for Plaintiff Konnech, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2023, true and correct copies of the above and foregoing were forwarded via email and through the ECF system, to all parties and counsel of record.

*/s/ Constantine Z. Pamphilis*
Constantine Z. Pamphilis

# Exhibit A

1

                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
2                         HOUSTON DIVISION

3


4    KONNECH, INC.,                   .  4:22-CV-03096
                                      .  HOUSTON, TEXAS
5         PLAINTIFF,                  .  OCTOBER 27, 2022
     VS.                              .  11:59 A.M.
6                                     .
     TRUE THE VOTE, INC.,             .
7    GREGG PHILLIPS AND               .
     CATHERINE ENGELBRECHT,           .
8                                     .
          DEFENDANTS.                 .
9    ...............................  A.M. SESSION

10


11                  TRANSCRIPT OF MOTION HEARING
              BEFORE THE HONORABLE KENNETH M. HOYT
12                 UNITED STATES DISTRICT JUDGE

13


14                        *APPEARANCES*

15


16   FOR THE PLAINTIFF:

17        Constantine Z. Pamphilis
          Nathan Richardson
18        KASOWITZ BENSON TORRES LLP
          Wedge International Tower
19        1415 Louisiana
          Suite 2100
20        Houston, Texas  77002

21   FOR THE DEFENDANT TRUE THE VOTE, INC., AND CATHERINE
     ENGELBRECHT:
22
          Michael J. Wynne
23        GREGOR CASSIDY WYNNE PLLC
          909 Fannin
24        Suite 3800
          Houston, Texas  77010

25

1   issues, as I understand that, including our full agreement.

2   I'm very new on the case, as you may know.

3           THE COURT:  Here's my concern.  If we are going to

4   have witnesses to testify, I would like to swear them in.  Then

5   I'm going to take a break and we'll come back and hear you make

6   argument as to where you plan to go on that.

7           MR. WYNNE:  We do not have any live that we plan to

8   introduce, although Mr. Kiyonaga has one on the phone and

9   ready.

10          MR. KIYONAGA:  Your Honor, John Kiyonaga, also

11  representing all three defendants.  Very nice to meet you, sir.

12  Pleasure to be here.  I'm from Alexandria, Virginia.  I'm here

13  pro hac.

14              Your Honor, waiting for my call -- I have my cell

15  phone in my pocket -- is Deputy District Attorney of Los

16  Angeles County, Marc Beaart.  That's M-A-R-C, B-E-A-A-R-T.  He

17  has asked for the opportunity to address the Court by telephone

18  directly off the record, either in camera or in a sealed

19  courtroom, to explain that Mr. Yu, the CEO of Plaintiff

20  Konnech, is facing multiple felony charges in Los Angeles,

21  brought by the state of California, Los Angeles County,

22  sounding in the very conduct which is the subject of the

23  alleged defamation in this case.  That being that Konnech --

24          THE COURT:  I don't want you to argue -- let me just

25  be clear.  I'm not involved in that case out of California.  I

 1   have no idea what the case is about.  I really don't want to

 2   know what it is about because I have a live pleading here that

 3   brings matters to my attention that I need to focus on and

 4   address and that the parties who are involved in this case need

 5   to address.

 6              So this is quite unusual for a district attorney

 7   to want to talk to me about anything.  And if he wants to be a

 8   witness in the case, he certainly could get in here and tell me

 9   what it is that I should be doing or not doing in this case

10   from a witness testimony perspective.  But I will not permit

11   him to interfere in the proceedings in this case.  That's the

12   way I see that at this point.

13              MR. KIYONAGA:  If I may briefly explain --

14              THE COURT:  Not now.  Like I said, I wanted an

15   announcement.  You have told me what you plan to do.  And what

16   I'm saying is I will not take any statements or testimony from

17   any person that is not in this courtroom.  He can tell me

18   nothing.  It would be like me talking to the district attorney

19   or the U.S. Attorney about a criminal case that may bear on the

20   parties in the case but not on the case that's before me.

21              MR. KIYONAGA:  Your Honor, if I may briefly explain

22   the pertinence of his remarks.

23              THE COURT:  I'm sorry, sir.  I am not --

24              MR. KIYONAGA:  Your Honor, I'm trying to make a

25   record.

1                                 * * * *

2

3          I certify that the foregoing is a correct transcript from

4     the record of proceedings in the above-entitled cause.

5

6     Date: October 28, 2022

7
                              /s/ Mayra Malone
8                             ----------------------------------------
                              Mayra Malone, CSR, RMR, CRR
9                             Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit B

1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF TEXAS
2                    HOUSTON DIVISION

3

4   KONNECH, INC.,                  .  4:22-CV-03096
                                    .  HOUSTON, TEXAS
5        PLAINTIFF,                 .  OCTOBER 6, 2022
    VS.                             .  1:59 P.M.
6                                   .
    TRUE THE VOTE, INC.,            .
7   GREGG PHILLIPS AND              .
    CATHERINE ENGELBRECHT,          .
8                                   .
         DEFENDANTS.                .
9   ...............................

10

11          TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING
              BEFORE THE HONORABLE KENNETH M. HOYT
12               UNITED STATES DISTRICT JUDGE

13

14                        *APPEARANCES*

15

16  FOR THE PLAINTIFF:

17        Constantine Z. Pamphilis
          Nathan Richardson
18        KASOWITZ BENSON TORRES LLP
          Wedge International Tower
19        1415 Louisiana
          Suite 2100
20        Houston, Texas  77002

21  FOR THE DEFENDANTS:

22        Brock C. Akers
          J. Mark Brewer
23        THE AKERS FIRM
          3401 Allen Parkway
24        Suite 101
          Houston, Texas  77019

25

14:50    1          MR. BREWER:  And none of it says Konnech.  None of it

         2    is Konnech's information.

         3          THE COURT:  It says that it was secured inferentially

         4    from Konnech, as I understand it, and it says that this came

14:51    5    off -- well, where would they get the data from?  Why don't

         6    they just come in and say, Somebody stole the data from

         7    somebody else, not Konnech?  I mean, that would be easy, and I

         8    would dismiss Konnech's suit.  I would be able to dismiss this

         9    suit because his suit is about data that he had on his hard

14:51   10    drive that he secured from Harris County, Texas, from

        11    Los Angeles County, from Michigan somewhere County, whatever

        12    those counties are.  And he got it under circumstances that

        13    require him to secure it.

        14               When and if that data by, let's say, Phillips is

14:51   15    being released or put into the space, airways, wherever -- when

        16    it is put out there in the Internet, it's coming from

        17    somewhere.  Whether they hacked into Harris County, "they"

        18    meaning whoever those folk are, or they hacked into Los Angeles

        19    County, whether they did that or not, that's fine.  That Harris

14:52   20    County and Los Angeles's problem.

        21          MR. BREWER:  The problem, Your Honor, is that none of

        22    us really know what we are talking about.  His client said they

        23    don't even have computers in China.  The district attorney's

        24    own press release of Tuesday says, We found as part of our

14:52   25    investigation that they are maintaining their servers --

14:54    1            THE COURT:  Maybe I misread it.  I apologize.

         2    Apparently, I misread the letter or the communication.

         3                  There was a motion for show cause having to do

         4    with the motion for contempt.  How am I to proceed on that?

14:54    5    Your clients are going to have to be here.

         6            MR. BREWER:  Okay.

         7            THE COURT:  So I can enter an order ordering them to

         8    be here.  We can have a hearing and decide at that point

         9    whether or not -- maybe plaintiff has got this all wrong.

14:55   10            MR. BREWER:  Your Honor, respectfully, we don't need a

        11    show cause order.  If you want to set a hearing, an evidentiary

        12    hearing --

        13            THE COURT:  They need a show cause hearing.  I need a

        14    show cause hearing.  When they made allegations that someone

14:55   15    has violated my order, it is incumbent upon the Court to move

        16    to bring the parties together to figure out if there's merit to

        17    what the claim is, what the motion is.

        18            MR. BREWER:  Just to be clear, Your Honor, at no time

        19    were we ever asked to bring any witnesses today.  I just wanted

14:55   20    you to know, we are not -- we would have brought them, but we

        21    didn't know that that was even an issue.  We thought we were

        22    here on the TRO.

        23            THE COURT:  Why didn't you bring your clients and

        24    disprove their case then?  They would have been able to get on

14:55   25    the witness stand and say, It ain't so, Judge.  It ain't so.

15:03      1    am trying to play a game.

           2             THE COURT:  Not you.  I'm thinking you may be played.

           3             MR. AKERS:  I think I'm am a better judge of character

           4    than that.

15:03      5             THE COURT:  You would have thought that of the

           6    President or a lot of lawyers who have been disbarred or who

           7    are being now sanctioned.  I have no reason to believe those

           8    weren't good lawyers, but they were played.

           9             MR. AKERS:  For what it's worth, I'm confident that I

15:03     10    have not been played and that the work that they have done is

          11    worthy.

          12             THE COURT:  The work that who has done?

          13             MR. AKERS:  The work that my client True the Vote in

          14    order to accomplish election integrity overall --

15:04     15             THE COURT:  I don't really have any confidence in any

          16    of these folk who claim they are doing that.  We did pretty

          17    good until about three or four years ago, five or six years

          18    ago.  The only people that I know of who have done something

          19    wrong are people who have been either caught or who have been

15:04     20    charged and mistreated.

          21             Do errors get made?  Yeah.  Do people cheat?

          22    Perhaps.  But all of this fuss and hustle and bustle about the

          23    integrity of a process and the way you fix that process is you

          24    tear it apart?  That's not integrity.  That's destruction.

15:04     25             So I want it done now.  You can get on the phone

15:04   1   and call him, and I'm going to sit right here until I know it's

2   done.

3               MR. AKERS:  I have the name.

4               THE COURT:  I'm sorry?

15:05   5               MR. AKERS:  I said I have the name.

6               THE COURT:  Well, then deliver it.

7               MR. AKERS:  I need to look it up.

8               THE COURT:  And if there are any other names --

9          *(Simultaneous crosstalk)*

15:05   10              THE COURT:  Let me just finish.  If there are any

11   other names associated with this Dallas group, those names are

12   to be turned over.  And I understand that I'm hearing you say

13   there is only one name that you have.

14          *(Mr. Akers hands Mr. Pamphilis a piece of paper)*

15:06   15              MR. AKERS:  For the record, I just handed him the

16   name.

17              THE COURT:  All right.

18              MR. PAMPHILIS:  Your Honor, I would prefer that the

19   name be read by him into the record so that there is no dispute

15:06   20   about the name that I was given.

21              THE COURT:  I don't think I have my copy here.

22              MR. AKERS:  I have mine electronically.

23              THE COURT:  Say what?

24              MR. AKERS:  I have a copy of my letter electronically.

15:06   25              THE COURT:  You need to read it for the record then.

15:10    1   submitted.

2        THE COURT:  All right.  I will not stand in the way of

3   lawyers filing responses or replies.  He's filing a response.

4   You would be filing a reply to the response, and I'm saying

15:10    5   that I will not delay considering this matter waiting on a

6   reply.  If you want to file it, that's fine.

7        MR. AKERS:  Understood.

8        THE COURT:  Thank you, gentlemen.

9        MR. PAMPHILIS:  Thank you, Your Honor.

10       *(Court adjourned at 3:10 PM)*

11                              * * * *

12       I certify that the foregoing is a correct transcript from

13   the record of proceedings in the above-entitled cause.

14

15   Date: October 8, 2022

16

17   */s/ Mayra Malone*
     ---------------------------------------
18   Mayra Malone, CSR, RMR, CRR
     Official Court Reporter

19

20

21

22

23

24

25

# Exhibit C

1

1            UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF TEXAS
                       - - -
3     THE HONORABLE KENNETH M. HOYT, JUDGE PRESIDING
   ---------------------------------------------------
4  KONNECH, INC.,            )  Cause No. 4:22-cv-03096
                             )
5              Plaintiff,    )
                             )
6  vs.                       )
                             )
7  TRUE THE VOTE, et al.,    )
                             )
8              Defendants.   )
                             )
9  ---------------------------------------------------

10                      **HEARING**

11       OFFICIAL COURT REPORTER'S TRANSCRIPT

12                  Houston, Texas

13                **October 27, 2022**

14 ---------------------------------------------------

15 APPEARANCES:
   On behalf of the Plaintiff:
16     Constantine Z. Pamphilis, Esq.
       Nathan Richardson, Esq.
17
   On behalf of the Defendants:
18     Brock Cordt Akers, Esq. (Not present)
       Michael John Wynne, Esq
19     John C. Kiyonaga, Esq.

20

21 Reported By:  Nichole Forrest, CSR, RDR, CRR, CRC
                 Certified Realtime Reporter
22               United States District Court
                 Southern District of Texas
23

24 Proceedings recorded by mechanical stenography.
   Transcript produced by Reporter on computer.
25

```
 1              MR. PAMPHILIS:  Thank you, Your Honor.
 2   BY MR. PAMPHILIS:
 3      Q.   Who else was in that room with you and
 4   Mr. Hasson in Dallas of January of 2021?
 5      A.   A confidential informant for the FBI.
 6      Q.   What's his name?
 7      A.   I'm not at liberty to say.
 8              THE COURT:  You are at liberty to say
 9   because I'm ordering you to give the name.
10              THE WITNESS:  I'm a confidential
11   informant, too.  I can't do it.
12   BY MR. PAMPHILIS:
13      Q.   You're refusing to answer the question, sir?
14      A.   Yes.
15              MR. PAMPHILIS:  Your Honor, we ask that
16   Mr. Phillips be held in contempt for refusing to
17   answer this question.  This concerns item number 5 in
18   the TRO; specifically, who was involved in accessing
19   Konnech's protected computers.
20              This individual was in the room when it
21   was being accessed.  He was involved.  He should be
22   identified.
23              THE COURT:  Let's proceed.  Keep asking
24   questions.  Let's go.
25   BY MR. PAMPHILIS:
```

1      A.   Via -- well, on -- verbally.  And then a

2  messaging app.

3      Q.   Verbally, meaning in person, face to face?

4      A.   The one meeting, yes.

5      Q.   What did you talk about the first time you

6  spoke with him?

7      A.   Likely research.

8      Q.   Research on what?

9      A.   Variety of things.  We look at all manner of

10  election intelligence.  It could be anything.

11      Q.   Is Mike Hasson a contractor with True The

12  Vote?

13      A.   No.

14      Q.   Why is he giving you this information?

15      A.   He's a patriot.

16      Q.   What do you mean by "he's a patriot"?

17      A.   When he identified, in the instance of

18  Konnech, identified things that were problematic, he

19  wanted to make sure that they were given to the FBI

20  and due course taken.

21      Q.   What would you consider a person to be a

22  patriot?  What does that mean?

23      A.   When you -- by my definition, when you see

24  things that harm this country or our countrymen, if

25  there is a means by which you can report that

175

C E R T I F I C A T E

        I hereby certify that pursuant to Title
28, Section 753 United States Code, the foregoing is a
true and correct transcript of the stenographically
reported proceedings in the above matter.


        Certified on October 30, 2022.


        /s/ Nichole Forrest_____
        Nichole Forrest, RDR, CRR, CRC

# Exhibit D

# C h r i s t i n e   R e h a k

| | |
|---|---|
| **From:** | Dean Pamphilis |
| **Sent:** | Thursday, January 5, 2023 8:37 AM |
| **To:** | Heather Martinez |
| **Cc:** | Michael Wynne; Nathan W. Richardson |
| **Subject:** | RE: Case No. 4:22CV03096 |

Please note in the certificate of conference that Konnech is opposed to Defendants' motion to recuse and intends to seek sanctions for this filing.  Thanks, Dean

Dean Pamphilis
Kasowitz Benson Torres LLP
1415 Louisiana Street, Suite 2100
Houston, Texas 77002
Tel.  (713) 220-8852
Fax.  (713) 583-6006
DPamphilis@kasowitz.com

**From:** Heather Martinez <hmartinez@gcfirm.com>
**Sent:** Wednesday, January 4, 2023 9:27 PM
**To:** Dean Pamphilis <DPamphilis@kasowitz.com>
**Cc:** Michael Wynne <mwynne@gcfirm.com>; Nathan W. Richardson <NRichardson@kasowitz.com>
**Subject:** Case No. 4:22CV03096

**ALERT: THIS IS AN EXTERNAL EMAIL. DO NOT CLICK ON ANY LINK, ENTER A PASSWORD, OR OPEN AN ATTACHMENT UNLESS YOU KNOW THAT THE MESSAGE CAME FROM A SAFE EMAIL ADDRESS.**

Dean:

Happy New Year.

Kindly see the attached and advise whether or not you are opposed to the motion.  If you would do so by 9:00 am, I would appreciate it.  Thank you.

Best Regards,

**Heather Martínez**
Paralegal

**GREGOR | WYNNE | ARNEY, PLLC**
Two Houston Center
909 Fannin, Suite 3800
Houston, Texas 77010
(713) 331-2480 – Direct

(954) 249-2875 – Cell
(713) 759-0712 – Fax
hmartinez@gcfirm.com
heather@michaeljwynne.com

Confidentiality Notice:

This electronic transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. This information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the destruction and/or return of the document