**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **KONNECH, INC.,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:22-CV-03096** |
| | § | |
| **TRUE THE VOTE, INC., GREGG** | § | |
| **PHILLIPS, and CATHERINE** | § | |
| **ENGELBRECHT,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO RECUSE AND RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS

Defendants submit this response to Plaintiff Konnech, Inc.'s Motion for Sanctions Under FRCP 11 (hereafter, "Mot. Sanct.") and Response in Opposition to Defendants' Motion to Recuse ("Resp.").

The fundamental flaw in Plaintiff's Response to Defendant's Motion to Recuse is that Plaintiff imagines that its response has much role in a recusal in the first place. Plaintiff thinks it can fill a response to a motion to recuse, which is solely focused on appearance of bias in a court, with criticisms of *the moving party*. Plaintiff has lost sight of the standard here. Nothing Plaintiff says about the procedural posture of this case, or what Defendants should or should not have done in the past, or even Defendants' "open contempt" changes the fact that the only question before the Court is whether a reasonable observer could perceive bias in this matter. The reasonable observer in the public isn't going to wade through Plaintiff's catalog of Defendants' deficiencies. Nor will any Court of Appeals. In a recusal proceeding, Plaintiff's arguments, grievances, and even opinions on the wisdom of recusal are simply not relevant. A non-moving party like Plaintiff

is a bystander to the real work that the Court must do, which doesn't concern Plaintiff's view of the motion at all but the appearance of justice in the eyes of parties not before the Court.

But because Plaintiff paired its response with a motion for sanctions, Defendants will now briefly address the merits of Plaintiff's submission. That submission reminds us that while Plaintiff is primarily in the software business, we have by now seen that Plaintiff is secondarily in the business of making baseless assumptions. First came the assumption that Defendants' statements about observing others' access of a computer in China somehow amount to "admitting" access to a "Konnech computer", an implausible assumption that was credited in error by this Court and that remains the sole driver animating Plaintiff's requests for injunctive relief, show-case hearings, contempt, and now sanctions.

And now we have Plaintiff's assumption that Defendants and their counsel could only have crafted and timed their Motion to Recuse for improper purposes, as opposed to when they were simply able to get such a complex and sensitive motion done, in the course of other business in a very small law firm, the surgery and illness of counsel, the incarceration and re-adjustment of the Defendants themselves, and the holidays, to name a few very good reasons for not making the immediate filing Plaintiff erroneously claims is mandated.[1] In any event, counsel for Defendants discuss what was actually happening as they worked on their Motion to Recuse, as contrasted from Plaintiff's tortured imaginings of their intentions, in Cameron Powell's Affidavit, attached as Exhibit A.

---

[1] Plaintiff also alleges that the Motion to Recuse "was filed for the purpose of delaying the Court's decision on whether to set a show cause hearing for Defendants' indisputable contempt of the Court's Preliminary Injunction." Mot. Sanct. at 3. The claim is so absurd it warrants little discussion. How could the mere receipt of a motion ever manage to delay a Court in the mere setting of a hearing? Defendants must confess the stratagem eludes their understanding.

Plaintiff's cited cases about delays in filing do not support denial of a motion to recuse in a case like the one at bar, where little in the way of procedure, discovery, substantive motions, or rulings has yet occurred, little time has passed, Defendants have not themselves filed numerous motions, and their counsel had reasonable grounds to take a few weeks to work through their thinking on the matter. *Compare* Ex. A with *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 38 F.3d 1404, 1411 (5th Cir. 1994) (noting that moving party in *three* cases in *advanced* procedural stages "waited . . . nearly *a year* after entry of the judgments in the first two cases" and after filing numerous motions before the same court themselves, and setting a precedent against a moving party, not applicable here, who strategically waits until *late* in a case with the idea that "If he [the movant] loses, he can always claim the judge was disqualified and get a new trial") (emphasis added; citation omitted); *In re Katrina Canal Breaches Litig.*, 351 F. App'x 938, 944 (5th Cir. 2009) (affirming district court's denial of recusal with the twin observations that "Plaintiffs did not move for recusal until . . . nearly *two years* after" the *single* disqualifying event in that case *and* had failed to show how the court's "alleged partiality to the state of Louisiana, long dismissed from this litigation" could have affected any court decisions anyway) (emphasis added); *Grambling Univ. Nat. Alumni Ass'n v. Bd. of Sup'rs for Louisiana Sys.*, 286 F. App'x 864 (5th Cir. 2008) (noting moving party waited "for *nearly ten months*" after all disqualifying facts were known *and* only brought recusal motion after judge dismissed their claims) (emphasis added); *Willner v. Univ. of Kansas*, 848 F.2d 1023, 1028 (10th Cir. 1988) (affirming denial of *several* recusal motions where they were "unsupported by any facts", were based primarily on adverse rulings, and were filed 11 months to three years after knowledge of the alleged bias).

Plaintiff would apparently set a bright-line rule that a motion to recuse must be filed immediately after a single event such as the Court's statements on October 6, but Defendants did not, like the moving parties in Plaintiff's cited cases, rely on a single event for their motion. Defendants reasonably believed filing a motion to recuse after one Court statement would have been premature – including because the Court could still have taken actions that could have impacted a reasonable observer's inference of bias.[2]

Moreover, contrary to Plaintiff's latest pleadings, Defendants' Motion to Recuse does not rely solely or even substantially on the fact that the Court made adverse rulings against Defendants. Rather, in their Motion to Recuse, Defendants concerned themselves with two primary indicators of potential bias. One was the bias revealed by the Court's *statements*, which the Court made even before coming into contact with Defendants. That Defendants focused on these judicial *statements* may be seen in the caselaw Defendants cite, which relies on courts' *statements of bias*, not adverse rulings. In addition, Defendants' motion made the point that the Fifth Circuit's opinion may itself amount to a recognition of the appearance of bias. Plaintiff has no response to that point but to misunderstand it, or pretend to.

---

[2] Defendants also believed filing a motion to dismiss could well be premature, or ineffectual, given the way in which Plaintiff had made claims of computer access *in* the Complaint that were based on demonstrably false representations of Defendants' podcast statements *outside* the Complaint. Rather than deal with the resulting mess on a motion to dismiss, Defendants made a conscious decision to move for summary judgment on claims of access of a "Konnech computer" that they knew Plaintiff could never prove. And they look forward to this case actually entering discovery in order to do so.

Relatedly, Plaintiff's Motion for Sanctions accuses Defendants of making "egregious misrepresentations" (though Plaintiff only mentions one) such as Defendants' supposed statement they were "prevent[ed] . . . from filing a motion to dismiss." *See* Mot. Sanct. at 2-3. In the language Plaintiff is referring to, Defendants were referring to the Court's premature issuance of a TRO and contempt order, on facts not just disputed but implausible, before the parties could engage in the proper course of discovery, motions, and more. Defendants' point was not about *prevention*, but about an opportunity to develop the case normally, without the distraction of show-cause hearings and incarcerations founded on factual errors of computer access. This is the same point made by the Fifth Circuit, which is serviceable evidence it wasn't made "most frivolously". *Cf.* Resp. at 10.

In any event, as a sober review of the Motion to Recuse shows, Defendants provided the history of the rulings in this case partially as necessary context and partially because adverse rulings based on avoidable errors of fact and law may be consistent with bias and are certainly not inconsistent with bias. It would be a strange thing indeed for a court to suggest that an adverse ruling, in context, could never add to a reasonable observer's perception of bias, though, again, the rulings of this Court are not the primary indicators of bias on which the Motion to Recuse focuses its attention. (A *primary* reliance on adverse rulings is all that the caselaw sensibly proscribes, for they generally do not by themselves convey bias). It would be stranger still to hold that mentioning adverse rulings, by itself, rendered a motion to recuse frivolous.

Plaintiff also misconstrues the caselaw around "extrajudicial sources", saying, "Defendants' Motion to Recuse is not premised on the appearance of bias or prejudice from any extrajudicial source" and citing *U.S. v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) for the proposition that "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." In saying that its own pleadings "are necessarily not extrajudicial," Plaintiff conveys the belief that "extrajudicial" means, somehow, "outside of the pleadings," rather than what it sensibly means, which is an opinion formed, as *Grinnell* itself puts it, "on some basis other than what the judge learned from his participation in the case" as well as from some source *other than the parties alleging bias themselves*.

The Court here did not "learn" anything, as *Grinnell* puts it, about Defendants from Plaintiff's tendentious and politically charged characterization of them in the Complaint and the TRO hearing held without Defendants or their counsel present. And yet the Court's most problematic statements occurred immediately in the aftermath of those charged allegations and

*before* the Court had ever witnessed relevant behavior, testimony, or even arguments from the Defendants. Moreover, those Court statements referenced outside political circumstances irrelevant to Plaintiff's claims. That is *extrajudicial*. The Court also undeniably opined on ultimate issues in this CFAA and defamation case, including, respectively, the fact of Defendants' computer "access" and Defendants' probity and credibility.

Other cases cited by Defendants in their Motion to Recuse make even more clear that where a judge conveys opinions about a party on facts *not presented by that party within the confines of the case*, that opinion (whether one wishes to call it "extrajudicial" or something else), because it does not arise from the party's own conduct in the case, becomes problematic. Plaintiff's overheated rhetoric, regarding the larger political environment, contained in its Complaint and requests for TRO and injunctions, was the Court's sole source of knowledge about Defendants prior to most of the key rulings in this matter, and that knowledge was not derived at all from the Defendants in the course of this matter, as would have been the case had the Court considered an Answer from Defendants, or deposition testimony, or their appearance on the witness stand.

It is not "frivolous" to read the case law in this way. It is not frivolous to point out that the Court made statements that could convey bias to a reasonable observer. And it's certainly not frivolous to point out the undeniable fact that the Fifth Circuit selected language suggesting it felt it would be problematic for the Court to continue presiding over this case. That may be why Plaintiff is unable to seriously confront Defendants' reference to the Fifth Circuit's opinion: there is no response Plaintiff can offer that can change the reality of the Court of Appeals' opinion – a bombshell that created an appearance of bias that cannot be undone by Plaintiff's hoped-for reversal of that Court's mandamus opinion by the Court of Appeals *en banc*.

In short, even if one disagreed that the Court's statements here had created an appearance of bias, we must still contend with what a reasonable observer could conclude was an accusation of bias from the Fifth Circuit itself. And Plaintiff simply fails to grasp, let alone counter, the point Defendants are making about the Fifth Circuit's opinion.

Plaintiff thinks Defendants cannot refer to the Fifth Circuit's statement that "The district court then used a temporary restraining order, a preliminary injunction, and civil-contempt order to litigate the case on Konnech's behalf" as creating the appearance of bias because "the TRO, preliminary injunction, and contempt order are all *judicial rulings* that cannot serve as a basis for recusal." (Emphasis added). Plaintiff's misguided mantra about "judicial rulings" mis-reads Defendants' brief, to say nothing of the caselaw on recusal. The point is that the Fifth Circuit's opinion itself created an appearance of undue favoritism. To outside observers, the fact that the Fifth Circuit alluded to "judicial rulings" in the course of making the highly unusual charge that this Court "litigate[d] the case on Konnech's behalf" is entirely beside the point. The fact of the matter is that the Fifth Circuit's opinion *alone* has created sufficient grounds for recusal, for the caselaw is clear that the standard is not actual bias but the appearance of bias to a reasonable observer. And it is unprecedented in the recusal caselaw for a Court of Appeals to draft an opinion about a district court that becomes itself the basis for recusal. But that is where we find ourselves.

In sum, the Court should grant Defendants' Motion to Recuse and deny Plaintiff's Motion for Sanctions because, as the Affidavit of Cameron Powell makes clear, "We filed the Motion to Recuse because we believed after research and discussion with colleagues at the bar that there was a good-faith argument that outside observers could conclude the Court in this case had exhibited bias in favor of the opposing party, and that, even if some might consider it had not, the Court of Appeals had publicly said so, which even more strongly indicates recusal."

Respectfully Submitted,

GREGOR | WYNNE | ARNEY, PLLC

By: */s/ Michael J. Wynne*
Michael J. Wynne

Attorney at Law
Texas State Bar No. 0078529
SDTX No. 0018569
Telephone: (281) 450-7403
mwynne@gwafirm.com

Cameron Powell*
Attorney at Law
DC Bar No. 459020
Telephone: (832) 390-2644
cpowell@gwafirm.com

*PRO HAC VICE PENDING

**ATTORNEYS FOR DEFENDANTS**