# EXHIBIT C



DEC 22 2022

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

30TH CIRCUIT COURT

GRANT BRADLEY, individually,

    Plaintiff,

v

KONNECH INC,
a Michigan corporation, and
EUGENE J. YU, an individual,

    Defendant.

Case No.: 22-**0853**-CZ

Hon. **WANDA M. STOKES**

Thaddeus E. Morgan (P47394)
Aaron L. Davis (P77406)
Fraser Trebilcock Davis & Dunlap, P.C.
124 W. Allegan, Suite 1000
Lansing, Michigan 48933
Telephone: (517) 377-0822
adavis@fraserlawfirm.com
*Attorneys for Plaintiff*

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.

*/s/ Aaron L. Davis*

Aaron L. Davis

## VERIFIED COMPLAINT AND JURY DEMAND

NOW COMES, Plaintiff, GRANT BRADLEY, by and through his undersigned counsel, FRASER TREBILCOCK DAVIS & DUNLAP, P.C., and for his Verified Complaint against these Defendants, states as follows:

## I. NATURE OF THE CASE

1. This is a suit brought under the Michigan Whistleblower Protection Act, MCL § 15.361 *et seq*, or alternatively, a Wrongful Discharge in Violation of Michigan Public Policy. Plaintiff, Grant Bradley (hereinafter "Plaintiff"), was employed as the Implementation Manager with Defendant, Konnech Inc. (hereinafter "Defendant Konnech") until October 11, 2022, when Defendant terminated his employment as a direct result of Plaintiff's cooperation with the Los Angeles County District Attorney's Office, following the arrest of Defendant Eugene J. Yu (hereinafter "Defendant Yu"). Defendant Yu was arrested by Meridian Twp. Police following an investigation by the Los Angeles County District Attorney's Office that revealed Defendants Konnech and Yu made available poll worker's private data to foreign nationals working in China in violation of a multi-million dollar contract with Los Angeles County.

2. During his employment, Plaintiff was told by his superiors to say outwardly to customers that poll worker data was not stored overseas, not available to foreign nationals, and that they had no idea why Defendant Yu was arrested. Defendant Yu told Plaintiff not to "worry about" the Chinese nationals working on Defendant Konnech's software and coding and also claimed companies like Microsoft and Apple had Chinese programmers working on their software behind the scenes.

3. In approximately September 2022, following accusations made by True the Vote, Plaintiff began investigating the extent of the information provided by Defendant Konnech to the programmers based out of Wuhan, China. Plaintiff confirmed that Defendants Yu and Konnech had been providing to these Chinese

programmers private data of poll workers, to include social security numbers and other personal identifying information.

4. Following Defendant Yu's arrest, Plaintiff cooperated with Los Angeles County District Attorney's Office in providing them handwritten notes and other documentation evidencing Defendants' illegal activities. At the Plaintiff's request, the lead investigator from the Los Angeles County District Attorney's office was brought back to the office in order for the Plaintiff to offer additional information for the investigation. In the week between Defendant Yu's arrest (October 4, 2022) and Plaintiff's dismissal (October 12, 2022), Plaintiff was told by other senior level management for Defendant Konnech that he would not have to speak to clients anymore, as Plaintiff proclaimed that he would not lie to the customers about their data not being made available to foreign nationals.

5. Shortly thereafter, Plaintiff was locked out of his business software accounts (October 11, 2022). Additionally, Defendant Konnech maliciously blocked the Plaintiff's payroll account so that the Plaintiff was unable to retrieve personal compensation documentation. He then received an emailed letter from Defendant Konnech's counsel on October 12, 2022 informing him that his position had been eliminated as a result of "current economic conditions and challenges facing the company."

6. Plaintiff's reputation in his chosen field has been ruined by the decision of Defendants to illegally store information on servers housed in China. Plaintiff had

aspirations of running for political office, but has been told by political pundits that he is now "untouchable" due to his employment history with Defendants.

7. Plaintiff brings this lawsuit to address and confront Defendant's retaliatory behavior.

## II. PARTIES

8. Plaintiff, Grant Bradley, is an individual who resides in Ingham County, Michigan. Plaintiff was an employee of Konnech Inc. as its Implementation Manager up until Plaintiff was unlawfully terminated for cooperating with Los Angeles County District Attorney following the arrest of Defendant Yu.

9. Defendant, Konnech Inc., is a Michigan corporation with a principal place of business located at 325 East Grand River, Suite 225, East Lansing, Michigan, 48823.

10. Defendant, Eugene J. Yu, is an individual who, upon information and belief, resides in Ingham County, Michigan. Defendant Yu is the Chief Executive Officer of Defendant Konnech Inc. Defendant Yu was arrested on or about October 4, 2022 by the Meridian Twp. Police Department, following an announcement by the Los Angeles County District Attorney that it had charged him with storing data about poll workers on servers in China.

### III. JURISDICTION AND VENUE

11.     The amount in controversy is in excess of Twenty-Five Thousand Dollars ($25,000.00) and is otherwise within the jurisdiction of this Court pursuant to MCL § 600.601 and MCL § 600.605.

12.     Venue is proper in this judicial circuit pursuant to MCL § 600.1621.

### IV. GENERAL ALLEGATIONS

13.     Plaintiff was hired by Defendant Konnech on or about January 19, 2022 for a position to start on March 1, 2022 as a Business Analyst, and was promoted to Implementation Manager in May of 2022.

14.     Plaintiff reported to Eric Staats and Luis Nabergoi, but regularly had daily contact and interaction with Defendant Yu.

15.     According to its website, Defendant Konnech provides "election logistic software" to its 32 clients it currently serves in North America. Defendant Konnech claims to be "the developers ... the designers ... the coders ... and ... project management experts." In reality, Defendant Konnech's developers, designers and coders are all Chinese nationals based out of Wuhan, China.

16.     At one point, these Chinese nationals were direct employees of Defendant Konnech. But Defendant Konnech outwardly claimed to terminate the relationship with the Chinese nationals in response to public political pressure to sever ties with China. However, internally, Defendant Yu had no intention of severing the relationship with the Chinese nationals. He hired them back as

5

independent contractors and assigned to them the exact same responsibilities they held as employees.

17. As further evidence of Defendant Yu's disregard for the laws of this State, shortly after Plaintiff started his employment with Defendant Konnech, Defendant Yu approached Plaintiff about making a campaign contribution to Michigan Secretary of State Jocelyn Benson's campaign in his name that Defendant Konnech would reimburse him for. Plaintiff immediately recognized Defendant Yu's request to be a violation of Michigan Campaign Finance Law and rejected the overture from Defendant Yu.

18. Plaintiff received a promotion to Implementation Manager in May 2022, for which he supervised a team of seven (7) business analysts and four (4) interns. For his efforts, Plaintiff was to make $80,000 per year and was told to develop a bonus structure for himself and the entire company.

19. Plaintiff's performance during the course of his employment with Defendant Konnech was stellar, as evidenced by the additional responsibilities assigned to the Plaintiff. Plaintiff maintained direct communication with clients across the United States who used Defendant Konnech's products and worked with the Chinese programmers on a daily basis.

20. As part of his employment with Defendant Konnech, Plaintiff witnessed customer's data (specifically poll watcher information) being made accessible to foreign nationals from China. Plaintiff spoke out to his direct supervisors about his concern that these foreign nationals had access to the data and was told that

"everyone [other software companies like Microsoft and Apple] was doing it." Plaintiff did not know the full extent of the information provided to the Chinese nationals until approximately September 2022 when True the Vote began making allegations against Defendant Konnech.

21. At that time, Plaintiff began to investigate the extent of the information provided to the Chinese programmers by Defendants Yu and Konnech and began researching state and federal laws regarding the sharing of personal identifying information with foreign nationals.

22. Plaintiff recognized that Defendants had been breaking the law for some time and immediately set out to find alternative work. Regrettably, Plaintiff's efforts to secure alternative work were unsuccessful before the raid by the police.

23. On or about October 4, 2022, police from the East Lansing police department and Los Angeles County District Attorney's office raided the offices of Defendant Konnech in Okemos and seized company equipment, to include servers and hard drives.

24. Defendant Yu was arrested and charged by the Los Angeles County District Attorney's Office with illegally storing poll worker data on servers housed in China.

25. Following Defendant Yu's arrest, Plaintiff was told by his supervisors not to speak with the police or cooperate in their investigation of Defendants Yu and Konnech's activities.

26. Plaintiff, knowing what Defendant Yu and Defendant Konnech had been engaged in, ignored the directive of his supervisors and asked to meet with the police on the day of the raid so that he could provide them with handwritten notes and other electronic evidence he believes further substantiates Defendants' illegal activities.

27. Thereafter, Plaintiff told his direct reports that he was uncomfortable interfacing with clients on behalf of Defendant Konnech and told his supervisors that he would not tell customers that their data is not stored overseas or not accessible by the Chinese programmers.

28. Following Defendant Yu's arrest and Plaintiff's attestation that he will not lie to customers, supervisors Polcynand Nabergoi told Plaintiff that he would not have to talk to customers anymore.

29. On or about October 7, the Plaintiff spoke with Defendant Yu via Microsoft Teams call. In that call, Defendant Yu congratulated the Plaintiff on his success as the Implementation Manager and spoke extremely favorably about the Plaintiff's team management following the raid.

30. On or about October 11, the Plaintiff asked supervisor, Kelly Shettler, to meet with clients in the Plaintiff's place. As supervisor Shettler was unaware of the Plaintiff no longer speaking with clients, The Plaintiff explained to supervisor Shettler that the Plaintiff would not be interacting with clients for the time being. Within one hour of the communication to supervisor Shettler, the Plaintiff received a call from Defendant Yu terminating his employment. Within days of Plaintiff's decision to cooperate with police and statement that he refused to lie to customers,

Defendants Yu and Konnech locked Plaintiff out of his software and terminated his employment.

## COUNT I
## VIOLATION OF THE MICHIGAN WHISTLEBLOWERS' PROTECTION ACT
## MCL § 15.361 et seq.

31. Plaintiff incorporates by reference paragraphs 1 through 30 of this Verified Complaint.

32. The Michigan Whistleblowers' Protection Act ("WPA"), MCL § 15.362, provides as follows:

> **An employer shall not discharge**, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment **because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation of a suspected violation of a law** or regulation or rule promulgated pursuant to the law of this state, a political subdivision of this state, or the United States to a **public body**.

(Emphasis added).

33. At all material times, Plaintiff was an employee within the meaning of WPA, MCL § 15.361(a).

34. At all material times, Defendant was Plaintiff's employer within the meaning of the WPA. MCL § 15.361(b).

35. Plaintiff engaged in a protected activity under the WPA by reporting Defendants Konnech and Yu's illegal behavior to police investigators acting on behalf of the Los Angeles County District Attorney's Office.

36. As a direct result of Plaintiff engaging in the protected activity described above, Defendants intentionally discriminated and retaliated against Plaintiff and otherwise violated his rights under the WPA in ways which include, but are not limited to, demanding Plaintiff not cooperate with police or the Los Angeles County District Attorney's Office, locking him out of his work email, and terminating Plaintiff's employment.

37. As a direct and proximate result of Defendants' unlawful actions, Plaintiff sustained damages including, but not limited to, loss of earnings, loss of career opportunities, mental and emotional distress, loss of reputation and esteem in the community, and attorney fees and costs.

## COUNT II
## *IN THE ALTERNATIVE*, WRONGFUL DISCHARGE IN VIOLATION OF MICHIGAN PUBLIC POLICY

38. Plaintiff incorporates by reference paragraphs 1 through 37 of this Verified Complaint.

39. It is Michigan's public policy to promote adherence to state and federal statutes and regulations and it is in the best interest of the State and its citizens to protect and promote compliance with legal authority.

40. It is Michigan's public policy to allow employees to perform their job duties in accordance with the law without fear of retaliation.

41. It is Michigan's public policy to allow employees to express opinions, concerns and complaints to appropriate authorities as to violations of laws and

regulations that they become aware of in the course of performing their job and/or that they are asked to ignore, participate in, or otherwise permit to continue.

42. On October 3, 2022, Defendant Konnech's offices were raided and Defendant Yu was arrested by authorities acting on behalf of the Los Angeles County District Attorney's Office.

43. Plaintiff was told not to speak with the police or cooperate with their investigations of Defendants.

44. Plaintiff spoke with the police investigators and cooperated with providing them handwritten notes supporting the allegations brought against Defendants Konnech and Yu.

45. Plaintiff also told his supervisors that he would not lie to customers that their poll worker data was not being made available to foreign nationals.

46. Defendants Konnech and Yu terminated Plaintiff in retaliation for his opposition to Defendants' illegal directives to not cooperate with the police investigation.

47. Defendants' termination of Plaintiff constituted a violation of Michigan's public policy.

48. As a direct and proximate result of Defendants' unlawful actions, Plaintiff sustained damages including, but not limited to, loss of earnings, loss of career opportunities, mental and emotional distress, loss of reputation and esteem in the community, and attorney fees and costs.

WHEREFORE, Plaintiff requests that this Court enter Judgment in his favor for back wages and fringe benefits, future wages and fringe benefits, damages for the exacerbation of ongoing emotional and mental distress, and attorney fees and costs.

**DEMAND FOR TRIAL BY JURY IS HEREBY MADE**

                                      **FRASER TREBILCOCK**
                                      Attorneys for Plaintiff

Dated: December 22, 2022        By: _____
                                                   Aaron L. Davis (P77406)
                                                   124 West Allegan Street, Suite 1000
                                                   Lansing, MI  48933-1736
                                                   (517) 482-5800 – Telephone
                                                   (517) 482-0887 – Facsimile

# VERIFICATION

STATE OF MICHIGAN              )
                               ) ss
COUNTY OF INGHAM               )

GRANT BRADLEY, being first duly sworn, states as follows:

The information in this Complaint is based on my personal knowledge. I am informed and believe that the matters stated in the Complaint are true and on that basis, I affirm that the information contained in the foregoing is true and correct to the best of my knowledge, information and belief.

Further deponent sayeth not.

_____
GRANT BRADLEY

Subscribed and sworn to before me
this 20th day of December, 2022

_Lisa Alfano_
Notary Public
___Eaton___ County, Michigan
Acting in ___Ingham___ County
My Commission Expires: 12/20/2023