## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **KONNECH, INC.,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:22-CV-03096** |
| | § | |
| **TRUE THE VOTE, INC., GREGG** | § | |
| **PHILLIPS, and CATHERINE** | § | |
| **ENGELBRECHT,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

## PLAINTIFF KONNECH, INC.'S RESPONSE IN OPPOSITION
## TO DEFENDANTS' EMERGENCY MOTION TO INSPECT
## <u>PROPERTY OF PLAINTIFF</u>

**KASOWITZ BENSON TORRES LLP**

Constantine Z. Pamphilis
Attorney in Charge
Texas State Bar No. 00794419
SDTX Bar No. 19378
DPamphilis@kasowitz.com
Nathan W. Richardson
Texas State Bar No. 24094914
SDTX Bar No. 24094914
NRichardson@kasowitz.com
1415 Louisiana Street, Suite 2100
Houston, Texas 77002
(713) 220-8800
(713) 222-0843 (fax)

*Attorneys for Plaintiff Konnech, Inc.*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iii

STATEMENT OF THE ISSUES ...................................................................................... 1

SUMMARY OF THE ARGUMENT ................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 6

    A.   The Parties ................................................................................................. 6

    B.   The Pit and Defendants' Subsequent Media Blitz Defaming Plaintiff ............................. 6

    C.   Eugene Yu is Arrested and Konnech's Equipment is Seized ........................................... 9

    D.   The Charges Against Mr. Yu Are Dismissed and Konnech Seeks Return of its Servers. 10

ARGUMENT ................................................................................................................... 11

    A.   Konnech Has Complied With Its Document Preservation Obligations ........................... 11

    B.   There is No Evidence of Actual or Threatened Spoliation of Evidence by Konnech ...... 13

        i.   Glicklich's Affidavit is Rank Double Hearsay ........................................................... 14

        ii.   Haury's Affidavit Does Not Refer to Destruction of Evidence ................................ 14

        iii.   Bradley's Complaint Is Hearsay and Does Not Refer to Destruction of Evidence ... 16

    C.   Defendants' Request is Unprecedented, Unjustified, and Premature .............................. 16

    D.   Defendants Are Not Entitled to a TRO .......................................................................... 19

    E.   Defendants' Motion is Not an Emergency ..................................................................... 20

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cenveo Corp. v. Slater*,
No. 06-CV-2632, 2007 WL 442387 (E.D. Penn. Feb. 2, 2007) .............................................18

*Diepenhorst v. City of Battle Creek*,
Case No. 1:05-CV-734, 2006 WL 1851243 (W.D. Mich. June 30, 2006) .............................18

*In re Enron Corp. Secs, Derivative & Erisa Litig.*,
762 F. Supp. 2d 942 (S.D. Tex. 2010) ........................................................................1, 12, 13

*Facebook, Inc. v. Power Ventures, Inc.*,
252 F. Supp. 3d 765 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019) ...................20

*Florida Atlantic University Bd. of Trustees v. Parsont*,
465 F. Supp. 3d 1279 (S.D. Fla. 2020) .................................................................................15

*Frees, Inc. v. McMillan*,
No. 05-1979, 2007 WL 184889 (W.D. La. Jan. 22, 2007) ....................................................18

*Landus Cooperative v. New Cooperative, Inc.*,
No. 21-cv-3003-CJW-MAR, 2021 WL 1095333 (N.D. Iowa Feb. 3, 2021)..........................18

*May v. Wells Fargo Home Mortg.*,
No. 3:12-CV-4597-D, 2013 WL 2367769 (N.D. Tex. May 30, 2013)...............................1, 19

*McCurdy Grp. V. Am. Biomedical Grp., Inc.*,
90 Fed. Appx. 822 (10th Cir. 2001)......................................................................................13

*Sirius Computer Solutions, Inc. v. Sparks*,
138 F. Supp. 3d 821 (W.D. Tex. 2015)..................................................................................19

*Truly v. Austin*,
844 S.W.2d 934 (Tex. 1988)..................................................................................................19

*U.S. v. Nosal II*,
844 F.3d 1024 (9th Cir. 2016) ..............................................................................................15

*Verizon Calif. Inc. v. Lead Networks Domains Priv. Ltd.*,
No. CV 09-613-ABC, 2009 WL 10700112 (C.D. Cal. Feb. 17, 2009) ..................................18

*In re Weekley Homes, L.P.*,
295 S.W.3d 309 (Tex. 2009)........................................................................................12, 13, 18

**Statutes**

18 U.S.C. §1030.........................................................................................................15

**Rules**

FED. R. CIV. P. 26(f).....................................................................................................5

FED. R. EVID. 401, 801, 802, 805...........................................................................14, 16

Plaintiff Konnech, Inc. ("Plaintiff" or "Konnech") files this Response in Opposition to Defendants' Emergency Motion to Inspect Property of Plaintiff ("Motion") (Doc. 87):

## STATEMENT OF THE ISSUES

The Court must determine whether Defendants, prior to the exchange of any written discovery responses, have met their burden to show that Konnech has spoliated evidence such that it should be sanctioned or a TRO should issue requiring Konnech to pay for the imaging and expert review of approximately 350 Terabytes of data for responsive documents.[1]

## SUMMARY OF THE ARGUMENT

Defendants seek extraordinarily punitive relief from this Court that would unnecessarily require Konnech to pay at least $125,000 to have every byte of data on its servers (approximately 350 Terabytes) imaged and millions of dollars to have the image reviewed by a third party expert for documents responsive to Defendants' document requests.  Defendants' request is a thinly-veiled request for a monetary sanction akin to a death penalty sanction because it could bankrupt Konnech.  The relief requested by Defendants is unnecessary, unjustified, not an emergency, and sought for an improper purpose.

Defendants are in business to capitalize from discontent over lost elections and, most prominently, their claim that the 2020 Presidential Election was "stolen."[2]  Defendants' currency

---

[1] *See In re Enron Corp. Secs, Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 964 (S.D. Tex. 2010) (In assessing whether any sanctions for spoliation are warranted, courts consider three elements: (1) whether there was a duty to preserve evidence; (2) whether the alleged spoliator breached that duty; and (3) whether the spoliation prejudiced the nonspoliatator's ability to present its case or defense.").  *see also May v. Wells Fargo Home Mortg.*, No. 3:12-CV-4597-D, 2013 WL 2367769, at *1 (N.D. Tex. May 30, 2013) (To obtain a TRO, a party must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the TRO is not granted; (3) the threatened harm outweighs any damage that the TRO might cause to the non-movant; and (4) the TRO is in the public's interest).

[2] Defendants are also the subject of a pending voter intimidation lawsuit in Georgia in which the U.S. Department of Justice recently accepted the Georgia Court's request to join the proceedings against Defendants.  *See* Democracy Docket (Dec. 20, 2022), available at, https://www.democracydocket.com/news-alerts/doj-joins-georgia-voter-intimidation-lawsuit-against-right-wing-group-true-the-vote/.

is disinformation through which they spin conspiracy theories out of whole cloth, all for their own personal gain and at the expense of others.  For example, after this Court issued its March 3, 2023 order which set the deadline for Konnech to respond to the Motion, Defendants True the Vote and Catherine Engelbrecht lied in Tweeting to their thousands of followers that "Our Emergency Motion to Inspect has been granted by [sic] Federal Court in Houston."  Gregg Phillips reposted that on his Truth Social account and added that "Catherine and I have been granted the ability to inspect ALL OF THE DATA from the Eugene Yu fraud case in LA County."

Defendants' disinformation campaign is so pervasive that it led to the indictment of Plaintiff's CEO, Eugene Yu, by the Los Angeles County District Attorney's Office (the "LA DA") on charges that can only be characterized as alleging breach of a contract that Mr. Yu is not even a party to.  Although the Motion makes no mention of it, the LA DA dropped all charges against Mr. Yu less than a month after he was arraigned and put the Deputy DA in charge of the criminal action on administrative leave, all because of the Defendants' corruption of the LA DA's investigation.  On November 16, 2022, a week after the dismissal of the criminal action, the LA DA was ordered to return the servers in question to Konnech.

Defendants' Motion is yet another example of their disinformation campaign against Konnech.  Defendants have not met their burden to obtain such unprecedented and extraordinary relief, especially in light of the fact that the parties have just commenced discovery with the first written discovery requests served on the same day that Defendants filed their Motion, and with responses not due until March 27, 2023.  But regardless of timing, the Motion is meritless and should be denied for several independent reasons.

*First*, the requested relief is unnecessary. Konnech complied with its document preservation obligations by issuing a litigation hold at the outset of this litigation.  Additionally,

all of its servers were seized on October 4, 2022 (only 3 weeks after the lawsuit was initiated). And further, on March 3, 2023, this Court ordered that Konnech "not delete or alter the data and contents" of the servers at issue.  The requested relief is also unnecessary because this lawsuit is not about the data on servers seized by the LA DA in Lansing, Michigan.  This lawsuit is about the data that Defendants have repeatedly and publicly admitted to stealing from a server in China by means of illegal hacking over 2 years ago – data of which they now claim to not possess.

*Second*, the requested relief is unjustified and based on rank speculation.  Defendants have not identified *any* evidence on the servers that has been destroyed, let alone relevant evidence, without which Defendants would be prejudiced in presenting their defense.  To be sure, the LA DA has not raised any concerns about the destruction of any data in the 5 months since it seized Konnech's servers.

Defendants rely on two affidavits and a civil complaint for their Motion which do not support their baseless accusations of evidence destruction.  The affidavits submitted by Defendants' fundraiser, their spokesperson, and the complaint of a former employee currently suing Konnech say absolutely nothing about the destruction of any Konnech data.  The complaint filed by Grant Bradley—a former Konnech employee who is  suing over his termination—makes no mention of any destruction of Konnech data even though Mr. Bradley was employed at Konnech's headquarters when this lawsuit was filed and for 7 days following the seizure of Konnech's servers.

The affidavit of Brian Glicklich—who is True the Vote's media spokesperson—is rank double hearsay purporting to recount a phone call that he had with a *former* independent contractor to a *different* corporation based in Australia who recounted to Glicklich a phone call that the contractor had with yet a different former employee.  In any event, the Glicklich Affidavit is

entirely irrelevant because it discusses data allegedly on a website in Vietnam *after* LA County seized *all* of Konnech's servers from its Lansing headquarters.

The affidavit of Harry Haury—who had unfettered access to Konnech's servers, internet-connected accounts and e-mails—does nothing to satisfy Defendants' burden. To be clear, Haury has significant ties to and is a devout follower of Defendants. Haury in fact appeared on stage at Defendants' "The Pit" event in Arizona which led to this lawsuit. Haury and Nate Cain, the owner of Cain & Associates where Haury is "acting CEO," even solicited donations for Defendants. Nate Cain also threatened Judge Hoyt on the day Defendants were jailed for contempt. And shockingly, despite these connections, Haury claims that he and Cain & Associates were hired by the LA DA to assist in the search and seizure of Konnech's servers. Regardless, his affidavit is devoid of any mention of destruction of evidence. What his affidavit does establish, however, is the startling admission that Haury hacked into Konnech's internet-connected accounts and e-mails and conducted an illegal wiretap by monitoring them for four days after the LA DA search warrant was executed. Indeed, Haury's affidavit simply complains that he was locked out of Konnech's internet-connected accounts and e-mails after Konnech noticed the unusual activity and terminated Haury's admittedly unauthorized connection.

*Third*, Defendants seek a TRO, but fail to address any of the elements of a TRO, much less demonstrate that they meet their burden on each element. Defendants' request for a TRO is especially audacious considering that they not only have unclean hands, but intentionally filthy hands. Defendants have twice now gained illegal and unauthorized access to Konnech's servers. And this Motion is an attempt at a third bite of the apple, demonstrated by Defendants' own admission on social media following the Court's March 3 Order.

Defendants first gained unauthorized access to Konnech's servers by allegedly accessing and downloading the personal identifying information of over 1.8 million U.S. poll workers which resulted in the issuance of a TRO and Preliminary Injunction in this case which forbids Defendants from possessing Konnech's data.  The relief Defendants seek here is thus akin to a criminal breaking and entering into someone's home, stealing a few items, then asking the Court permission to go back and rummage through the entire house to steal more.  Moreover, as described above, Defendants' close ally, Harry Haury, hacked into Konnech's e-mails and created an illegal wiretap for at least 4 days through which he surreptitiously monitored Konnech's e-mails.

*Fourth*, there is no emergency.  Defendants have known for nearly 4 months that a Los Angeles County court granted a motion for the return of Konnech's servers, meaning that the servers could have been returned to Konnech 4 months ago.  Despite that, Defendants sat on their hands, demonstrating the lack of an emergency.

*Fifth,* the requested relief is sought for an improper purpose.  The Motion is a mere tactic to further harm Konnech by denying it the servers it needs to run its business and sticking Konnech with millions of dollars in expenses for the imaging and review of approximately 350 Terabytes of data.  Defendants are also using the Motion to gain access to Konnech's confidential client records, and to publish that data to their online followers.  Konnech filed this lawsuit to stop Defendants from destroying its small business, which now has only a handful of employees and is struggling to survive, all as a result of Defendants' disinformation campaign which should not be rewarded by the Court.[3]

---

[3] Defendants failed to properly confer as required by the Court's meet and confer requirements.  *See* Rule 7(C)(3).  At 5:48 PM on Friday, February 24, 2023, counsel for Defendants emailed counsel for Konnech stating, for the first time, that they planned to file the Motion, and that if they did not hear from counsel by 7:00 PM – a mere 72 minutes later – the Motion would be filed.  The conference never occurred and Defendants filed that night.  Defendants never mentioned their Motion at the parties' Rule 26(f) conference or in the parties' Joint Discovery Case Management Plan.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Parties

Konnech is a Michigan-based company founded and led by Eugene Yu, who is a U.S. citizen.  Konnech provides elections logistics software to U.S. cities and counties that is used to recruit, train and schedule poll workers; coordinate the distribution of equipment and supplies to polling places; and dispatch support personnel to address technical and other issues.  (Doc. 5-1, Yu Aff. at ¶ 2).  Konnech is not involved in any way in the registration of voters, the production, distribution or processing of ballots, or the collection, counting or reporting of votes.  (*Id*.).

Defendants are in business to capitalize from their claims of voter fraud, including most recently before targeting Konnech, through the production of the "documentary" 2000 Mules. Defendants, who are known as the "Bonnie and Clyde" of election fraud,[4] have enriched themselves by spreading conspiracy theories, which they present as factual in nature, largely funded by money funneled through True the Vote which some commentators have called a "big grift."[5]

### B.     The Pit and Defendants' Subsequent Media Blitz Defaming Plaintiff

In the summer of 2022, Defendants advertised an invite-only event they dubbed "The Pit," scheduled for August 13, 2022, at which they claimed they would disclose "devastating" information as definitive proof that the 2020 Presidential Election was stolen.  Defendants testified that they staged The Pit after they took the poll worker data they stole from Konnech to the FBI, and their FBI handler told them that the FBI was flipping the script on them and that they needed to take the "nuclear option."  (Ex. A, Oct. 27, 2022 Hrg. Tr. at 136:25-138:5).  The "nuclear

---

[4] *See* Mimi Swartz, *How True the Vote Fabricates Claims of Election Fraud, for Fun and Profit*, Texas Monthly (Aug. 22, 2022), available at, https://www.texasmonthly.com/news-politics/true-the-vote-election-fraud/.

[5] *See* Cassandra Jaramillo, *She Helped Create the Big Lie.  Records Suggest She Turned It Into a Big Grift*, Reveal News (June 8, 2022), available at, https://revealnews.org/article/true-the-vote-big-lie-election-fraud/.

option," according to Defendants, involved publicizing at The Pit the information they had shared with the FBI and encouraging their followers to attack Konnech. (*Id.*). Defendants thus used The Pit as a platform to attack Konnech by spreading baseless lies, including that Konnech, its founder and its employees are Chinese Communist Party ("CCP") operatives, that they are spearheading a CCP operation run against the United States, and that Konnech is otherwise being used for international espionage to enable the CCP to meddle in U.S. elections. (Doc. 1).

Defendants also claimed at The Pit that they discovered Konnech had an unsecured server located in Wuhan, China, which they and their co-conspirator, Mike Hasson[6], hacked into using a default password and stole data therefrom. (*See* Mot. at p. 2) (admitting that Hasson "obtained access to the data stored on the Chinese server" using a "default password that came from the manufacturer."). It was through that unauthorized access of a Konnech computer that Defendants, through Phillips' son and employee Taylor Phillips, claim to have viewed and stolen the personal identifying information of a purported 1.8 million U.S. poll workers, including their social security numbers and bank account information. (Ex. B, Taylor Phillips Post).

Defendants initially claimed that they had obtained a hard drive of the stolen Konnech data that they provided to the FBI. (Ex. C, Sept. 15, 2022 Letter from Akers; Ex. D, Oct. 6, 2022 Hrg. Tr. 22:7-12). Defendants then claimed that they were never provided with any hard drive of Konnech data, and that Phillips only witnessed what he was told was Konnech data. (Ex. A, Oct. 27, 2022 Hrg. Tr. at 51:14-16). Then when Defendants submitted evidence in an attempt to purge their contempt, the evidence included screenshots of text conversations with purported FBI agents, one of which showed a file titled "PII—sort by county," thus clearly reflecting that Defendants did

---

[6] Defendants initially refused to identify Hasson in response to the TRO and only provided that name to Konnech after Judge Hoyt refused to allow Defendants' counsel to leave the court room until the name of all persons involved in hacking Konnech's computers was disclosed. (Ex. D, Oct. 6 Tr. at 50:10-16).

indeed have a copy of a spreadsheet containing personal identifying information. (Doc. 46). When confronted with this and their apparent perjury and contempt of the preliminary injunction, Defendants concocted a story about how they don't have that file, and that they never even opened it. (Ex. E, Dec. 5, 2022 Email from Powell). However, during his appearance on the Rick & Bubba Show on December 15, 2022, Phillips admitted that he was involved in downloading Konnech's data by stating Judge Hoyt "ordered us to, or me, to tell him who was in the room with me that night **when we downloaded the data**." (Doc. 72, Richardson Decl. at B-1, B-2).

Following The Pit, Defendants appeared on numerous podcasts to boast about their illegal conduct and to further publicize their newly-fabricated conspiracy theory in an unabashed effort to enrich themselves at Konnech's expense. For example, on August 23, 2022, Phillips described meeting his "guys" at a hotel room in Dallas, Texas, where they put "towels under the doors" like "some kind of a James Bond kind of thing," and proceeded to hack into Plaintiff's server. (Ex. F, Prophets and Patriots Transcript[7]). Likewise, on August 30, 2022, Phillips again described how "[his] analysts" "brought [him] to Dallas into a hotel room at the Anatole Hilton Hotel" at "nearly midnight" where "they plugged one of their computers into the television" and began looking at Konnech's data on a server Defendants claimed they hacked into. (Ex. G, Steal the Midterms Transcript[8]). Phillips admits that, on "that night, in mid-January of 2021, [he] personally witnessed the scrolling through millions and millions of records about Americans" taken from Konnech's servers. (*Id*.)

Defendants then accidentally admitted on cross examination at the October 27 hearing on Konnech's Motion to Show Cause in connection with the TRO that, in addition to Phillips and

---

[7] A native version of the podcast was filed with Doc. 5-1, Ex. A-1. (*See* https://rumble.com/v1h1pj9-rumble-only-prophets-and-patriots-episode-20-with-gregg-phillips-and-steve-.html).

[8] A native version of the podcast was filed with Doc. 5-1, Ex. A-2. (*See* https://rumble.com/v1hz1jr-heres-how-theyll-try-to-steal-the-midterms-gregg-phillips-interview.html).

Mike Hasson, there was at least one other person in that hotel room whom they refused to identify in violation of the TRO.  (Doc. 9; Ex. A, Oct. 27 Hrg. Tr. at 39:3-6, 58:11-22).  Indeed, Defendants were jailed for contempt for failing to identify the third person involved in hacking Konnech's computers and taking its data.  (Doc. 58).  To this date, Defendants have still not identified that third person, which is a violation of the Preliminary Injunction and the subject of a pending Motion to Show Cause.  (Doc. 67).

**C.      Eugene Yu is Arrested and Konnech's Equipment is Seized**

Two days before the October 6, 2022 Preliminary Injunction hearing, and while Mr. Yu was on his way to Houston to testify at the hearing, the LA DA executed a search warrant at Mr. Yu's home and Konnech's office, and Mr. Yu was wrongfully detained.  Defendants immediately took credit for the arrest, but the LA DA denied any involvement by the Defendants when initially questioned about it.  (Ex. H, Oct. 4, 2022 True the Vote Press Release).  The LA DA, however, later admitted that Phillips actually testified to the grand jury in that criminal matter.  The entire criminal matter against Mr. Yu was instigated by Defendants in an attempt to flip the script on Konnech.  (Ex. D, Oct. 6 Hrg. Tr. at 38:16-18).

On October 4, 2022, the LA DA seized every Konnech computer at Konnech's Michigan headquarters along with approximately 350 Terabytes of data.  The servers were seized based on a still-sealed indictment that the LA DA abandoned before arraignment, proceeding on a criminal complaint instead.  That criminal complaint was signed by an LA County investigator who attended The Pit at Defendants' invitation.  We also now know by way of Defendants' Motion that Defendants had a close associate working with the LA DA in Harry Haury, the alleged "acting CEO" of Cain & Associates and purported forensic investigator who submitted an affidavit in support of Defendants' Motion.  (*See* Mot., Ex. D).

To be sure, Haury, who was allegedly hired as an expert by the LA DA along with Cain & Associates, was an adamant supporter and adherent of Defendants.  Haury was in fact a speaker at The Pit where he espoused his own views on election fraud before giving an interview to One America News Network ("OAN") during which he solicited donations on behalf of True the Vote.[9] Additionally, Cain & Associates is owned by Nate Cain, who had his home raided by the FBI for allegedly stealing federal property while he was an FBI contractor.[10]  Further, on October 31, 2022, the date Defendants were jailed for contempt, Nate Cain appeared on a podcast during which he solicited donations for Defendants and implicitly threatened Judge Hoyt using scripture from the Bible with the conclusion that it could "end badly for him [Judge Hoyt]."[11]  Certainly, neither Haury nor Cain & Associates were independent and should have never been involved in any criminal investigation of Konnech or Mr. Yu.

**D.      The Charges Against Mr. Yu Are Dismissed and Konnech Seeks Return of its Servers**

Mr. Yu moved to dismiss the charges because, among other reasons, the complaint alleged, at most, a breach of contract that Mr. Yu was never a party to (no charges were ever filed against Konnech).  At the hearing on the motion to dismiss, the LA DA dismissed all charges against Mr. Yu because, in part, of the politically-biased manner of investigation, which involved Haury and Cain & Associates.[12]  And notably, after the charges against Mr. Yu were dismissed, the LA DA

---

[9] *See* Media Matters, OAN (August 15, 2022), available at, https://www.mediamatters.org/media/3994024) (Segment from 3:25 to 4:13).

[10] *See* Richard Pollock; *FBI Raids Home of Whistleblower On Clinton Foundation, Lawyer Says*, Daily Caller (November 29, 2018), available at, https://dailycaller.com/2018/11/29/fbi-whistleblower-clinton-uranium/.

[11] *See Texas Judge Jails Gregg & Catherine for Protecting FBI CHS w/ Nate Cain*, Red Pill News (Oct. 31, 2022), available at https://rumble.com/v1qrmsg-judge-threatens-gregg-and-catherine-with-jail-for-not-breaking-federal-law-.html (Segment from 36:43 to 38:30).

[12] *See* Juma Sei, *LA County drops charges against election software executive, citing 'potential bias,'* NPR (Nov. 10, 2022), available at, https://www.npr.org/2022/11/10/1135839608/los-angeles-county-dropped-charges-konnech-true-the-vote.

leading that criminal matter was put on administrative leave because of the manner in which the investigation was handled.[13]

Ever since the charges against Mr. Yu were dismissed, Konnech has sought the return of its servers, but the LA DA is dragging its feet.   Specifically, despite repeated demands to have the servers returned on October 15, 18, and 26, 2022, the LA DA refused to commit to a timeline for the return.   Then, on November 16, 2022, the Los Angeles Superior Court granted Mr. Yu's and Konnech's motion for return of the property.  (Ex. I, Order on Return of Property).  Despite that order, however, the servers have still not been returned to Konnech.  Instead, the LA DA is in the process of having a third party image approximately 350 terabytes of data at their own expense, which they estimate will cost $125,000.  Although the imaging was supposed to be done and the servers were supposed to be returned to Konnech by March 2, 2023, the compliance date for the return of the equipment has been extended to March 14, 2023.  (Ex. J, March 10 Joint E-mail to Court).

To be clear, Konnech has been severely damaged by the inability to access its servers, and Defendants' Motion seeks to further damage Konnech by further delaying the return of the servers.

## ARGUMENT

### A.    Konnech Has Complied With Its Document Preservation Obligations

Konnech has complied with its document preservation obligations and therefore should not be ordered to pay to image its own data or have a third party review it for responsive documents, which, given the cost involved, is tantamount to a death penalty discovery sanction.

---

[13] *See* James Queally, *L.A. prosecutor put on leave over questionable case sparked by election conspiracy theories*, Los Angeles Times (Nov. 22, 2022), available at, https://www.latimes.com/california/story/2022-11-22/l-a-prosecutor-placed-on-leave-over-bungled-case-sparked-by-election-conspiracy-theories.

Courts understand that "[p]roviding access to information by ordering examination of a party's electronic storage device is particularly intrusive and should be generally discouraged, just as permitting open access to a party's file cabinets for general perusal would be." *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 317 (Tex. 2009) (discussing federal rules). Therefore, where "a party to a lawsuit believes the other party has wrongly destroyed or discarded relevant evidence, that party may move for sanctions or request a spoliation jury instruction" after meeting certain elements. *In re Enron Corp.*, 762 F. Supp. 2d at 964. In assessing whether any sanctions for spoliation are warranted, courts consider three elements: (1) whether there was a duty to preserve evidence; (2) whether the alleged spoliator breached that duty; and (3) whether the spoliation prejudiced the nonspoliatator's ability to present its case or defense." *Id*.

"As a threshold matter, before the court determines whether discovery abuse has occurred, the opposing party must demonstrate that the destroying party had a duty to preserve the evidence at issue." *Id*. A duty to preserve evidence arises "only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and the evidence in its possession or control will be potentially relevant to the claim." *Id*. at 963. "Once that duty to preserve has been established, the court must determine whether the party breached its duty." *Id*. at 965. Finally, the court then "must ask whether the other side's ability to present its case was prejudiced by the spoliation. To do so, the court considers various factors, such as the relevancy of the missing evidence and the availability of other evidence to take the place of the missing information." *Id*. Only then can a court determine whether any discovery abuse has occurred and issue a sanction.

Defendants failed to identify *any* destruction of evidence by Konnech, let alone any relevant evidence such that their "ability to present [their] case was prejudiced by the spoliation." *In re Enron*, 762 F. Supp. at 965. This is a defamation and hacking case. Defendants have not

identified any evidence on Konnech's servers relevant to their defense against the defamation or hacking claims—much less any evidence that has been or will be destroyed.[14]  It would in fact be nonsensical for Konnech to destroy evidence of Defendants' hacking.

Moreover, Konnech has complied with its document preservation obligations by issuing a comprehensive litigation hold for all documents related to this lawsuit.  Further, all of its servers were seized on October 4, 2022 (only 3 weeks after the lawsuit was initiated) and on March 3, 2023, this Court ordered that Konnech "not delete or alter the data and contents" of the servers.  Moreover, although the LA DA has had unfettered access to Konnech's servers for the last 5 months, it has not raised any concerns about the destruction of evidence.

Konnech has complied with its preservation obligations and Defendants have not met their burden to identify any relevant evidence that has been or will be destroyed, nor that Defendants have been or will be prejudiced as a result.

**B.      There is No Evidence of Actual or Threatened Spoliation of Evidence by Konnech**

Defendants' Motion fails to satisfy their burden because it is based on their speculation of what they *think* Konnech *might* do once it finally receives its servers back from the LA DA.  *See In re Weekley Hommes, L.P.*, 295 S.W.3d at 317-18 ("[C]ourts have been reluctant to rely on mere skepticism or bare allegations that the responding party has failed to comply with its discovery duties.") (citing *McCurdy Grp. V. Am. Biomedical Grp., Inc.*, 90 Fed. Appx. 822, 831 (10th Cir. 2001) for proposition that "skepticism alone is not sufficient to permit direct access to an opponent's electronic storage device.").  The affidavits and civil complaint attached to the Motion do not satisfy Defendants' burden.

---

[14] Although Defendants' Motion provides a list of information that they believe may be contained on a Konnech server, Defendants have not claimed that any of that evidence has been lost or destroyed, nor that they are otherwise unable to obtain such evidence through discovery.  Defendants likewise wholly failed to address "the availability of other evidence to take the place of the [alleged] missing information."  *In re Enron*, 762 F. Supp. at 965.

### i.    Glicklich's Affidavit is Rank Double Hearsay

The affidavit of Brian Glicklich—who is True the Vote's long-time spokesperson that has appeared on the Tucker Carlson program and Steve Bannon's show as a media representative for Defendants in connection with this case—is rank double hearsay.  Glicklich purports to recount an out-of-court statement with a then-terminated independent contractor of Konnech Australia Pty. Ltd.—not Plaintiff Konnech, Inc.—and what that former independent contractor was allegedly told by yet a different former employee about data on a website in Vietnam *after* the servers at issue were seized by the LA DA. (*See* Glicklich Affidavit at ¶ 3) ("Mr. McAllister told me. . . .[,]" "Mr. McAllister said he had received this information from" another person, and "Mr. McAllister told me that Luis had indicated to him . . .[.]").  Because these statements were not made by any employee of Plaintiff, neither of them are saved by the party-opponent rule.  *See* FED. R. EVID. 801(d)(2).  Additionally, the Glicklich affidavit concerns an alleged "website in Vietnam," not China or the U.S., nor any server seized by the LA DA which is the only equipment at issue in the Motion.  Furthermore, the activity in Vietnam referred to in the Glicklich Affidavit occurred on October 10, 2022 (Glicklich Aff. at ¶ 3), which is *after* the October 4, 2022 LA DA seizure of the servers at issue in the Motion, and is thus irrelevant.

Accordingly, Konnech objects to the Glicklich Affidavit as hearsay and irrelevant and requests that the Court strike and disregard it.  FED. R. EVID. 401, 801, 802, 805.

### ii.    Haury's Affidavit Does Not Refer to Destruction of Evidence

The affidavit of Harry Haury of Cain & Associates[15], who is incorrectly presented to the Court as an independent expert that was hired by the LA DA to assist in the execution of a search

---

[15] The Court should take note of other oddities about the Haury Affidavit, including that it does not contain the case caption, it is not dated, it is a photo and not an original or even scanned copy, there are no page numbers, and it does not include all of the exhibits referenced therein.

warrant to seize Konnech's servers, does not mention any destruction of evidence.  As described

in detail above (*see* supra pp. 9-10), Haury and Cain & Associates are not independent.  In fact,

Haury and Cain & Associates' involvement with the LA DA's criminal matter was likely a major

reason why the LA DA dismissed all charges against Mr. Yu, in part due to "potential bias in the

presentation and investigation of the evidence."[16]

  Haury's affidavit is shocking in its admission to illegal hacking and wiretapping of

Konnech's e-mails.  Haury admits that he hacked into and monitored Konnech's internet-

connected accounts and e-mails for at least 4 days after the LA DA executed its search warrant by

using a Konnech employee's password to surreptitiously monitor Konnech without authorization,

which is itself a violation of the Federal Computer Fraud and Abuse Act (the "CFAA") and likely

illegal wiretapping.[17]

  But most importantly, there is absolutely no reference to destruction of any evidence in

Haury's affidavit.  This is particularly significant because Haury had unfettered access to

Konnech's servers that were seized by the LA DA and illegal access to Konnech's e-mails for at

least 4 days after the seizure.  (Haury Aff. at ¶¶ 6-7).  At most, Haury states that Konnech shut off

his illegal access.  (*Id*.). But there is nothing improper about Konnech preventing unauthorized

access to its internet-connected accounts and e-mails.[18]  (*Id*.).  Indeed, Defendants admit that they

have continued to attempt to hack Konnech's internet-connected accounts and e-mails and further

---

[16] *See* Juma Sei, *LA County drops charges against election software executive, citing 'potential bias,'* NPR (Nov. 10, 2022), available at, https://www.npr.org/2022/11/10/1135839608/los-angeles-county-dropped-charges-konnech-true-the-vote.
[17] *See Florida Atlantic University Bd. of Trustees v. Parsont*, 465 F. Supp. 3d 1279, 1287 (S.D. Fla. 2020) (finding violation of the CFAA where, even though the defendant used a password to access a computer provided by someone with authority to use that password, the unauthorized use of that password by defendant violated the CFAA); *see also U.S. v. Nosal II*, 844 F.3d 1024, 1038 (9th Cir. 2016) (finding violation of the CFAA where former employee used current employee's password to access former employer's computer).
[18] In fact, by confirming that Konnech is able to shut off access to hackers, Haury contradicts his other statement that Konnech had no security controls in place.  (*Id.* at ¶ 4).

attempted to steal its data despite the TRO and Preliminary Injunction's prohibition on such access. *See* Mot. at p. 7 ("The evidence that was in those accounts, having been successfully hidden, has never been recovered.").

The Haury Affidavit is irrelevant.  FED. R. EVID. 401.

### iii.   Bradley's Complaint Is Hearsay and Does Not Refer to Destruction of Evidence

The civil complaint of Grant Bradley (the "Bradley Complaint"), who is a disgruntled ex-employee that was terminated by Konnech as part of a company-wide layoff resulting from Defendants' attacks against the company, is hearsay and does not refer to any destruction of evidence.  This is significant because Bradley remained employed by Konnech until October 11, 2022, which was over a week after the LA DA seized the servers and arrested Mr. Yu, and had full access to Konnech's electronic data and other employees during that time.  Although Defendants may align themselves with Bradley in their baseless attacks against Konnech, Bradley's complaint is simply devoid of any relevance to the issue of spoliation of data on the Konnech servers currently held by the LA DA—the only thing at issue in the Motion.[19]

Accordingly, Konnech objects to the Bradley Complaint as hearsay and irrelevant and requests that the Court strike and disregard it.  FED. R. EVID. 401, 801, 802.

## C.   Defendants' Request is Unprecedented, Unjustified, and Premature

Even if spoliation of evidence had been established (it has not), the remedies requested by Defendants are unprecedented, unjustified, and premature.

What Defendants are really seeking here is to have Plaintiff pay for the privilege of allowing *Defendants*—the same Defendants who are currently the subject of a Preliminary

---

[19] As to the other statements in the Bradley Complaint, Konnech intends to depose Bradley and reveal the falsity of those allegations.

Injunction which prevents them from hacking Konnech's computer or possessing its data—to rummage through all of Konnech's data and the confidential data of its customers.  Defendants have already publicly announced their intentions to do so[20]:



Defendants' nefarious tactics should not be rewarded:



Moreover, although Defendants argue that "[t]he relief sought here is routinely granted," they fail to cite to a single case within the Fifth Circuit to support their Motion.  (Mot. at pp. 8-9).

---

[20] Defendants statements concerning the Court's March 3 Order demonstrate their disinformation campaign against Konnech.

And even if the Court considers Defendants' cases, they are inapplicable to the circumstances here. To be clear, all of the cases Defendants rely on involve lawsuits to prevent the theft of an employers' trade secrets, or otherwise the theft of intellectual property.[21]  In those cases, the victim of the theft was granted access to identify their own stolen information.  But here, the Defendants, who are the perpetrators, seek access to Konnech's data to victimize it again.  What Defendants are asking the Court to do is to turn precedent on its head, and allow them access to the very items they admitted to stealing.

In any event, Defendants' Motion is premature.  "[F]ederal case law has established some basic principles regarding direct access to a party's electronic storage device.  As a threshold matter, the requesting party must show that the responding party has somehow defaulted in its obligation to search its records and produce the requested data."  *In re Weekley Homes, L.P.*, 295 S.W.3d at 317.  The requesting party must "also show that the responding party's production has been inadequate and that a search of the opponent's electronic storage device could recover deleted relevant materials."  *Id*. (citing and quoting *Diepenhorst v. City of Battle Creek*, Case No. 1:05-CV-734, 2006 WL 1851243, at *3 (W.D. Mich. June 30, 2006)).  Defendants cannot make this showing because Defendants have not shown that Konnech has defaulted in any way in its obligation to search records and produce the requested data, or that its production has been

---

[21] *See e.g.*, *Landus Cooperative v. New Cooperative, Inc.*, No. 21-cv-3003-CJW-MAR, 2021 WL 1095333, at *2 (N.D. Iowa Feb. 3, 2021) (granting TRO allowing inspection of former employee computers who allegedly stole confidential company information and destroyed evidence of their theft); *Ameriwood Indus., Inc. v. Liberman*, No. 406cv524-DJS, 2006 WL 3825291, at *1 (E.D. Mo. Dec. 27, 2006) (involving employer suing former employees for allegedly forwarding confidential information and trade secrets to employees' personal email accounts); *Cenveo Corp. v. Slater*, No. 06-CV-2632, 2007 WL 442387, at *2 (E.D. Penn. Feb. 2, 2007) (involving employer suing former employees for improperly using computers and trade secrets to divert business to themselves); *Frees, Inc. v. McMillan*, No. 05-1979, 2007 WL 184889, at *3 (W.D. La. Jan. 22, 2007) (involving a former employee sued for using company computers to remove proprietary information); *Verizon Calif. Inc. v. Lead Networks Domains Priv. Ltd.*, No. CV 09-613-ABC (CWx), 2009 WL 10700112, at *11 (C.D. Cal. Feb. 17, 2009) (granting TRO where defendants were engaged in cybersquatting and in the business of concealing wrongful conduct); *Balboa Threadworks, Inc. v. Sucky*, No. 05-1157-JTM-DWB, 2006 WL 763668, at *1 (D. Kan. Mar. 24, 2006) (involving theft of copyrighted material).

inadequate.  Unless and until there is an actual issue with Plaintiff's document production, the Motion is premature.

**D.      Defendants Are Not Entitled to a TRO**

Defendants have failed to establish their entitlement to a TRO to transfer the servers seized by the LA DA to an unidentified third party.  (Mot. at pp. 8-9, 14).

To obtain a TRO, a party must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the TRO is not granted; (3) the threatened harm outweighs any damage that the TRO might cause to the non-movant; and (4) the TRO is in the public's interest.  *May*, 2013 WL 2367769 at \*1.

*First*, Defendants have not shown a substantial likelihood of success on the merits.  Instead, the law of the case, as established by both Judge Hoyt's order granting a TRO against Defendants (Doc. 9), as well as the Preliminary Injunction against Defendants (Doc. 57), is that Plaintiff has already shown a substantial likelihood of success.  Defendants do not even address this undisputed fact, let alone how the Court should ignore their unclean hands.  *See Sirius Computer Solutions, Inc. v. Sparks*, 138 F. Supp. 3d 821 (W.D. Tex. 2015) (quoting *Truly v. Austin*, 844 S.W.2d 934, 938 (Tex. 1988) for proposition that "It is well-settled that a party seeking an equitable remedy must do equity and come to the court with clean hands.").

*Second*, Defendants also have not explained how they would suffer immediate and irreparable harm should their motion be denied.  Instead, the only party who would suffer irreparable harm should the Court grant the TRO requested is Konnech.  Konnech has already been without its equipment and data for 5 months, and it is critical to the continuity of Konnech's business that its servers are returned without any further delay.  For that same reason, Konnech would also suffer substantial harm if it is forced to spend significant and unnecessary costs in this litigation.  Simply put, Konnech cannot afford to expend millions of dollars in unnecessary

19

litigation costs.  The harm felt by Konnech would thus substantially outweigh any harm felt by Defendants.

*Third*, Defendants do not address the public interest element of a TRO.  It would undoubtedly not be in the public interest to create a precedent that allows a defendant accused of hacking and theft to have access to the same items it is alleged to have stolen in the first place.  Much to the contrary, courts have routinely held that the "public has an interest in ensuring that computers are not accessed without authorization" which, as depicted in the social media posts embedded above, is precisely Defendants' motive in filing this Motion.  *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 782 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019).

Accordingly, Defendants have not met their burden for the issuance of a TRO.

## E.  Defendants' Motion is Not an Emergency

Defendants' Motion is not an emergency.  This case has been on file for 6 months, and the LA DA seized the servers at issue 5 months ago.  Defendants were aware of this seizure because they instigated the criminal action against Mr. Yu, and had their close associate and fundraiser Harry Haury working with the LA DA.  An LA County court ordered the servers returned 4 months ago on November 16, 2022.  (Ex. I, Order for Return of Equipment).  Nevertheless, despite knowing for the last 4 months that the servers could be returned to Konnech at any moment, Defendants sat on their hands, demonstrating the lack of an emergency and that this Motion is another tactic to further harm Konnech by denying it the servers that it needs to run its business.

## CONCLUSION

Konnech, respectfully requests that the Court deny Defendants' Emergency Motion to Inspect Property of Plaintiff, award Konnech its reasonable fees and expenses incurred in opposing the Motion and grant Konnech such other and further relief to which it may be justly entitled.

20

Dated: March 10, 2023

KASOWITZ BENSON TORRES LLP

By:     */s/ Constantine Z. Pamphilis*
        Constantine Z. Pamphilis
        Attorney in Charge
        Texas State Bar No. 00794419
        SDTX Bar No. 19378
        DPamphilis@kasowitz.com
        Nathan W. Richardson
        Texas State Bar No. 24094914
        SDTX Bar No. 24094914
        NRichardson@kasowitz.com
        1415 Louisiana Street, Suite 2100
        Houston, Texas 77002
        (713) 220-8800
        (713) 222-0843 (fax)

        *Attorneys for Plaintiff Konnech, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2023, true and correct copies of the above and foregoing were forwarded via email and through the ECF system, to all parties and counsel of record.

                    */s/ Constantine Z. Pamphilis*
                    Constantine Z. Pamphilis

21