# Plaintiff's Response in Opposition to Defendants' Emergency Motion to Inspect Property of Plaintiff:

# Exhibit C



BROCK C. AKERS
_____

BOARD CERTIFIED PERSONAL INJURY
AND CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION
CIVIL TRIAL ADVOCACY
NATIONAL BOARD OF TRIAL ADVOCACY

DIRECT DIAL
713/552-0232
e-mail: bca@akersfirm.com

September 15, 2022

Dean Pamphilis
Kasowitz Benson Torres LLP
1415 Louisiana Street, Suite 2100
Houston, Texas 77002

    Re: Konnech, Inc. v. True the Vote, et al; No. 4:22-cv-03096; In the United States District Court, Southern District of Texas, Houston Division

Dear Mr. Pamphlis:

Thank you for your letter of this morning. It reflects multiple inaccuracies and misrepresentations regarding True the Vote's actions.

Apparently, I did not do a good enough job explaining how my clients became aware of and in contact with the source information you describe. These facts hopefully provide additional information so you will better understand our involvement.

1. As evidence will show, True the Vote was approached by a third party who claimed to have data originating from your client. He had already obtained that data prior to contacting us. He was not contracted to us or paid by us. We were led to understand that he acquired the information from an open, not protected source.
2. This individual "screen shared" certain elements of the data and characterized it as showing large amounts of personal and confidential information about poll workers and other sensitive material having been exfiltrated and stored on servers located in China.
3. He turned over to True the Vote a hard drive device containing the evidence of this, including the data. True the Vote did not view the contents of this hard drive or connect it to their network or any device. They turned it over to the FBI immediately with the representations made about it. No portion of that which was turned over was retained.
4. True the Vote's knowledge about this data is limited to what they were told and shown by "screen share." They never possessed the actual data or any part of it

    except as above. True the Vote has been advised that this person is in communication with the FBI.
5. Thus, True the Vote has never obtained or held any data as described in your petition. This is just one of many inaccuracies contained therein.
6. We reject your contention that we have publicly communicated contrary to this.

Given this, we once again assure you that we are complying with all aspects of the TRO. We have been led to understand in the course of this process that this is an active and confidential matter with the FBI. We are uncertain as to our authority to make public this identity, and feel as though we are being forced to violate federal disclosure laws on the basis of your ex parte order. We will, therefore, provide the name and identity of this individual to the court under seal, and will simultaneously offer the FBI the opportunity to weigh in on its disclosure. We predict the Court would most prefer the input of the FBI in this manner. Upon further direction from the Court or the FBI we will release the name of the individual and what contact information we possess.

                                              Sincerely,

                                              Brock C. Akers

BCA:pdg