UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KONNECH, INC., | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 4:22-cv-03096 |
| | § | |
| v. | § | |
| | § | |
| TRUE THE VOTE, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**<u>DEFENDANTS' REPLY in SUPPORT of ITS OPPOSED EMERGENCY MOTION FOR LEAVE TO INSPECT PROPERTY OF PLAINTIFF TO PREVENT FURTHER SPOLIATION OF EVIDENCE</u>**

Defendants True the Vote, Catherine Engelbrecht, and Gregg Phillips ("Defendants") hereby submit their Reply in support of their request for leave to inspect Plaintiff's seized devices (hereafter, "Motion to Inspect") before further spoliation takes place.[1]

Plaintiff has no real response to Defendants' fundamental argument that Konnech has made a practice of concealing compromising information from its customers and regulatory agencies, encouraging witnesses to lie, and destroying evidence. Instead, Plaintiff impugns the integrity and motivations of the affiants and Defendants' counsel, complains that the affidavits include hearsay, attempts to reconstrue Defendants' Motion to Inspect under Rules 26 and 34 as a Rule 65 motion for a TRO, and implies incorrectly that Defendants suggested Plaintiff singlehandedly pay the "death penalty" costs of mirror-imaging the seized devices. None of these arguments can overcome the evidence that Konnech attempted to cut off LA County investigators' access to Konnech's

---

[1] The Motion to Inspect's Exhibit F appears not to have made it into the original Motion to Inspect, though it does appear in the closely related Motion to Appoint Special Master, as Exhibit A. It is attached here as Exhibit F.

voluminous Chinese connections, to encourage its employees to lie to customers about those connections, or to tamper with witnesses.

Plaintiff's "Statement of the Issues" (p. 1) says:

The Court must determine whether Defendants, prior to the exchange of any written discovery responses, have met their burden to show that Konnech has spoliated evidence such that it should be sanctioned or a TRO should issue requiring Konnech to pay for the imaging and expert review of approximately 350 Terabytes of data for responsive documents.

This is not at all a statement of the issues here. First, Defendants need not show that Plaintiff "has", already, despoiled evidence, though Defendants did in fact provide affidavits evidencing spoliation in the form of (1) Konnech deleting emails and DingTalk chats and (2) Konnech restricting the LA DA's access, subject to a lawful search warrant, to Konnech's compromising online accounts (*i.e.*, emails, the software programmers' Jira account, China-based DingTalk). But Defendants also highlighted Plaintiff's equally troublesome directives to its employees to lie about and hide its use of Chinese programmers to work on American elections software. Second, TRO standards do not apply to Defendants' discovery motions under FRCP 26 and 34. Finally, Defendants did not demand that Konnech "pay for" the imaging requested here; they offered to share the expense.[2] In short, Plaintiff's statement of the issues here is both incorrect and, as a guide for the Court, unreliable.

---

[2] Plaintiff repeats this straw man repeatedly, complaining that the Motion to Inspect is "extraordinarily punitive". Perhaps concerned that such language was insufficiently overwrought, Plaintiff then casts Defendants' reasonably supported motion as "a *thinly-veiled* request for a monetary sanction akin to a *death penalty sanction*." Opp'n to Mot. Inspect at 1 (emphases added)). In reality, though Defendants are comprised of a non-profit and two individuals, and Konnech, Inc. is a multinational corporation, Defendants suggested that "costs shall be borne equally by Defendants and Plaintiff." *See* Mot. Inspect at 14.

**I. This Court May Consider the Affiants' Uncontradicted Statements of Konnech's Destruction of Evidence Without Concern for Hearsay Rules Applicable to Jury Trials**

Plaintiff devotes considerable energy to trying to discredit the affiant (Brian Glicklich) and complainant (Grant Bradley) cited in Defendants' Motion and complaining their statements are hearsay. But of course, the solution to Plaintiff's complaint is not to give back to Plaintiff seized evidence for additional destruction but to look more deeply into what Glicklich, Bradley, and now Peter McAllister himself (see Exhibit G) are alleging. Their allegations go to the heart of Plaintiff's claim that Defendants defamed Plaintiff by claiming Konnech has problematic connections with China, including Plaintiff's (1) storage of data in China, (2) employment of Chinese nationals while lying to customers and regulators about it, and (3) carelessly putting critical American elections data on servers in China that could be accessed with nothing more than the equivalent of tapping a "Submit" button.

Defendants' submission of Peter McAllister's affidavit, Exhibit G, makes much of this clear, and moots Plaintiff's attacks on Brian Glicklich's affidavit. As to the first attack, it is irrelevant that McAllister is a "former", or was an "independent", contractor of Konnech; what matters is that when he had the key conversation, with Luis Nabergoi, Konnech's own Chief Technology Officer, about deletions of emails in early October 2022, he was still the General Manager of Konnech Australia, a wholly-owned subsidiary of Konnech, Inc.,[3] which supplied staff from the U.S. and China to work on the elections software for Konnech Australia's Australian customers. In short, Mr. McAllister's affidavit reports on both his own perceptions as well as conversations between two party representatives of Konnech, one of them being himself.

---

[3] *See* https://6sense.com/company/konnech-australia-pty-ltd/605db32110fce904a734b8ea; https://www.zoominfo.com/c/konnech-australia-pty-ltd/546933693; https://www.apollo.io/companies/Konnech-Australia-Pty-Ltd/5fca784b47537a0001b258b2?chart=count (all accessed on March 21, 2023).

Statements by parties are not hearsay, *see* Fed. R. Evid. 801(d)(2)(D) (opposing party's statement is not hearsay if "offered against an opposing party" and "made by the party's agent or employee on a matter within the scope of that relationship and while it existed").

Moreover, even assuming *arguendo* McAllister's statements were hearsay, that's hardly fatal to a motion to inspect that alleges willful destruction of evidence and directives to employees to lie. Indeed, "material may be presented in a form that would not, in itself, be admissible at trial." 11 Moore's Federal Practice–Civil ¶ 56.91 (2017) (quoted in *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), as revised (July 5, 2017). Thus, even on summary judgment, "a district court may consider a hearsay statement . . . if the statement could be reduced to admissible evidence at trial or reduced to admissible form," the most obvious way being to have "the hearsay declarant testify directly to the matter at trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012); *Lee*, 859 F.2d at 355; *Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33, 38 (D.C.Cir.1987) ("[E]ven if the Hoff letter itself would not be admissible at trial, ... the substance of the letter is reducible to admissible evidence in the form of trial testimony.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986))). Mr. McAllister is indeed available to testify to the same matters at trial. *See* Affidavit of Peter McAllister ¶21. Thus, even on summary judgment, affidavits are one way to "support" a fact. *Lee*, 859 F.2d at 355. But in this Motion we are not even at the summary judgment phase, or at trial before a jury of laypeople who might perhaps be vulnerable to giving weight to hearsay testimony.

Second, while Brian Glicklich mistakenly averred in his affidavit that Mr. McAllister had said Konnech emails were being deleted from "a website" in Vietnam – the emails were deleted from *an IP address* in Vietnam, *see* Affidavit of Peter McAllister ¶15(a) – the point is that Konnech

was likely deleting email evidence, probably through a Virtual Private Network (VPN) to hide the deleting party's actual IP address. *Id.*

Third, Plaintiff misconstrues the reports of deletion of Konnech's emails, which may be done via online accounts, by implying the deletions could not have occurred "*after*" (Plf's Opp'n at 4; emphasis in original) LA County seized Konnech's computers. But as the Glicklich and McAllister affidavits make clear, what was being deleted was not data on the seized servers, but data in the online email accounts that Konnech used to collaborate with Chinese nationals on its elections software. Plaintiff acknowledges this in its very next paragraph, saying LA County's forensic investigator, Harry Haury, "complained he was locked out of *Konnech's internet-connected accounts and e-mails*". (Emphasis added).

Plaintiff argues the affidavit and complaint submitted by Defendants "say absolutely nothing about the destruction of any Konnech data." That's both incorrect and not the point. It's incorrect because Peter McAllister, a former Konnech employee, has described the destruction of Konnech's emails and chats within days of the indictment of Konnech CEO Eugene Yu and seizure of Konnech's devices. And we now have Konnech's destruction in Peter McAllister's own words. *See* Affidavit of Peter McAllister ¶¶13-15. Plaintiff's statement misses the point because another Konnech employee, Grant Bradley, alleged in his Complaint against Konnech that Konnech also asked its employees to lie to customers and hid evidence of employing Chinese nationals to work on American elections systems. McAllister and Bradley even report hearing the same rationalization from Konnech about employing Chinese nationals to work on its software, wherein Konnech supervisors claimed "everyone was doing it" and even specified "Microsoft". *Id.,* ¶5. With such evidence of an intent to spoil evidence before it, the Court need not, before ruling to preserve evidence, require that Konnech was successful in doing so.

## II. This Court May Protect Evidence Without Reference to a TRO

In their Motion to Inspect, Defendants cited cases in which courts had issued TROs to preserve discoverable information. Plaintiff has seized on these citations in an attempt to recast Defendants' Motion to Inspect as a motion for a TRO, arguing, "Defendants seek a TRO, but fail to address any of the elements of a TRO." Plf's Opp'n at 4. Plaintiff misses the point.

Defendants' Motion to Inspect was made under auspices of Federal Rules of Civil Procedure 26 and 34. Under Federal Rule of Civil Procedure 26, parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending litigation." Meanwhile, "Federal Rule of Civil Procedure 34 governs the scope and procedure for requesting production of documents. This rule allows a party to ask another party" — or failing that, the court — "'to produce and permit the party making the request ... to inspect and copy, any designated documents, ... or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served.'" *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1052–53 (S.D. Cal. 1999) (citing Fed.R.Civ.P. 34(a)(1)). Neither of these provisions, nor FRCP 37 (permitting motions to compel discovery), requires any TRO analysis.

Defendants' Motion to Inspect, like the Motion for Appointment of a Special Master to manage the inspection, relies on the Court's inherent power to preserve evidence and its "inherent authority" to manage its own proceedings[4], particularly when such evidence reasonably appears

---

[4] *Gambino v. Hershberger*, No. CV TDC-16-3806, 2017 WL 2493443, at *3 (D. Md. June 8, 2017), aff'd, 700 F. App'x 272 (4th Cir. 2017); *see also Kemper Mortg., Inc. v. Russell*, No. 3:06-CV-042, 2006 WL 4968120, at *7 (S.D. Ohio May 4, 2006) (enjoining party from "[d]estroying or deleting, directly or indirectly, any documents or electronically stored information, including any information stored on computers" that contain relevant information). *See also* cases cited at pages 9-11 of Defs' Motion to Inspect.

to be, as here, at risk of spoliation. Neither motions to compel nor motions to appoint special masters rely on TRO standards.[5] *See, e.g., Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 686 (S.D. Fla. 2012) (granting motion to inspect and appointment of neutral computer expert "in light of the evidence of an unusually large spate of document shredding"); *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 650 (D. Minn. 2002) (granting motions to compel, expedite discovery, and appoint neutral expert without mention of TRO); *In re Honza*, 242 S.W.3d 578, 584 (Tex. App. 2008) (affirming district court's granting of motion to inspect without mention of TRO standards); *Rowe Ent., Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 432 (S.D.N.Y. 2002) (denying protective order and compelling discovery and appointment of neutral experts); *Simon Prop. Grp. L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 641 (S.D. Ind. 2000) ("plaintiff shall select and pay an expert who will inspect the computers in question to create a 'mirror image' or 'snapshot' of the hard drives"); *Playboy Enterp.*, 60 F. Supp. 2d at 1052–53 (granting motion to compel electronic discovery pursuant to Rules 26 and 34). Similarly, a motion for a protective order, though it requests that a party be enjoined from doing something, does not follow TRO standards. Plaintiff's citations to cases[6] dealing with access to electronic devices in discovery ignores that in those cases, discovery was proceeding normally – as opposed to there being evidence of a party's attempts to spoil evidence and encourage witnesses to lie.

---

[5] Notably, even if Defendants had styled their Motion to Inspect as a Motion for TRO, this Court could have reasonably chosen to construe it as a motion to preserve evidence. See *BCOWW Holdings, LLC v. Collins*, No. SA-17-CA-379-FB, 2017 WL 8729023, at *1 (W.D. Tex. May 3, 2017) (construing motion for TRO as a motion for preservation of evidence) (citing *Micolo v. Fuller*, 15-CV-6374EAW, 2016 WL 158591 at *1 (W.D. N.Y. Jan. 12, 2016) (motion denominated as motion for temporary restraining order found, based on the substance, to be a request for an "order requiring the preservation of evidence")). The *Collins* court added, "Construing the motion as one to preserve evidence also will avoid expiration of the order pursuant to Rule 65(b)(2) of the Federal Rules of Civil Procedure."

[6] *See In re Weekley Homes, L.P.*, 295 S.W.3d 309, 317 (Tex. 2009); *Diepenhorst v. City of Battle Creek*, Case No. 1:05- CV-734, 2006 WL 1851243, at *3 (W.D. Mich. June 30, 2006).

Plaintiff's concern (page 17) that courts in the Fifth Circuit do not protect evidence from spoliation is misplaced as well. In *M-I L.L.C. v. Stelly*, No. CV H-09-1552, 2011 WL 12896025, at *2 (S.D. Tex. Nov. 21, 2011), the court compelled mirror-imaging of computer hard drives upon a showing, similar to that here, that information had been improperly transferred "from [the non-moving party's] computer to USB devices". In addition to citing *Ameriwood Industries, Inc. v. Liberman*, No. 4:06 CV 524–DJS, 2006 WL 3825291, at *4 (E.D.Mo. Dec. 27, 2006), amended by 2007 WL 685623 (E.D.Mo. Feb. 23, 2007), which was cited by Defendants in their Motion, the *Stelly* court cited another case in the Fifth Circuit in which evidence was alleged to have been improperly moved. *See id.* (citing *Frees, Inc. v. McMillian*, No. 05–1979, 2007 WL 184889, at *2 (W.D.La. Jan. 22, 2007) ("[Plaintiff] is entitled to production of the requested computers because such computers are, if [Plaintiff's] allegations are true, among the most likely places [Defendant] would have downloaded or stored the data allegedly missing from [Plaintiff's] laptop. As such, the request is reasonably calculated to lead to the discovery of admissible evidence.")). Similarly, the district courts in both *Tracfone Wireless, Inc. v. King Trading,* Inc., No. 3-08-CV-0398-B, 2008 WL 918243, at *1 (N.D. Tex. Mar. 13, 2008) and *AT & T Mobility LLC v. Arena Trading, Inc*., No. 3-08-CV-0330-P, 2008 WL 624104, at *1 (N.D. Tex. Mar. 5, 2008) granted an "emergency motion to preserve evidence" where there was "a legitimate concern for the continuing existence and maintenance of the integrity of the evidence in question absent an order preserving the evidence".

Plaintiff also cites cases in which moving parties engage in pure speculation about what opposing parties might do in discovery, alleging that Defendants' Motion is also "based on their speculation of what they think Konnech might do once it finally receives its servers back from the LA DA." (p. 13) (emphasis added). This is incorrect. Unlike the parties in the cases cited by

Plaintiff, Defendants have provided actual evidence of Konnech's intention to destroy evidence and tamper with witnesses. Defendants do not need to speculate about what Konnech might do.

### III. Defendants' Alleged Delay, Like Plaintiff's Ineffectual "Litigation Hold" and Defendants' Allegedly "Filthy Hands", Does Not Change the Risk of Spoliation by Plaintiff.

Plaintiff argues at page 20 that because the "case has been on file for 6 months", Defendants' failure to request access to Plaintiff's seized devices sooner somehow reduces the need to protect against Plaintiff's intentions to destroy evidence or tamper with witnesses. However, Defendants' awareness of Grant Bradley's claims of witness tampering is far more recent, as is the recusal of the prior judge assigned to the instant case. Defendants reasonably concluded that their Motion to Inspect would be more compelling when it was filed, rather than earlier prior to the recusal.

Plaintiff also seems to think that because it has made unproven allegations that Defendants accessed still-unidentified servers, and took still-unspecified data from such servers, Defendants "not only have unclean hands, but intentionally filthy hands", Plf's Opp'n at 4, and this Court may thus ignore reasonably supported concerns about Plaintiff's spoliation of evidence.[7] The argument is no more pertinent to probable destruction of evidence than the litigation hold Plaintiff touts. One that was obviously ineffectual, contradicted by Konnech's own actions in (1) terminating law enforcement access to online accounts shared with Konnech personnel in China and (2) encouraging employees and contractors to lie to customers and regulators. These actions show an intent to destroy evidence and to tamper with witnesses. It's difficult to imagine what additional showing Defendants would need to make to get reasonable relief fair to all concerned.

---

[7] Plaintiff alleges, without explanation, that "Defendants have twice now gained illegal and unauthorized access to Konnech's servers." (p. 4) It appears that Plaintiff believes Defendants somehow "gained illegal access" a second time through the work of its allegedly "close ally, Harry Haury," the LA County contractor whom Plaintiff alleges "hacked" into Konnech's e-mails" in the course of executing LA County's *search* warrant. (p. 5).

### IV. Defendants Have Clearly Identified the Evidence Likely Contained in Plaintiff's Seized Devices

Plaintiff's Opposition urges on the Court another unrealistic standard, one in which a movant concerned about a party's history of spoliating evidence on computers not in the moving party's possession must somehow "identify" all the missing evidence on those computers. For obvious reasons, this is not a workable precedent, but it so happens that, here, Defendants can oblige. Because Defendant Phillips had already seen evidence from the server in China on which Konnech stored data, Defendants were able to list in their Motion all the kinds of evidence they have reason to believe is contained in Plaintiff's seized devices, including via the claims of Glicklich (and now McAllister directly), the claims of Bradley's Complaint, and the six-point list of "relevant evidence" at page 11. Below, Defendants again summarize the evidence likely to be found on the seized devices.

First, the seized devices likely contain the best evidence available anywhere of who has accessed those devices. Who accessed Plaintiff's computers is a central allegation of Plaintiff's CFAA claim.[8] Second, given Defendant Phillips' observations of the information contained on Konnech's China-based server, and the claims of Glicklich, McAllister, and Bradley, Defendants and this Court now have ample reason to believe the seized devices almost certainly contain the same evidence of (1) Konnech's employment of Chinese nationals in the development of critical national infrastructure, that is, elections software, (2) Konnech's improper storage of Americans' sensitive personal information and American elections data in China, and (3) Konnech's apparent lies to its customers and regulators about those Chinese programmers and that storage of elections data in China. All this evidence *directly supports* Defendants' defenses to Plaintiff's claim that

---

[8] That it would "be nonsensical for Konnech to destroy evidence of Defendants' hacking," Plf's Opp'n at 13, is a red herring. What Konnech has tried to destroy is not evidence supporting Plaintiff's case but Defendants'.

Defendants defamed Plaintiff by talking about Konnech's ties to China, *see* Am. Complaint, ¶¶1, 2, 8, 25, 31, 32, 35, 38, 41, 43, 46-55, and 59, including Defendants' defense of *substantial truth*. *See* Defs' Answer at 17.

### V. While Plaintiff Fails to Provide Even Hearsay Evidence in Speculating on Defendants' "Improper Purpose", Defendants Have Already Supplied a Protective Order That Can Resolve Plaintiff's Concerns

In its opposition, Plaintiff continues its unfortunate habit of purporting to read the minds of Defendants and their counsel – and then demanding monetary sanctions based on what it speculates they were thinking. Previously, Plaintiff had filed a Motion for Sanctions on grounds it had special access to Defendants' *mens rea* in requesting an *ultimately granted* Motion to Recuse (*i.e.*, an "improper purpose" to delay and harass and increase Plaintiff's costs). Now, Plaintiff again intuits that Defendants' requested relief is sought "for an *improper purpose*," Plf's Opp'n at 1, and Plaintiff, though clearly unable to know anything of Defendants' or their counsel's purpose, goes on to speculate that the Motion to Inspect is "a mere tactic to further harm Konnech" and that Defendants are "using the Motion to gain access to Konnech's confidential client records, and to publish that data to their online followers." *Id.* at 5.

Of course, Plaintiff has no evidence for its speculations, and to the extent Plaintiff is concerned about its "confidential client records" or Defendants publishing "that data", Plf's Opp'n at 5, Plaintiff knows very well that it may seek, and that Defendants even mentioned in their Motion to Inspect, a protective order resolving its concerns. *See* Mot. to Inspect at 13. Indeed, Defendants provided Plaintiff with a proposed protective order on January 26, 2023, and Defendants invite Plaintiff to respond to it for the first time, and with constructive suggestions. But the seized devices need to be protected from what appears to be a plausible risk of further spoliation by persons in control of the IT and software systems of Konnech, Inc., whether in the United States or acting from China.

Respectfully Submitted,

GREGOR | WYNNE | ARNEY, PLLC

By: */s/ Michael J. Wynne*
Michael J. Wynne

Texas State Bar No. 0078529
SDTX No. 0018569
Cameron Powell
DC Bar No. 459020
909 Fannin Street, Suite 3800
Houston, Texas 77010
Telephone: (281) 450-7403
mwynne@gwafirm.com
cpowell@gwafirm.com

**ATTORNEYS FOR DEFENDANTS TRUE THE VOTE, INC., CATHERINE ENGELBRECHT, AND GREGG PHILLIPS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of March 2023, this document was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notifications of the filing to all attorneys of record.

By: */s/ Michael J. Wynne*
Michael J. Wynne